No. 25-11469

# In the United States Court of Appeals for the Eleventh Circuit

FLORIDA IMMIGRANT COALITION, ET AL.,
*Plaintiffs-Appellees,*

v.

JAMES UTHMEIER,
IN HIS OFFICIAL CAPACITY AS FLORIDA
ATTORNEY GENERAL, ET AL.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:25-cv-21524-KMW

## APPELLANTS' MOTION TO STAY INJUNCTION PENDING APPEAL

JAMES UTHMEIER
*Attorney General of Florida*

JEFFREY PAUL DeSOUSA
*Acting Solicitor General*
NATHAN A. FORRESTER
DAVID M. COSTELLO
*Chief Deputy Solicitors General*
ROBERT S. SCHENCK
CHRISTINE PRATT
*Assistant Solicitors General*
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*jeffrey.desousa@myfloridalegal.com*

May 7, 2025                          *Counsel for Defendants-Appellants*

*Florida Immigrant Coalition v. Uthmeier*
*Eleventh Circuit Case No. 25-11469*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendants certify that, to the best of their knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1.      Amdur, Spencer

2.      Bakkendahl, Thomas

3.      Bartlett, Bruce

4.      Basford, Larry

5.      Brodsky, Ed

6.      Campbell, Jack

7.      Chavez, Paul R.

8.      Choi, Grace

9.      Costello, David M.

10.     Cox, Alexcia

11.     Cox, Nicholas B.

12.     DeSousa, Jeffrey P.

13.     Durrett, John

14.     Farmworker Association of Florida, Inc.

15.     Florida Immigrant Coalition

*Florida Immigrant Coalition v. Uthmeier*
*Eleventh Circuit Case No. 25-11469*

16.     Fox, Amira D.

17.     Gladson, William

18.     Godshall, Amy N.

19.     Goodman, Hon. Jonathan

20.     Greer, Alana J.

21.     Haas, Brian

22.     Haskell, Miriam F.

23.     Jadwat, Omar

24.     Kacou, Amien

25.     Kramer, Brian S.

26.     Lamia, Christine

27.     Larizza, R.J.

28.     LaRocca, Christina I.

29.     Lopez, Susan S.

30.     Madden, Ginger Bowden

31.     Mann, William C.

32.     Nelson, Melissa

33.     Pratt, Christine K.

34.     Pryor, Harold F.

35.     Roman, Oscar S.

36.     Rundle, Katherine Fernandez

37.     Scheiner, William

38.     Schenck, Robert S.

39.     Stafford, William III

40.     Steinberg, Hannah

41.     Tilley, Daniel B.

42.     Uthmeier, James

43.     V.V.

44.     Wiese, Evelyn

45.     Williams, Hon. Kathleen M.

46.     Wofsy, Cody

47.     Worrell, Monique H.

48.     Y.M.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

Table of Contents.............................................................................................i

Table of Authorities .......................................................................................ii

Introduction ...................................................................................................1

Background ....................................................................................................2

      A.    SB 4-C.............................................................................................2

      B.    Procedural History.......................................................................3

Argument ......................................................................................................4

I.    Defendants are likely to succeed in overturning the universal injunction. ............................................................................................5

      A.    Plaintiffs lack a cause of action to enforce federal immigration law...........................................................................5

      B.    SB 4-C is not preempted by federal immigration law. ...............7

            1.    SB 4-C is not field preempted in all applications. ...........7

            2.    Plaintiffs have not shown that SB 4-C is conflict preempted in all applications...........................................10

      C.    SB 4-C does not violate the Dormant Commerce Clause........................11

      D.    Alternatively, the district court lacked authority to bind Florida's law-enforcement officers, who are not parties. ..........12

II.    The remaining equitable factors support a stay. ....................................20

Conclusion....................................................................................................20

Certificate of Compliance ............................................................................22

Certificate of Service ....................................................................................23

# TABLE OF AUTHORITIES

## Cases

*ADT LLC v. NorthStar Alarm Servs., LLC,*
    853 F.3d 1348 (11th Cir. 2017) ................................................................12, 16, 20

*Alemite Mfg. Corp. v. Staff,*
    42 F.2d 832 (2d Cir. 1930) ....................................................................2, 13, 16

*Arizona v. United States,*
    567 U.S. 387 (2012) ...............................................................................1, 6, 7, 8, 9

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ................................................................................ 5, 6

*Chamber of Com. of U.S. v. Whiting,*
    563 U.S. 582 (2012) ................................................................................10

*City of South Miami v. Governor,*
    65 F.4th 631 (11th Cir. 2023) ...............................................................14

*City of Tuscaloosa v. Harcros Chems., Inc.,*
    158 F.3d 548 (11th Cir. 1998) ...............................................................13

*Clackamas Gastroenterology Assocs., P.C. v. Wells,*
    538 U.S. 440 (2003) ................................................................................13

*Cmty. for Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989) ................................................................................13

*Corey v. Rockdale Cnty.,*
    No. 1:22-cv-3918, 2023 WL 6242669 (N.D. Ga. Aug. 28, 2023) ..................5

*Davis v. Passman,*
    442 U.S. 228 (1979) ................................................................................5

*DeCanas v. Bica,*
    424 U.S. 351 (1976) ................................................................................7

*Edwards v. California,*
    314 U.S. 160 (1941) ................................................................................12

*General Bldg. Contractors v. Pennsylvania,*
  458 U.S. 375 (1982) ................................................................... 15, 16

*Gentile v. Bauder,*
  718 So. 2d 781 (Fla. 1998) .................................................................18

*Georgia Latino Alliance for Human Rights v. Governor of Georgia,*
  691 F.3d 1250 (11th Cir. 2012) ..................................................9, 10, 11

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002) ................................................................... 6, 7

*Havens v. James,*
  76 F.4th 103 (2d Cir. 2023) .................................................................18

*Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.,*
  768 F.2d 1558 (11th Cir. 1985) .................................................................20

*Hillsborough Cnty. v. Automated Med.,*
  *Lab'ys,* 471 U.S. 707 (1985) ...............................................................7

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ...............................................................9

*Jacobson v. Florida Secretary of State,*
  974 F.3d 1236 (11th Cir. 2020) ............................................... 15, 20

*Kansas v. Garcia,*
  589 U.S. 191 (2020) ....................................................1, 7, 8, 9, 10, 11

*League of Women Voters of Fla. v. Fla. Sec'y of State,*
  32 F.4th 1363 (11th Cir. 2022) .................................................................4

*Maryland v. King,*
  567 U.S. 1301 (2012) .................................................................20

*Mayor of City of New York v. Miln,*
  36 U.S. (11 Pet.) 102 (1837) ...............................................................1

*N.Y. State Dep't of Soc. Servs. v. Dublino,*
  413 U.S. 405 (1973) ...............................................................8

*Nationwide Mut. Ins. Co. v. Darden,*
    503 U.S. 318 (1992) .........................................................................................13

*Nat'l Pork Producers Council v. Ross,*
    598 U.S. 356 (2023) ....................................................................................11, 12

*Peppers v. Cobb County,*
    835 F.3d 1289 (11th Cir. 2016) .....................................................................14

*Plyler v. Doe,*
    457 U.S. 202 (1982) .........................................................................................1

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,*
    324 U.S. 806 (1945) ........................................................................................20

*Rosemond v. United States,*
    572 U.S. 65 (2014)...........................................................................................18

*Safe Sts. All. v. Hickenlooper,*
    859 F.3d 865 (10th Cir. 2017) .........................................................................6

*Schneidewind v. ANR Pipeline Co.,*
    485 U.S. 293 (1988) ........................................................................................10

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ..........................................................................................6

*Shondel v. McDermott,*
    775 F.2d 859 (7th Cir. 1985) .........................................................................20

*State v. Spradlin,*
    12 S.W.3d 432 (Tenn. 2000)...........................................................................15

*Support Working Animals v. Governor of Fla.,*
    8 F.4th 1198 (11th Cir. 2021) .........................................................................16

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ........................................................................................13

*Terry v. Ohio,*
    392 U.S. 1 (1968).............................................................................................19

*United States v. Robinson,*
   83 F.4th 868 (11th Cir. 2023) ...................................................12, 13, 16, 17, 18

*United States v. Roosevelt Coats,*
   8 F.4th 1228 (11th Cir. 2021) ..............................................................18

*United States v. Salerno,*
   481 U.S. 739 (1987) ...............................................................2, 7, 10

*United States v. Texas,*
   97 F.4th 268 (5th Cir. 2024) ................................................................12

*Va. Off. for Prot. & Advoc. v. Stewart,*
   563 U.S. 247 (2011) .........................................................................19

*Valdes v. State,*
   728 So. 2d 736 (Fla. 1999) ..................................................................17

*Virginia v. Hicks,*
   539 U.S. 113 (2003) .........................................................................20

*Wilson v. Attaway,*
   757 F.2d 1227 (11th Cir. 1985) .............................................................18

**Statutory and Constitutional Provisions**

8 U.S.C. § 1103...................................................................................5

8 U.S.C. § 1304...................................................................................8

8 U.S.C. § 1324..............................................................................5, 9, 12

8 U.S.C. § 1325...........................................................................1, 2, 8, 12

8 U.S.C. § 1326...........................................................................1, 3, 5, 8

8 U.S.C. § 1329...................................................................................5

8 U.S.C. § 1330...................................................................................5

8 U.S.C. §§ 1301-06..............................................................................8

City of Miami Charter ch. 42, § 42-2............................................................14

City of Miami Charter § 24 ...................................................................14

Fla. Const. art. IV, § 4........................................................................14

Fla. Const. art. V, § 17 .......................................................................14

Fla. Const. art VIII, § 1 .....................................................................14

Fla. Stat. § 16.01 ................................................................................14

Fla. Stat. § 20.201 ..............................................................................16

Fla. Stat. § 20.24 ................................................................................16

Fla. Stat. § 27.18 ................................................................................14

Fla. Stat. § 30.15 ................................................................................14

Fla. Stat. § 321.05 ..............................................................................14

Fla. Stat. § 811.102 .............................................................1, 2, 3, 10

Fla. Stat. § 811.103 ..................................................................... 1, 3

Fla. Stat. § 908.111 ......................................................................3

Fla. Stat. § 943.04 ..............................................................................14

Fla. Stat. § 943.10 ..............................................................................17

Fla. Stat. §§ 27.02-.13, 27.18-.25 .......................................................14

**Rules**

Fed. R. App. P. 8(a)(2) ........................................................................4

Fed. R. Civ. P. 65...........................................................12, 13, 16, 18, 20

**Other Authorities**

Restatement (Third) of Agency § 6.01 (Am. L. Inst. 2006) ...........................15

Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006) ...........................13

Restatement (Third) of Agency § 2.03 (Am. L. Inst. 2006) ...............................................13

Order, *Garcia v. Exec. Dir., Fla. Comm'n on Ethics*, No. 23-12663 (11th Cir. Nov. 30, 2023), ECF No. 36 ...........................................................................................................12

## INTRODUCTION

"From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). Even in the immigration context, "the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (cleaned up). As a result, states are not without "power to deter the influx of persons entering the United States against federal law," *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982), just as at the Founding, *Mayor of City of New York v. Miln*, 36 U.S. (11 Pet.) 102, 132-33 (1837). When Congress "prescribe[s] what it believes to be appropriate standards for the treatment of [aliens], the States may, of course, follow the federal direction." *Plyler*, 457 U.S. at 219 n.19.

Florida did nothing more in enacting SB 4-C. To aid the United States in curbing illegal immigration within the State's borders, SB 4-C criminalizes the entry into Florida of those who have illegally entered the United States. Fla. Stat. §§ 811.102, 811.103. That law tracks federal law to a tee. *See* 8 U.S.C. §§ 1325(a), 1326(a)(2). It also retains federal-law defenses and says nothing of who should be admitted or removed from the country. As Justice Scalia observed, Florida "has moved to protect its sovereignty—not in contradiction of federal law, but in complete compliance with it." *Arizona*, 567 U.S. at 437 (Scalia, J., concurring in part, dissenting in part). "If securing its territory in this fashion is not within the power of [Florida], we should cease referring to it as a sovereign State." *Id.*

Despite those principles, the district court preliminarily enjoined Defendants from enforcing SB 4-C. That was error. Plaintiffs lack a cause of action to enforce federal immigration law. They also have failed to prove their facial challenge—"the most difficult challenge to mount"—because they cannot show that "no set of circumstances exists under which the Act" would comply with federal immigration law and the Dormant Commerce Clause. *United States v. Salerno*, 481 U.S. 739, 745 (1987). And in all events, the district court's order wrongly binds all of Florida's law-enforcement officers—who are not parties, not the parties' agents, and not acting in concert with the parties—flouting longstanding equitable principles entitling every litigant to "their day in court." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (Hand, J.).

The Court should stay the injunction.

## BACKGROUND

### A.    SB 4-C

In 2025, Florida passed SB 4-C. That law created two new crimes. The first provision (the entry provision) bars "unauthorized alien[s]" from "knowingly enter[ing]" Florida "after entering the United States by eluding or avoiding examination or inspection by immigration officers." Fla. Stat. § 811.102(1). That conforms to federal law, which criminalizes entry by evading inspection. 8 U.S.C. § 1325(a). Florida law defines an "unauthorized alien" as "a person who is unlawfully present in the United States according to the terms of the federal Immigration and Nationality Act" and federal regulations. Fla. Stat. § 908.111(1)(d). SB 4-C provides that entry is not a crime if "[t]he

2

Federal Government has granted the unauthorized alien lawful presence in the United States or discretionary relief that authorizes the unauthorized alien to remain in the United States temporarily or permanently," or an "unauthorized alien's entry into the United States did not constitute a violation" of federal law. *Id.* § 811.102(4)(a), (c).

The second provision (the reentry provision) criminalizes the entry or presence of "unauthorized alien[s]" in Florida where the federal government has "denied admission, excluded, deported, or removed" the alien or where the alien "departed the United States during the time an order of exclusion, deportation, or removal is outstanding." *Id.* § 811.103(1). Again, this provision follows federal law. 8 U.S.C. § 1326(a). And Florida provides that an alien does not violate the reentry provision where the alien has express permission to enter from the United States Attorney General or where such permission was not required under federal law. Fla. Stat. § 811.103(1)(a)-(b).

## B.    Procedural History

Plaintiffs are two anonymous individuals and two organizations who claim to be affected by SB 4-C. DE1 ¶¶ 8-29. They sued Florida's Attorney General, the statewide prosecutor, and Florida's 20 state attorneys, but no law-enforcement officers. DE1. They also sought to certify a class. DE5.

Plaintiffs contended that SB 4-C is preempted by federal law and violates the Dormant Commerce Clause. DE1 ¶ 68-77. They moved for a temporary restraining order and a preliminary injunction, DE4, and the district court granted the restraining order *ex parte*, DE28. The court stated that its order "prohibit[ed] Defendants and their

3

officers, agents, employees, attorneys, and any person who [is] in active concert or par-ticipation with them from enforcing SB 4-C." DE28 at 14. After learning of arrests by law-enforcement officers, DE50 at 6:5-18, the court clarified that its TRO also covered any "law enforcement officer with power to enforce SB 4-C," DE49 at 1.

That court later granted a preliminary injunction. DE67. It held that SB 4-C was field and conflict preempted, and violated the Dormant Commerce Clause. *Id.* at 14. It extended its order to all law-enforcement officers. *Id.* at 48.[1]

Defendants appealed. DE68. On April 30, Defendants moved for a stay of that injunction, DE69, and the district court's delay in ruling on that motion amounts to a "faile[ure] to afford the relief requested." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.5 (9th Cir. 2020).

## ARGUMENT

This Court may stay an injunction pending appeal. Fed. R. App. P. 8(a)(2). In evaluating a stay request, the Court considers: (1) whether the applicant has shown a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *League of Women Voters of Fla. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022). Where the latter three factors "weigh[] heavily in favor of granting

---

[1] The district court set a show-cause hearing to evaluate whether the Attorney General violated that order by expressing his legal position that the court's order could not be lawfully extended to every Florida law-enforcement officer. DE67 at 48-49.

the stay," a stay may be "granted upon a lesser showing of a 'substantial case on the merits.'" *Id.* Because each factor favors Defendants, this Court should stay the injunction or, at least, the scope of relief.

## I.    DEFENDANTS ARE LIKELY TO SUCCEED IN OVERTURNING THE UNIVERSAL INJUNCTION.

### A.    Plaintiffs lack a cause of action to enforce federal immigration law.[2]

At the outset, Plaintiffs have no "cause of action" to enforce the federal Immigration and Nationality Act (INA). *Davis v. Passman*, 442 U.S. 228, 239 (1979). They rely solely on an equitable cause of action, DE1 at 13-14, which fails because the "fairest reading" of the INA shows that "Congress [has] displace[d]" "equitable relief," and Plaintiffs "cannot, by invoking [courts'] equitable powers, circumvent" that statutory limit. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328-29 (2015).

The INA's text bears that out. The statute charges the Secretary of Homeland Security "with the administration and enforcement" of the INA unless another part "relate[s] to the powers, functions, and duties conferred upon" other Executive Branch officers. 8 U.S.C. § 1103(a)(1). Some examples of carveouts are the federal bars on illegal entry and reentry, which provide for enforcement by particular federal officers—criminal and civil suits by a U.S. Attorney. 8 U.S.C. § 1329 (vesting enforcement in the U.S. Attorney for suits under "this subchapter"); *see* 8 U.S.C. §§ 1324, 1326, 1330.

---

[2] Below, Defendants explained that Plaintiffs lack standing. *See* DE40 at 5-8. Due to space constraints, Defendants will reserve those arguments for their opening brief.

Because federal law "expressly confers enforcement authority on" specific federal of-
ficers, it "preclud[es] enforcement by" private plaintiffs. *Corey v. Rockdale Cnty.*, No. 1:22-
cv-3918, 2023 WL 6242669, at *5 (N.D. Ga. Aug. 28, 2023); *see also Armstrong*, 575 U.S.
at 328 (similar). That congressional limit makes sense, as prosecution is a "core execu-
tive power." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020); *see
also Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902-05 (10th Cir. 2017) (rejecting preemp-
tion challenge to Colorado's marijuana laws under the Controlled Substances Act).

The district court wrongly held that Congress displaced Plaintiffs only from pros-
ecuting a person for crimes, not from enforcing implied preemption created by those
same provisions. DE67 at 12 n.8. To the court, Plaintiffs "do[] not seek to enforce the
INA, but seek[] to avoid prosecution under a state law preempted by the INA." *Id.* Yet
implied preemption stems from Congress's "clear and manifest purpose" in a statute to
displace state law, and enforcing that purpose *is* enforcing the statute's rules. *Arizona*,
567 U.S. at 400. After all, if the INA contained an express preemption provision, Plain-
tiffs would be enforcing that provision by suing to preempt a state law; implied preemp-
tion is an implicit version of that same scenario.

Nor does the INA grant Plaintiffs privately enforceable, "personal rights." *Gon-
zaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). When suing in equity, the plaintiff must
come armed with a federal law endowing it with privately enforceable rights, *see Safe Sts.
All.*, 859 F.3d at 902-04, bestowed "in clear and unambiguous terms," *Gonzaga*, 536 U.S.
at 290. The only right Plaintiffs identify is the right not to be regulated because of

preemption, but that is insufficient. For a statute to grant rights, "its text must be phrased in terms of the persons benefited." *Id.* at 284. If anything, the INA restricts Plaintiffs' rights by criminalizing their conduct.

**B.     SB 4-C is not preempted by federal immigration law.**

This Court is also likely to reverse on the merits. The district court found that SB 4-C is facially field- and conflict-preempted. *See* DE67 at 22, 25. Under the standard for Plaintiffs' facial challenge, if any application of SB 4-C is not preempted, Plaintiffs lose. *Salerno*, 481 U.S. at 745.

**1.     SB 4-C is not field preempted in all applications.**

Field preemption is a "rare case[.]" *Garcia*, 589 U.S. at 208. To establish field preemption, Plaintiffs must identify a field fully occupied by federal law. *Id.* Then Plaintiffs must show that SB 4-C operates within that field in every application. *See Salerno*, 481 U.S. at 745. They fail at both steps.

a. To establish that a field is preempted, Plaintiffs must show that the "clear and manifest purpose of Congress" was a "complete ouster of state power" in that area. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976). That "can be inferred from a framework of regulation so pervasive" "that Congress left no room for the States to supplement it," or a "federal interest" "so dominant that the federal system will be assumed to preclude" complementary state laws. *Arizona*, 567 U.S. at 399. Because field preemption is strong medicine, the field must be narrowly defined. *See Hillsborough Cnty. v. Automated Med. Lab'ys*, 471 U.S. 707, 715-16 (1985).

7

Against that backdrop, the district court suggested that the INA preempts the field of any "movement of noncitizens." DE67 at 16. The statute does not support that sweeping vision of preemption. The district court relied on the supposed "comprehensive" nature of the INA and amorphous federal interests. DE67 at 16-18. But all the district court cited for that premise is "[t]he INA defines and prohibits illegal entry and reentry." *Id.* That Congress has criminalized conduct far from shows that it also foreclosed state laws. *See Garcia*, 589 U.S. at 212. Such a view would unwind countless overlapping state crimes, from manufacture of narcotics to fraud and murder.

The district court's analogy to alien registration—the sole field the Supreme Court has held preempted by the INA—was also inapt. DE67 at 16-17 (citing *Arizona*, 567 U.S. at 400-02). The INA's entry and reentry crimes are far less detailed than the alien-registration provisions, which define extensively what, when, how, and with whom aliens must register. *Compare* 8 U.S.C. §§ 1325, 1326, *with* 8 U.S.C. §§ 1301-06. Those provisions also uniquely limit enforcement of registration crimes to specific "person[s] authorized" by the "Attorney General." 8 U.S.C. § 1304(c). Unsurprisingly, the Court has declined to extend *Arizona*. *See Garcia*, 589 U.S. at 210.

Regardless, preemption may not be "inferred merely from the comprehensive character" of federal law alone. *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973). In *Arizona*, the Court relied on both comprehensiveness and the unique federal interests involved. *See Arizona*, 567 U.S. at 400-03. Plaintiffs do not identify any similarly unique federal interests in alien movement, nor do the ones in *Arizona* translate here.

There, registration of "perfectly law-abiding" aliens created expectations about the "protection of the just rights of a country's own nationals when those nationals are in another country." *Hines v. Davidowitz*, 312 U.S. 52, 64-66 (1941). Those expectations stemmed from "obligations" under treaties and the "customs defining with more or less certainty the duties owing by all nations to alien residents." *Id.* at 65. But entry crimes affect only *non-law-abiding* aliens. *Id.* at 64-66. The district court claimed that *Arizona* did not differentiate based on law-abiding status, DE67 at 20, but *Arizona* incorporated the explanation in *Hines*, which *did*, for why Congress created alien-registration "as a harmonious whole." 567 U.S. at 401.

*Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012), does not hold otherwise. DE67 at 17. There, this Court held that the INA preempted the field of "transportation, harboring, and inducement of unlawfully present aliens." *Ga. Latino*, 691 F.3d at 1266. But transporting and harboring are special because Congress has specifically limited state participation to arrest under federal law. *Id.* at 1264 (citing 8 U.S.C. § 1324(c)). Though claiming that the INA similarly 'confin[es] the prosecution of [illegal entry and reentry] to federal court,'" the district court cited nothing to support that conclusion. DE67 at 18. Nor could it, as the federal entry and reentry crimes contain nothing like Section 1324(c). If the district court was referring to the idea that federal crimes are prosecuted in federal court, that just describes the consequences of "overlap" in criminal law. *Garcia*, 589 U.S. at 212.

9

b. Even if there were field preemption over alien entry and removal, SB 4-C is still not preempted. State laws with only "some indirect effect" on that field "[are] not pre-empted." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308 (1988). Florida's law does not directly operate in the field of alien entry in every application. *See Salerno*, 481 U.S. at 745. Nor does it regulate admission or the process of removal. SB 4-C faithfully respects federal determinations that an alien may "remain in the United States temporarily or permanently." Fla. Stat. § 811.102(4)(a). And where an alien travels unassisted into Florida, it does not directly implicate the separate field of "prohibitions on the transportation" "of unlawfully present aliens," *Ga. Latino*, 691 F.3d at 1266, because someone *other than the alien* must provide that transportation.

### 2.    Plaintiffs have not shown that SB 4-C is conflict preempted in all applications.

Plaintiffs have also not surmounted the "high threshold" for conflict preemption. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2012) (plurality opinion). The district court erroneously found that SB 4-C interferes with federal enforcement discretion. DE67 at 23.

Prosecutorial discretion inheres in every criminal law, so that argument would unabashedly apply to every federal crime. Yet nothing about the "overlap" in federal and state criminal law demands preemption. *Garcia*, 589 U.S. at 212. And "the possibility that federal enforcement priorities might be upset is not enough" either. *Id.* Preemption

arises from "'the Laws of the United States,'" not federal officers' "enforcement priorities." *Id.*

*Georgia Latino* is not to the contrary. That case dealt with "transportation" by other individuals "of unlawfully present aliens"—and this Court was concerned that state enforcement of overlapping crimes would "threaten the uniform application of the INA" and potentially implicate foreign-policy interests unmoored from the INA's text and structure. *Ga. Latino*, 691 F.3d at 1266. That reasoning defies *Garcia* and should not be extended. *See* 589 U.S. at 202, 212.

## C.    SB 4-C does not violate the Dormant Commerce Clause.

The Dormant Commerce Clause, at its "very core," prevents economic discrimination between states, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023), meaning "measures [purposefully] designed to benefit in-state economic interests by burdening out-of-state competitors," *id.* Occasionally, courts look to a "more ambitious" and disfavored theory to "smoke out a hidden protectionism," *id.* at 371, 379, comparing "the burden imposed on interstate commerce" to see if it is "clearly excessive in relation to the putative local benefits," *id.* at 377.

Florida's law has nothing to do with economic protectionism. It does not "benefit in-state economic interests by burdening out-of-state competitors," *id.* at 369; it seeks to deter the influx of illegal aliens into Florida (no matter their residence) and prevent the many problems (social, moral, and criminal) that follow. The unnamed Plaintiffs prove that: Though they are Florida residents, they are subject to SB 4-C. And

11

nothing "disclose[s] purposeful discrimination against out-of-state" interests under the Supreme Court's balancing framework. *Id.* at 379.

The district court cited *Edwards v. California*, 314 U.S. 160 (1941), to say that states may not prohibit any crossing of state borders by individuals because it is "commerce." DE67 at 25-26. But if that is commerce, Congress has affirmatively prohibited it, 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1325(a), and so the Dormant Commerce Clause does not apply. *United States v. Texas*, 97 F.4th 268, 332 (5th Cir. 2024) (Oldham, J., dissenting). Still more, the law in *Edwards* was clearly protectionist. It barred the transportation of "indigent *non-residents*" into California—expressly discriminating against out-of-state economic interests. 314 U.S. at 174 (emphasis added).

### D. Alternatively, the district court lacked authority to bind Florida's law-enforcement officers, who are not parties.

At a minimum, this Court should narrow the scope of the injunction. *See* Order, *Garcia v. Exec. Dir., Fla. Comm'n on Ethics*, No. 23-12663 (11th Cir. Nov. 30, 2023). Under Rule 65, a court's order may "bind[] only" those who receive "actual notice" and fall into one of three categories: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with" the parties or their officers or agents. Fed. R. Civ. P. 65(d)(2); *see also United States v. Robinson*, 83 F.4th 868, 878 (11th Cir. 2023). That "embod[ies]" the historic limits of equity. *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017). Traditionally, a litigant was "not bound by a judgment to which she was not

a party," *Taylor v. Sturgell*, 553 U.S. 880, 888 (2008), ensuring that all persons "have their day in court." *Alemite*, 42 F.2d at 832-33.

Because Plaintiffs have not shown that Florida law-enforcement officers fit those criteria, the Court should narrow the injunction to cover only Defendants and those who, as a matter of fact, aid or abet efforts by Defendants to violate the injunction.

1. The first criterion is easy: "It is undisputed that law enforcement agencies are not named parties." DE67 at 38.

2. The second criterion also is not met. Law-enforcement officers are not Defendants' "officers, agents, servants, employees, [or] attorneys." Fed. R. Civ. P. 65(d)(2). Though Rule 65 does not define those terms, Congress presumptively "incorporate[d] the established [common-law] meaning of these terms." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989); *see also Robinson*, 83 F.4th at 880 (defining "employee" in Rule 65 according to the common law). To fall within the common-law definitions of the categories in Rule 65(d)(2)(B), law-enforcement officers must be subject to Defendants' control and wield authority to act on Defendants' behalf.[3] Neither element is met, because local law-enforcement agencies are independent from prosecutorial agencies under Florida's constitutional scheme.

---

[3] *See, e.g.*, Restatement (Third) of Agency §§ 2.01, 2.03 (Am. L. Inst. 2006) (agency); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992) (employees); *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003) (servants); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 557 n.9 (11th Cir. 1998) (officers).

Florida law makes that division clear. *See Peppers v. Cobb County*, 835 F.3d 1289, 1294 (11th Cir. 2016) (Georgia district attorney was "a legal entity separate from the County" because distinct constitutional provisions created those entities). In Florida, law-enforcement and prosecutorial agencies derive powers from separate constitutional[4] and statutory[5] sections. None of those sections grant Defendants control over law-enforcement officials, and Florida law is typically explicit when it grants such control. *See* Fla. Const. art. IV, § 4(b) (creating statewide prosecutor under the Attorney General's office); Fla. Stat. § 27.18 (permitting state attorneys to hire subordinates). Further underscoring Defendants' lack of control, Defendants cannot remove or discipline law-enforcement officers, nor do law-enforcement agencies draw their funds from Defendants' budgets. To top it off, many law-enforcement officers are elected by different constituencies, *e.g.*, Fla. Const. art VIII, § 1(d) (sheriffs), or appointed by different governments, *e.g.*, City of Miami Charter ch. 42, § 42-2 (police chief appointed by city manager). This Court has thus recognized the separation between law-enforcement and prosecutorial entities in Florida. *See City of South Miami v. Governor*, 65 F.4th 631, 641 (11th Cir. 2023) (Florida Attorney General cannot "control" local law enforcement).

---

[4] *Compare* Fla. Const. art. IV, § 4(b) (creating the Attorney General and statewide prosecutor); *id.* art. V, § 17 (creating state attorneys), *with id.* art. VIII, § 1(d) (creating sheriffs).

[5] *See, e.g.*, Fla. Stat. § 16.01 (Attorney General); Fla. Stat. §§ 27.02-.13, 27.18-.25 (state attorneys); Fla. Stat. § 30.15 (sheriffs); Fla. Stat. § 943.04(2)(a) (Florida Department of Law Enforcement); Fla. Stat. § 321.05 (Florida Highway Patrol); *see also* City of Miami Charter § 24 (Miami Police Department).

The district court held that, despite the lack of *legal* control, Defendants exercised enough "practical[]" control over law-enforcement entities to make them Defendants' "agents." DE67 at 38-41. But it is the "right to control," not practical control, that defines the agency relationship. *General Bldg. Contractors v. Pennsylvania*, 458 U.S. 375, 393-95 (1982). So practical sway over local officials does not matter. If such indirect control established agency, every law-enforcement officer could bind the Attorney General to contracts, Restatement (Third) of Agency § 6.01, or subject him to liability under *respondeat superior*, *id.* § 7.07. That is not the law. *Cf. State v. Spradlin*, 12 S.W.3d 432, 434 (Tenn. 2000) ("[p]olice officers" lack "authority to bind the [] attorney general" "not to prosecute").

In any event, the district court's evidence of practical control was weak. First, the court thought that the Attorney General's "power to file suit" against local officials established sufficient control. DE67 at 39 n.24. This Court rejected that premise in *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) ("That the Secretary must resort to judicial process if the Supervisors fail to perform their duties underscores her lack of authority over them.").

Next, the district court cited the Attorney General's tweets discussing "direction[s]" he has given to law-enforcement officials. DE67 at 39-40. Those directions, of course, recognize a partnership between law enforcement and the Attorney General, but they establish no "right to control." *General Bldg. Contractors*, 458 U.S. at 393-95. Plus, most of those tweets involved law-enforcement agencies headed by a multi-

member board on which the Attorney General sits. *See* Fla. Stat. § 20.201 (Florida Department of Law Enforcement); Fla. Stat. § 20.24 (Florida Highway Patrol). In context, the tweets at most reflect that the Attorney General *may* direct law enforcement when acting on a controlling board. That does not give him control over those agencies in his singular capacity. *See Support Working Animals v. Governor of Fla.*, 8 F.4th 1198, 1204 & n.4 (11th Cir. 2021).

Finally, the district court noted that the Attorney General is Florida's "chief legal officer," and that Florida courts give his opinions "careful consideration." DE67 at 40-41. Yet as the district court acknowledged in the same breath, the Attorney General's opinions are "not binding." *Id.*

3. Nor are law-enforcement officers invariably in "active concert or participation" with Defendants. Fed. R. Civ. P. 65(d)(2)(C); *ADT*, 853 F.3d at 1352. "[A] court of equity" "cannot lawfully enjoin the world at large," and due process entitles each person to "their day in court." *Alemite*, 42 F.2d at 832-33. Non-parties thus fall within the "active concert or participation" exception in two "limited" circumstances: when they are in "privity" with a party, or when they "aid and abet the party" to violate the injunction. *Robinson*, 83 F.4th at 881-82.

a. Law-enforcement officers lack privity with Defendants. "[P]rivity" exists only when a non-party "can be legally identified with an enjoined party," such that enjoining the non-party comports with due process. *Robinson*, 83 F.4th at 884. That designation is reserved for a Defendant's "successors and assigns" (inapplicable here) and those with

16

whom Defendants share a "legal identity." *Id.* To share legal identity, the non-party must have both (1) "a very close identity of interest" with the party, and (2) exercise "such significant control over the [party] *and* the underlying litigation that it is fair to say that the nonparty had his day in court." *Id.* That "limited class" prevents a party from "circumvent[ing] a valid court order merely by making superficial changes" in form. *Id.* at 884-85.

It is elemental that law-enforcement officers do not exercise "significant control over the [Defendants]" or control over "[this] litigation." *Robinson*, 83 F.4th at 884; *see supra* 14-16. They are separate constitutional entities, and law enforcement in Florida cannot issue binding directives to prosecutors. Plaintiffs have never argued otherwise.

Plaintiffs have not shown a sufficient identity of interests either. Law-enforcement officers are interested in arresting and "prevention and detection of crime," Fla. Stat. § 943.10(1), whereas state attorneys and Attorneys General are concerned with prosecution and legal process. That latter role implicates "their status as officers of the court," *Valdes v. State*, 728 So. 2d 736, 739 (Fla. 1999), in which they "represent the interests of the people of the State of Florida, not the interests of [an] arresting police officer." *Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998). For that reason, a host of courts hold that prosecutors are not in privity with arresting officers. This Court has held, for example, that a sheriff, "neither individually nor as sheriff," "shared an identity of interest" with the "prosecutor in [a] criminal case." *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir. 1985).

b. Next, there is no evidence of aiding and abetting. Such a showing requires (1) "the commission of the underlying offense by someone" other than the abettor, (2) "a voluntary act or omission" by the abettor, and (3) "a specific intent that such act or omission promote the success of the underlying criminal offense." *Havens v. James*, 76 F.4th 103, 115 n.13 (2d Cir. 2023); *see also United States v. Roosevelt Coats*, 8 F.4th 1228, 1248 (11th Cir. 2021). Under Rule 65, the underlying offense is a violation of the injunction, which requires that the enjoined party or its agents take some affirmative "act[] in violation of the injunction." *Robinson*, 83 F.4th at 885.

Here, there is no evidence that Defendants have taken or will take any "act[] in violation of the injunction." *Id.* Defendants are fully committed to abiding by the district court's orders while they challenge them. So there is no "underlying crime" to abet. *Rosemond v. United States*, 572 U.S. 65, 70 (2014).

c. Despite this Court's instructions in *Robinson* and *ADT*, the district court engaged with none of that analysis. It simply forged its own test for whether parties are acting in concert or participation. DE67 at 42 (asking whether there was "a purposeful acting of two or more persons together or toward the same end" or "a purposeful acting of one in accord with the ends of the other"). That defies precedent.

Compounding the problem, the district court erred under its own standard. It reasoned that law-enforcement officers "purposeful[ly] act[] . . . together or toward the same end" as the named Defendants because they "conduct arrests" so that prosecutors may "prosecute charges." DE67 at 42. But Florida prosecutors are enjoined from

18

prosecuting crimes under SB 4-C, so prosecutors may not work "together" with "or toward the same end" as law enforcement to enforce SB 4-C. *Id.* Even more, the district court's underlying premise—that arrests are merely precursors to prosecution—is wrong. Officers may arrest "for a wide variety of purposes," like deterrence or public safety, even if those purposes are "wholly unrelated to a desire to prosecute for crime." *Terry v. Ohio*, 392 U.S. 1, 13 (1968).

The court also incorrectly asserted that privity between state officials is irrelevant when suing "state officials in their official capacities" because such suits are "no different from a suit against the State." DE67 at 45 n.31. The entire point of *Ex Parte Young* is that suits against state officials *are* different than suits against the State. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (Suit against a state official could proceed because "he is not the State."). Were it otherwise, a plaintiff would need standing to sue just one state actor to open the spigot to injunctive relief against all state actors. That ignores *Jacobson, Support Working Animals,* and *City of South Miami,* which teach that a plaintiffs may not obtain relief against "independent officials" merely by suing one state officer. *Jacobson*, 974 F.3d at 1253.

Last, the district court's understanding of state-actor litigation flouts traditional notions of claim preclusion. Privity in this context is the same as privity in the res-judicata context. *ADT*, 853 F.3d at 1352. On the district court's understanding of privity, though, rulings against one state actor would bind in future cases against all state

actors. This Court has rejected that view. *See Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1580 (11th Cir. 1985).

## II.    THE REMAINING EQUITABLE FACTORS SUPPORT A STAY.

The equities favor a stay. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Even more so when a law regulates "harmful, constitutionally unprotected conduct." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

Plaintiffs also have unclean hands. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("[H]e who comes into equity must come with clean hands."). They seek to protect illegal conduct, such as driving without a license or working without authorization. DE4-4 ¶¶ 8–9 (VV); DE4-5 ¶ 7 (YM); DE4-2 ¶ 20 (WA). That they cannot do. *See Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985).

## CONCLUSION

The Court should stay the injunction or, at minimum, stay it insofar as the injunction applies to law-enforcement officers.

Dated: May 7, 2025                    Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

/s/ *Robert S. Schenck*
JEFFREY PAUL DESOUSA (FBN 110951)
  *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
DAVID M. COSTELLO (FBN 1004952)
  *Chief Deputy Solicitors General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,196 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Robert S. Schenck*
Assistant Solicitor General

## CERTIFICATE OF SERVICE

I certify that on May 7, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

/s/ Robert S. Schenck
Assistant Solicitor General