# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Docket No. 25-11469

FLORIDA IMMIGRANT COALITION, ET AL,

*Plaintiffs – Appellees,*

v.

JAMES UTHMEIER, ET AL,

*Defendants – Appellants.*

**On Appeal from**
United States District Court for the Southern District of Florida,
Nos. 1:25-cv-21524-KMW

## PLAINTIFFS-APPELLEES' OPPOSITION TO
## MOTION TO STAY INJUNCTION PENDING APPEAL

Omar Jadwat
Grace Choi
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Cody Wofsy
Spencer Amdur
Hannah Steinberg
Oscar Sarabia Roman
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Paul R. Chavez
Evelyn Wiese
Christina Isabel LaRocca
AMERICANS FOR IMMIGRANT
JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
T: (305) 576-6273
pchavez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

Miriam Haskell
Alana Greer
Will Mann
COMMUNITY JUSTICE PROJECT,
INC.
3000 Biscayne Blvd., Suite 106
Miami, FL 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com
will@communityjusticeproject.com

Amy Godshall
Amien Kacou
Daniel B. Tilley
ACLU FOUNDATION OF
FLORIDA, INC.
4343 West Flagler Street, Suite 400
Miami, FL 33134
T: (786) 363-2700
agodshall@aclufl.org
akacou@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiffs-Appellees add the following persons or entities, which were omitted from Defendants-Appellants' CIP:

1. Ward, Dennis

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: May 16, 2025     /s/ Cody Wofsy
           Cody Wofsy
           American Civil Liberties Union
           Foundation

           *Attorney for Plaintiffs–Appellees*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................3

  I. DEFENDANTS SHOW NO LIKELIHOOD OF SUCCESS ON THE

     MERITS.........................................................................................................3

    A. Plaintiffs May Sue In Equity.........................................................................3

    B. S.B. 4C Is Preempted. ...................................................................................5

    C. S.B. 4C Violates the Dormant Commerce Clause .......................................11

  II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN

     PROHIBITING PREEMPTED ARRESTS. ....................................................13

  III. THE EQUITES STRONGLY MILITATE AGAINST A STAY. .................20

CONCLUSION ....................................................................................................23

# INTRODUCTION

The district joined every other court to have considered laws like Florida's S.B. 4C in holding that this effort at State immigration lawmaking is preempted by the exhaustive federal regulation of the entry of noncitizens. *See United States v. Texas*, 97 F.4th 268, 298 (5th Cir. 2024); *United States v. Iowa*, 126 F.4th 1334, 1353 (8th Cir.), *vacated as moot*, No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1007 (W.D. Okla. 2024); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, --- F. Supp. 3d ---, 2025 WL 1237305, at *20 (D. Idaho Apr. 29, 2025) (hereinafter "*IORC*"). Those holdings echo this Court's and the Supreme Court's longstanding recognition that immigration is an exclusively federal power and states may not engage in immigration regulation or unilateral enforcement. *See Arizona v. United States*, 567 U.S. 387, 399-403, 407-10 (2012); *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1262-67 (11th Cir. 2012) (hereinafter "*GLAHR*"); *United States v. Alabama*, 691 F.3d 1269, 1285-88 (11th Cir. 2012). Defendants fail to grapple with this mountain of authority.

Nor do Defendants offer any other basis to stay the injunction in full or part. Defendants' motion does not contest standing, nor the district court's class certification, nor the resulting statewide scope of the injunction. Defendants assert that Plaintiffs lack a cause of action to enforce federal immigration law, but as the

1

district court observed, Plaintiffs are not trying to enforce federal immigration law and instead invoke the long tradition of equitable challenges to preempted state laws. Defendants also seek to limit the district court's injunction, arguing the police should be permitted to make arrests for a crime which *cannot be prosecuted* because the injunction binds every prosecutor in the state. But under Federal Rule of Civil Procedure 65, the district court was empowered to bind those in "active concert or participation with" Defendants—which plainly encompasses the close relationship between police and prosecutors. The Court should decline to upend a century-long status quo and should deny the stay.

## BACKGROUND

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona*, 567 U.S. at 394 (2012). Exercising that power, Congress has enacted a pervasive system in the Immigration and Nationality Act ("INA") to regulate entry into and continued presence in the United States. *See generally* 8 U.S.C. §§ 1101, 1151–1382. This system includes federal offenses for unlawful entry and reentry into the country, which are prosecuted in federal court at the discretion of federal prosecutors, subject to rules and exceptions specified by Congress. *See id.* §§ 1325, 1326, 1329. This system also includes processes by which noncitizens may be detained pending a decision on whether they are to be removed, *see id.* §§ 1225, 1226, including full

removal proceedings with trial-like processes subject to administrative and judicial appeals, *see id.* § 1229a, and numerous protections that are available despite unlawful entry, *see id.* §§ 1101(a)(15)(U), 1101(a)(15)(T), 1101(a)(27)(J), 1158(a)(1), 1229b(b), 1231(b)(3). Because "[t]his system is comprehensive, complex, and national in scope[,]" *Texas*, 97 F.4th at 285, it is imperative that the federal government maintain its control and discretion over it, *see Arizona*, 567 U.S. at 396.

Florida's S.B. 4C criminalizes "illegal entry"—"knowingly enter[ing] or attempt[ing] to enter" Florida "after entering the United States by eluding or avoiding examination or inspection by immigration officers"—and "illegal reentry" —"enter[ing], attempt[ing] to enter, or [being] at any time found in" Florida after "having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding." Fla. Stat. §§ 811.102(1), 811.103(1). These crimes carry significant mandatory minimum sentences and mandatory pre-trial detention. *Id.* §§ 811.102(1)-(2), (5), 811.103(2)-(4).

## ARGUMENT

### I. DEFENDANTS SHOW NO LIKELIHOOD OF SUCCESS ON THE MERITS.

#### A. Plaintiffs May Sue In Equity.

The district court rightly held that Plaintiffs may sue under "the Court's equitable jurisdiction pursuant to *Ex parte Young*." DE67 at 12-13 n.8, *Florida Immigrant Coal. v. Uthmeier*, No. 25- cv-21524 (S.D. Fla. Apr. 29, 2025) (incorporating reasoning from *Farmworker Ass'n of Fla., Inc. v. Uthmeier*, No. 23-cv-22655, 2025 WL 1133682 (S.D. Fla. Apr. 17, 2025) (hereinafter "*FWAF*")). Defendants assert Plaintiffs lack a statutory private cause of action, DE6 at 5-7 ("Mot."), but that is unnecessary to invoke the court's equitable powers. *See, e.g.*, *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1276 (11th Cir. 2018) (citing, *inter alia*, *GLAHR*, 691 F.3d at 1262 (holding that plaintiffs could challenge preempted state immigration law)); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28, 331-32 (2015); (analyzing "power of federal courts of equity" separately from a private cause of action). Indeed, even *Safe Streets Alliance v. Hickenlooper*, on which Defendants rely, Mot. 6, confirmed that a "court may issue an injunction upon finding the state regulatory actions preempted," "if an individual claims federal law immunizes him from state regulation"—precisely what Plaintiffs claim. 859 F.3d 865, 906 n.19, 892 n.5 (10th Cir. 2017); *see Shen v. Simpson*, No. 23-12737, ECF No. 59 (11th Cir. Feb. 1, 2024) (granting injunction pending appeal to private plaintiffs on preemption grounds).

Defendants argue that the INA displaces this equitable power, noting that federal officials are empowered to enforce federal provisions. Mot. 5-6. But

Plaintiffs do not seek to compel federal enforcement or prosecute violations under the INA. Instead, they seek to bar enforcement of a preempted parallel state regime against them. Simply put, there is no statutory scheme designated for adjudicating challenges to preempted state immigration statutes—much less one that Congress determined should be the "'sole remedy.'" DE67 at 13 n.8 (quoting *FWAF*, 2025 WL 1133682, at *5 (in turn quoting *Armstrong*, 575 U.S. at 328)). Nor can Defendants point to any case that has found preclusion in similar circumstances. In *Armstrong*, for example, the Medicaid Act channeled quasi-contractual claims concerning state breaches of federal–state agreements into an administrative process. 575 U.S. at 327-29. The Supreme Court held that private efforts to enforce the agreement were precluded, not only because Congress had provided the sole remedy, but also because it selected a "judicially unadministrable" standard. *Id.* at 328. Neither is true here. *FWAF*, 2025 WL 1133682, at *3-7 & n.6 (exhaustively rejecting this argument and collecting cases).

### B. S.B. 4C Is Preempted.

1. The district court correctly held that "S.B. 4-C is likely field preempted by federal entry and reentry laws." DE67 at 22. Indeed, that field involves both a dominant federal interest and a pervasive federal regulatory scheme. *See Arizona*, 567 U.S. at 399.

Defendants claim that such matters involve no "unique federal interests." Mot. 8. But this Court has *already* recognized "an overwhelmingly dominant federal interest" in the field of "entry, movement, and residence of [noncitizens] within the United States." *GLAHR*, 691 F.3d at 1264. Rightly so: "For nearly 150 years, the Supreme Court has held that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power." *Texas*, 97 F.4th at 278-79 (collecting cases). This unbroken line of precedent is grounded in the principle that immigration powers, including the power "to forbid the entrance of foreigners," are "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). States, by contrast, are not endowed with such "powers of external sovereignty." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316-18 (1936); *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875).

Consistent with this dominant federal interest, Congress, through the INA, has enacted a "pervasive" framework to regulate individuals' entry and presence in the United States—particularly "unauthorized aliens," the same people Florida is attempting to regulate through S.B. 4C. *Arizona*, 567 U.S. at 399. This Court has likewise recognized "[t]he comprehensive nature" of "federal statutes criminalizing the acts undertaken by aliens and those who assist them in coming to, or remaining within, the United States." *GLAHR*, 691 F.3d at 1264; *see Texas*, 97 F.4th at 286

(describing "detailed statutory scheme" governing the "unlawful entry and reentry of noncitizens," which indicates that Congress "occupies [the] entire field"); *Lozano v. City of Hazleton*, 724 F.3d 297, 315 (3d Cir. 2013) (similar).

Defendants resist that conclusion by seeking to isolate the federal entry and reentry crimes. Mot. 8. But those provisions are just part of an intricate statutory scheme, the "central concern" of which "is the entry and stay of aliens in the United States." *Texas*, 97 F.4th at 280 (internal quotation marks omitted). "Congress established a comprehensive framework to identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter unlawfully." *Id*. at 283 (footnotes omitted). And it gave *federal* officers extensive discretion to decide which of the various tools to employ and under which circumstances. *Id*. at 280-82 (citing *United States v. Texas*, 599 U.S. 670 (2023)). This scheme leaves no space for states to award themselves the power to use one of those tools without federal control. *See Arizona*, 567 U.S. at 402 (finding field preemption where "the State would have the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies").

Defendants seek to avoid *Arizona*'s field-preemption analysis, but everything the Supreme Court said about noncitizen registration applies with even greater force

to the "sensitive topic of noncitizens entering the country." *Texas*, 97 F.4th at 283. Nor can they escape the holding by labeling plaintiffs as "*non-law-abiding* aliens." Mot. 9. As the district court pointed out, the law in *Arizona* applied only to undocumented people. DE67 at 20. If Defendants' position were correct, *Arizona* would have yielded the opposite result.

Defendants suggest that *GLAHR* is distinguishable because "Congress has specifically limited state participation to arrest" when it comes to transportation and harboring crimes. Mot. 9. That does not follow. Congress expressly permitted state officers to make arrests for the federal statute at issue in *GLAHR*, 8 U.S.C. § 1324(c), and this Court still found parallel state prosecutions preempted, particularly given the "overwhelmingly dominant federal interest in the field" of, *inter alia*, "entry," 691 F.3d at 1264. The case for preemption is even stronger here, as Congress has not expressly invited state arrests—much less permitted state prosecutions. *See Texas*, 97 F.4th at 287 n.144 ("the intersecting web of national immigration laws does not contemplate state regulation"). Indeed, numerous courts have held this kind of law preempted—yet Defendants do not even acknowledge those decisions. *See* Mot. 12 (citing only *Texas* dissent).

Defendants deny that S.B. 4C operates in the field of entry and reentry, Mot. 10, but the district court rightly rejected that sleight-of-hand, DE67 at 22 n.14.[1] The statute is directly modeled on the federal entry and reentry crimes, and makes entry and reentry into the United States key elements. Nor does it help that S.B. 4C largely "tracks federal law." Mot. 1. In a preempted field, even state laws that have "the same aim as federal law and adopt[] its substantive standards" are invalid, because the "basic premise of field preemption" is clear: "States may not enter, in any respect, an area the Federal Government has reserved for itself." *Arizona*, 567 U.S. at 402. And here, there is a "further intrusion upon the federal scheme," *id.* at 402-03, because S.B. 4C deviates from federal law, imposing more severe penalties and mandatory pretrial detention, DE67 at 23-24. These mismatches with "federal law simply underscore the reason for field preemption." *Arizona*, 567 U.S. at 403.

2. The district court likewise correctly held S.B. 4C conflict preempted. DE67 at 22-24.

Among other flaws, S.B. 4C violates *Arizona*'s core teaching that states cannot unilaterally regulate immigration "without any input from the Federal Government." 567 U.S. at 408. Letting Florida unilaterally arrest, detain, and prosecute noncitizens for entry and reentry crimes would allow it to "achieve its own

---

[1] Contrary to Defendants' suggestion, Mot. 8, the district court did not analyze the field in terms of "movement of noncitizens," *see* DE67 at 16.

immigration policy," *id*.—a result that *Arizona* repeatedly rejects. *See also Texas*, 97 F.4th at 289-90.

It similarly frustrates Congress's statutory scheme by preventing federal authorities from balancing a range of interests in deciding how to process noncitizens who enter the United States. A "principal feature" of the immigration system is the "broad discretion" Congress gave to federal officials. *Arizona*, 567 U.S. at 396. Specifically, Congress has provided federal Executive Branch officials a range of tools to address noncitizens who enter without legal authorization, including criminal charges under 8 U.S.C. §§ 1325 or 1326. *See id.* at 395-96, 409. "By confining the prosecution of federal immigration crimes to federal court, Congress limited the power to pursue those cases to the appropriate United States Attorney." *GLAHR*, 691 F.3d at 1265. Such federal discretion is critical because it "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives,'" *Texas*, 599 U.S. at 679 (citation omitted), and "immediate human concerns," *Arizona*, 567 U.S. at 395-96.

Under S.B. 4C, Florida has "the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials" conclude it would harm relations with a foreign country, undermine humanitarian protections, jeopardize a criminal investigation, or conflict with international obligations. *Arizona*, 567 U.S. at 396-97, 408; DE67 at 23. S.B. 4C thus casts aside

the "federal concerns [and] the priorities that Congress has explicitly granted executive agencies the authority to establish" with respect to enforcement of the Nation's immigration laws. *GLAHR*, 691 F.3d at 1265. Indeed, as this Court has observed, "[e]ach time a state enacts its own [law] parallel to the INA, the federal government loses 'control over enforcement of the INA, thereby 'further detract[ing] from the integrated scheme of regulation created by Congress.'" *Id*. at 1266 (warning of "fifty individual attempts to regulate immigration-related matters") (citation omitted).

In response, Defendants suggest (at 10-11) only that *GLAHR* was abrogated by *Kansas v. Garcia*, 589 U.S. 191 (2020). As the district court explained, that case is inapposite, as it involved generally applicable identity fraud prosecutions. DE67 24 n.15. It certainly cannot abrogate this Court's holdings about state *immigration* laws.

Defendants suggest that some applications of the law escape preemption. Mot. 2, 7, 10. But courts do not uphold preempted laws merely because a defendant can "conjure up" a "hypothetical factual scenario" in which the statute might be valid. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022) (citing *Lozano*, 724 F.3d at 313 n.22). Regardless, S.B. 4C intrudes on a preempted field and disrupts federal authority and discretion in every application.

### C. S.B. 4C Violates the Dormant Commerce Clause

Preemption is an ample basis to reject Defendants' motion. But S.B. 4C also violates the Commerce Clause.

Contrary to Defendants' argument (at 11), laws that block the flow of commerce at a state's borders violate the Dormant Commerce Clause. *See S. Waste Sys., LLC. v. City of Delray Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005) (Clause bars "impeding the flow of goods and services across state borders, *or* [] favoring in-state economic interests") (emphasis added). Indeed, such statutes represent "[t]he clearest example of [prohibited] legislation." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935) (holding that states cannot "set a barrier to traffic between one state and another").

Accordingly, the Supreme Court invalidated a state law which attempted to "fenc[e] out indigent immigrants" from California. *Philadelphia*, 437 U.S. at 627. The State claimed that "the huge influx of migrants into California" had "resulted in problems of health, morals, and especially finance." *Edwards v. California*, 314 U.S. 160, 173-74 (1941). Similarly, Florida seeks to criminalize entry of noncitizens and prevent what it perceives to be "the many problems (social, moral, and criminal) that follow." Mot. 11. Defendants try to avoid *Edwards*, Mot. 12, but nothing in the Court's analysis turned on that statute's limitation to non-residents. 314 U.S. at

173. Nor has Congress made it a crime to enter one state from another, so Defendants' reliance on federal law, Mot. 12, is similarly unavailing.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN PROHIBITING PREEMPTED ARRESTS.

The district court determined that its injunction should apply not only to all prosecutors statewide—who are parties to this litigation—but also to Florida law enforcement. That determination is reviewed for abuse of discretion. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 275 (2d Cir. 2011); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842-43 (7th Cir. 2012).

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction may bind not only "the parties" and their "agents" but also "other persons who are in active concert or participation with" the parties or their agents. Law enforcement officers fall comfortably within this authority, and the district court was well within its discretion to enjoin them from arresting under a preempted law that cannot be lawfully prosecuted. Indeed, Defendants acknowledge "a partnership between law enforcement and the Attorney General." Mot. 15; *see* DE67 at 42-43.

Accordingly, courts routinely extend injunctions against state laws to categories of law enforcement officers who are not named as defendants. DE67 at 42-45; *see also, e.g.*, *Am. Booksellers Ass'n, Inc. v. Webb*, 590 F. Supp. 677, 693 (N.D. Ga. 1984) ("state law enforcement officials also will be bound by the Court's injunction"); *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470

F. Supp. 3d 888, 909 n.9 (S.D. Ind. 2020) ("The Court finds that all law enforcement agencies and prosecutors in Indiana are acting in concert with the parties in the enforcement of [the invalid statute]"); *Rhode v. Bonta*, 713 F. Supp. 3d 865, 888 (S.D. Cal. 2024) (enjoining the "Attorney General . . . and those duly sworn state peace officers and federal law enforcement officers" with knowledge of the injunction); *Doe #1 v. Lee*, No. 16-cv-02862, 2021 WL 1264433, at *2 n.1 (M.D. Tenn. Apr. 5, 2021) (similar); *Doe v. Harris*, No. C12-5713, 2012 WL 6101870, at *2 (N.D. Cal. Nov. 7, 2012) (similar).

Defendants argue for a sea-change. On their view, a certified statewide class cannot obtain full protection by suing every prosecutor's office alone—it must also name each of Florida's approximately 373 law enforcement agencies as defendants.[2] Otherwise, police exercising the authority of the State of Florida may continue to make arrests for a crime which a court has determined is unconstitutional, and which it has barred from being prosecuted statewide. Yet Defendants cite *no* case endorsing this radical view. To the contrary, every case of which Plaintiffs are aware has endorsed the common-sense understanding that Rule 65 allows district courts to enjoin law enforcement officers working together to enforce state criminal law. *See, e.g.*, *ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999).

---

[2] Dep't of Just., Bureau of Justice Statistics, *Census of State and Local Law Enforcement Agencies, 2018 – Statistical Tables* 5 (Oct. 2022), https://perma.cc/4CT2-DXZF.

To justify this result, Defendants urge an atextual narrowing of Rule 65. Mot. 18. But the district court applied Rule 65(d)(2)'s plain text, which authorizes injunctions to bind other persons who are "in active concert or participation with" the parties or their agents. "Federal Rules take effect after an extensive deliberative process" and "[c]ourts are not free to amend a rule outside the process Congress ordered." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Where, as here, Congress established a particular standard—"active concert or participation"— courts "lack authority to substitute for [that test] a standard never adopted." *Id*. at 622. Here, the Rule's standard is plainly satisfied. *See Jeffers v. United States*, 432 U.S. 137, 149 (1977) ("concert" means "agreement in a design or plan"); *Participation*, Merriam Webster's Dictionary ("taking part in something"). And the district court reasonably concluded that arrests would allow the State to effectively sidestep this injunction. DE67 at 42-45.

Defendants wrongly contend that this Court's precedents instead require a person to fall within narrow understandings of "privity" or "aiding and abetting" to empower district courts to bind them. Mot. 16-18. But *United States v. Robinson*, on which Defendants rely, *id*. at 12-17, certainly did not so hold. There, this Court assessed in a backwards-looking contempt analysis whether a private individual was bound by an injunction that did not specifically mention her; the Court emphasized "due-process considerations," namely that "a person must first know that she is

15

bound by an injunction before she can be required to comply with it." 83 F.4th 868, 879 (11th Cir. 2023). To the extent the Court envisioned a narrower scope for Rule 65 there, that only makes sense in the context of cases, like *Robinson*, involving private parties. *Id.* at 884. Those parties may have due process rights, so courts are understandably hesitant to enjoin them or hold them in contempt without a strong showing that their interests are represented. But here, the enjoined non-parties are, like Defendants, government officers—and suits or injunctions against them in their official capacities are effectively against the State. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). They have no personal interest in making arrests— only the shared state interest in enforcing S.B. 4C.[3] And unlike the retrospective posture of *Robinson*, here there is no question of who is covered by the injunction— the district court expressly included law enforcement. In a case like this one, the plain text of Rule 65 must control.

For example, in *Johnson*, a suit against the Governor and Attorney General, nonparty district attorneys challenged their inclusion in an injunction, urging that they "received no notice of, nor have they participated in, this action." 194 F.3d at

---

[3] Defendants seek to muddy the waters by pointing out that, under *Ex parte Young*, the suit must be against the officer, not the State. Mot. 19. But this Court has emphasized that the *Ex parte Young* doctrine is "a legal 'fiction' because it creates an imaginary distinction between the state and its officers." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). That fiction does not create real independent interests that the police would have a right to vindicate here.

1163. The Tenth Circuit easily rejected that argument, noting that "[t]his action is a facial challenge to a New Mexico statute, brought against the governor and attorney general of New Mexico in their official capacities," and thus "is an action against the State of New Mexico." *Id.* The court had no need to look beyond the plain language of the Rule when it came to binding official-capacity state officers in a facial challenge to a state law. So too here: Florida law enforcement officers arresting people under S.B. 4C are acting in active concert and participation with Defendants and are properly bound by the injunction.

Likewise, *Jacobson v. Florida Secretary of State,* 974 F.3d 1236, 1269 (11th Cir. 2020), on which Defendants rely, Mot. 15, 19, bolsters Plaintiffs' argument. *Jacobson* held that the Plaintiffs lacked standing to sue the named defendant—which is not contested in this motion. 974 F.3d at 1246. But in the context of injunctions against official-capacity officers, the court confirmed that "a district court may bind nonparties 'who are *in active concert*' with a defendant" so long as "a plaintiff validly invokes federal jurisdiction by satisfying the traceability and redressability requirements of standing against a defendant." *Id.* at 1255 (emphasis added). That plain-text standard—"active concert"—is exactly what the district court applied.[4]

---

[4] The other standing cases Defendants cite (at 19) are inapposite as they did not address Rule 65.

Arrests under S.B. 4C are textbook examples of such concert and participation. An arrest is the first indispensable step in any prosecution and directly advances the enforcement of S.B. 4C. *See Terry v. Ohio*, 392 U.S. 1, 26 (1968) ("An arrest is the initial stage of a criminal prosecution."). Defendants misleadingly cite *Terry* to argue that officers may "arrest" for a wide variety of purposes, even if unrelated to prosecution. Mot. 19. But in that cited passage, *Terry* referred to *encounters*—not arrests—and offered examples like escorting an intoxicated person home "with no intention of arresting" the individual or mediating a domestic dispute. 392 U.S. at 13 & n.9. In any event, at issue here are arrests *for a violation of S.B. 4C*, not for other purposes. The only thing that could possibly justify such an arrest is future prosecution.

Regardless, law enforcement would satisfy even the artificially narrowed understanding of Rule 65 that Defendants advocate. In the context of this kind of official-capacity suit, law enforcement is in privity with prosecutors because their "rights and interests" are already being "represented and adjudicated" in these proceedings. *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).[5] That stands in contrast to cases like *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir. 1985) (cited at Mot. 17), which involved a damages suit against a

---

[5] Although privity in this context may be "similar" to res judicata, it is not the same. *ADT*, 853 F.3d at 1352.

sheriff in his *individual* capacity—a context where the officer's personal liability diverges from the prosecutor's institutional interests. Likewise, law enforcement satisfies the standard for aiding and abetting in this civil context, which turns on whether a nonparty "consciously, voluntarily, and culpably participate[d] in or support[ed] the relevant wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 505 (2023). Florida law enforcement officers' arrests under S.B. 4C can only be justified as the prelude to prosecutions—which would be wrongful under the injunction. *See id.* at 506 (liability attaches where assistance furthers a wrongful act). Finally, as the district court held, law enforcement officers qualify as "agents" because Defendants plainly exercise control over their conduct. DE67 at 38-41. Indeed, under his statutory authorities, the Attorney General has previously publicly threatened sanctions and removal against officials who do not comply with state immigration enforcement mandates—clear exercises of control intended to compel compliance. *See id.* at 39-40.

*    *    *

Defendants' position would put law enforcement agencies and officers in a perilous position, exposing them to civil liability for arrests under S.B. 4C. Where a statute is enjoined and no longer carries the force of the law, there can be no crime—and no probable cause—to support arrest. *See Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) ("When [the] purposes [of an arrest] are spent, further

seizure is unreasonable"). Law enforcement officers who arrest under S.B. 4C, or any enjoined law, act without legal authority and violate the Fourth Amendment. The district court's injunction, by contrast, provides the State every opportunity to defend its law, while also providing full, reasonable relief to the class.

## III. THE EQUITES STRONGLY MILITATE AGAINST A STAY.

Florida cannot claim any harm from being unable to enforce a preempted law. *See Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation."). And a stay is meant "to preserve the status quo during the appeal[,]" not upend it. *United States v. Cross Senior Care Inc., LLC*, 831 F. App'x 944, 946 n.3 (11th Cir. 2020) (unpublished). For over a century, the Supreme Court has made clear that states are barred from enforcing a law like S.B. 4C. Courts across the country done the same. *See supra*. Thus, Florida's argument that it has suffered irreparable injury from having its preempted law enjoined, Mot. 20, is unavailing.

Defendants' equities arguments are even weaker when it comes to the scope of the injunction. For if the Court agrees that Plaintiffs are likely to succeed on the merits of their claims, the non-party police can have no interest whatsoever in nevertheless continuing to enforce S.B. 4C against class members.

By contrast, "absent an immediate pause to enforcement of S.B. 4-C, [Plaintiffs] will suffer irreparable harm by being placed at risk of arrest, prosecution,

and detention under an unconstitutional state statute." DE67 at 26. Indeed, Florida has demonstrated unwavering determination to enforce S.B. 4C by arresting "more than a dozen persons . . . even after the [district] [c]ourt entered the TRO enjoining [its] enforcement." *Id.* at 27. And despite the district court's clear directive, Attorney General Uthmeier troublingly sent a "letter to law enforcement agencies in Florida advising them . . . that 'no lawful, legitimate order currently impedes [them] from continuing to enforce' S.B. 4-C." *Id.* at 48 (emphasis omitted). Florida even arrested and detained *a United States citizen* under S.B. 4C. *See id.* at 27. The district court's order protects the entire State from this unconstitutional statute.

There is also a significant public interest in upholding federal immigration laws and protections against state intrusion. *See Alabama*, 691 F.3d at 1301 ("Frustration of federal statutes and prerogatives are not in the public interest . . . ."); *Iowa*, 126 F.4th at 1353 ("[T]he federal interest prevail[s] over state interests in the area[] of immigration . . . ."); *Texas*, 97 F.4th at 296 (similar).

In a last-ditch effort, Defendants offer a conclusory invocation of the unclean hands doctrine, suggesting Plaintiffs "seek to protect illegal conduct, such as driving without a license or working without authorization." Mot. 20. But there is no evidence in the record about such supposed activities. *See Farmworker Ass'n of Fla. v. Moody*, 734 F. Supp. 3d 1311, 1343 (S.D. Fla. 2024) (rejecting doctrine where unsupported by record evidence). In any event, Defendants fail to establish (1) an

"unconscionable act," (2) with "immediate and necessary relation to" the claim before the court (3) that "affect[s] the equitable relations between the parties." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).

First, Defendants have not shown that "driving without a license or working without authorization" "comes anywhere near constituting an 'unconscionable act.'" *Farmworker Ass'n of Florida*, 734 F. Supp. 3d at 1343. Second, Defendants have not shown that any illegal conduct Plaintiffs have engaged in is "directly related" to Plaintiffs' claim—a challenge to the validity of a preempted state entry and reentry law. *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). Third, Defendants have not shown that any illegal conduct Plaintiffs have engaged in "personally injured" them. *Id.*; *see IORC*, 2025 WL 1237305, at *8-9 (rejecting application of unclean hands doctrine to preemption case because Plaintiffs' violation of federal immigration laws "does not relate to the equitable relationship between Plaintiffs and [State] Defendants in this case"). To the contrary, courts routinely adjudicate cases like this one. *See, e.g.*, *GLAHR*, 691 F.3d at 1258-59 (finding that undocumented immigrant and person who regularly transported undocumented immigrants had standing to challenge preempted state law); *Lozano v. City of Hazleton*, 620 F.3d 170, 193-94 (3d Cir. 2010) (rejecting unclean hands argument in preemption case), *vacated on other grounds*, 563 U.S. 1030 (2011); *IORC*, 2025 WL 1237305, at *8-9 (same).

# CONCLUSION

The Court should deny Defendants' motion to stay the preliminary injunction

order.

Dated: May 16, 2025                  Respectfully Submitted

                                     */s/ Cody Wofsy*
Omar Jadwat                          Cody Wofsy
Grace Choi                           Spencer Amdur
AMERICAN CIVIL LIBERTIES             Hannah Steinberg
UNION FOUNDATION                     Oscar Sarabia Roman
IMMIGRANTS' RIGHTS PROJECT           AMERICAN CIVIL LIBERTIES
125 Broad St., 18th Floor            UNION FOUNDATION
New York, NY 10004                   IMMIGRANTS' RIGHTS PROJECT
T: (212) 549-2660                    425 California Street, Suite 700
ojadwat@aclu.org                     San Francisco, CA 94104
gchoi@aclu.org                       T: (415) 343-0770
                                     cwofsy@aclu.org
Paul R. Chavez                       samdur@aclu.org
Evelyn Wiese                         hsteinberg@aclu.org
Christina Isabel LaRocca             osarabia@aclu.org
AMERICANS FOR IMMIGRANT
JUSTICE                              Amy Godshall
6355 NW 36 Street, Suite 309         Amien Kacou
Miami, FL 33166                      Daniel B. Tilley
T: (305) 576-6273                    ACLU FOUNDATION OF
pchavez@aijustice.org                FLORIDA, INC.
ewiese@aijustice.org                 4343 West Flagler Street, Suite 400
clarocca@aijustice.org               Miami, FL 33134
                                     R: (786) 363-2700
Miriam Haskell                       agodshall@aclufl.org
Alana Greer                          akacou@aclufl.org
Will Mann                            dtilley@aclufl.org
COMMUNITY JUSTICE PROJECT,
INC.                                 *Counsel for Plaintiffs-Appellees*
3000 Biscayne Blvd., Suite 106
Miami, FL 33137
T: (305) 907-7697

miriam@communityjusticeproject.com
alana@communityjusticeproject.com
will@communityjusticeproject.com

# CERTIFICATE OF COMPLIANCE

1.  This document complies with Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5199 words.

2.  This document complies with the typeface and type-style requirements of Fed. R. App. P 27, Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Cody Wofsy*
Cody Wofsy

**CERTIFICATE OF SERVICE**

I certify that, on May 16, 2025, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Eleventh Circuit via the Court's CM/ECF document filing system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Cody Wofsy*
Cody Wofsy