# In the United States Court of Appeals for the Eleventh Circuit

FLORIDA IMMIGRANT COALITION, ET AL.,
*Plaintiffs-Appellees,*

v.

JAMES UTHMEIER,
IN HIS OFFICIAL CAPACITY AS FLORIDA
ATTORNEY GENERAL, ET AL.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:25-cv-21524-KMW

## APPELLANTS' REPLY IN SUPPORT OF MOTION TO STAY INJUNCTION PENDING APPEAL

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
DAVID M. COSTELLO
  *Chief Deputy Solicitors General*
ROBERT S. SCHENCK
CHRISTINE PRATT
  *Assistant Solicitors General*
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*robert.schenck@myfloridalegal.com*

May 21, 2025                    *Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Defendants certify that, to the best of their knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1.      Amdur, Spencer

2.      Bakkendahl, Thomas

3.      Bartlett, Bruce

4.      Basford, Larry

5.      Brodsky, Ed

6.      Campbell, Jack

7.      Chavez, Paul R.

8.      Choi, Grace

9.      Costello, David M.

10.     Cox, Alexcia

11.     Cox, Nicholas B.

12.     DeSousa, Jeffrey P.

13.     Durrett, John

14.     Farmworker Association of Florida, Inc.

15.     Florida Immigrant Coalition

16.     Fox, Amira D.

17.     Gladson, William

18.     Godshall, Amy N.

19.     Goodman, Hon. Jonathan

20.     Greer, Alana J.

21.     Haas, Brian

22.     Haskell, Miriam F.

23.     Jadwat, Omar

24.     Kacou, Amien

25.     Kramer, Brian S.

26.     Lamia, Christine

27.     Larizza, R.J.

28.     LaRocca, Christina I.

29.     Lopez, Susan S.

30.     Madden, Ginger Bowden

31.     Mann, William C.

32.     Nelson, Melissa

33.     Pratt, Christine K.

34.     Pryor, Harold F.

35.     Roman, Oscar S.

36.     Rundle, Katherine Fernandez

37.     Scheiner, William

38.     Schenck, Robert S.

39.     Stafford, William III

40.     Steinberg, Hannah

41.     Tilley, Daniel B.

42.     Uthmeier, James

43.     V.V.

44.     Wiese, Evelyn

45.     Williams, Hon. Kathleen M.

46.     Wofsy, Cody

47.     Worrell, Monique H.

48.     Y.M.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Argument ............................................................................................................. 1

I.      Plaintiffs lack a cause of action to enforce federal immigration law.
        ............................................................................................................. 1

II.     SB 4-C is not facially preempted by federal immigration law. ............... 2

        1.      SB 4-C is not field preempted in all applications. ........................ 2

        2.      Plaintiffs have not shown that SB 4-C is conflict
                preempted in all applications. ............................................... 6

III.    SB 4-C does not violate the Dormant Commerce Clause ....................... 7

IV.     The district court lacked authority to bind Florida's law-
        enforcement officers. ...................................................................... 8

V.      The remaining equitable factors support a stay. ................................ 10

Conclusion ........................................................................................................ 10

Certificate of Compliance ................................................................................. 12

Certificate of Service ........................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States,*
    567 U.S. 387 (2012) ............................................................. 3, 4, 6

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) .................................................................. 1, 2

*City of El Cenizo v. Texas,*
    890 F.3d 164 (5th Cir. 2018) .......................................................... 3

*Club Madonna Inc. v. City of Miami Beach,*
    42 F.4th 1231 (11th Cir. 2022) ....................................................... 7

*Combs v. Snyder,*
    101 F. Supp. 531 (D.D.C. 1951) .................................................... 10

*DeCanas v. Bica,*
    424 U.S. 351 (1976) ............................................................... 2, 3, 4

*Estrada v. Rhode Island,*
    594 F.3d 56 (1st Cir. 2010) ........................................................... 5

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.,*
    691 F.3d 1250 (11th Cir. 2012) ...................................................... 5

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ...................................................................... 4

*Jacobson v. Florida Secretary of State,*
    974 F.3d 1236 (11th Cir. 2020) .................................................. 9, 10

*Kansas v. Garcia,*
    589 U.S. 191 (2020) ............................................................... 2, 3, 7

*Keystone Driller Co. v. Gen. Excavator Co.,*
    290 U.S. 240 (1933) ................................................................... 10

*Moody v. Netchoice,*
    603 U.S. 707 (2024) .................................................................... 7

*Nat'l Coal. of Latino Clergy, Inc. v. Henry,*
No. 07-CV-613, 2007 WL 4390650 (N.D. Okla. Dec. 12, 2007) ................................ 10

*Nat'l Pork Producers Council v. Ross,*
598 U.S. 356 (2023) ............................................................................................. 7, 8

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of Or.,*
511 U.S. 93 (1994) ..................................................................................................... 8

*Plyler v. Doe,*
457 U.S. 202 (1982) ............................................................................................... 1, 3

*Safe Sts. All. v. Hickenlooper,*
859 F.3d 865 (10th Cir. 2017) ................................................................................... 1

*Stromback v. New Line Cinema,*
384 F.3d 283 (6th Cir. 2004) ..................................................................................... 5

*Taggart v. Lorenzen,*
587 U.S. 554 (2019) .................................................................................................. 9

*Terrace v. Thompson,*
263 U.S. 197 (1923) .................................................................................................. 3

*Truax v. Raich,*
239 U.S. 33 (1915) .................................................................................................... 3

*United States v. Garcia,*
405 F.3d 1260 (11th Cir. 2005) ................................................................................. 9

*United States v. Jimenez-Shilon,*
34 F.4th 1042 (11th Cir. 2022) .................................................................................. 4

*United States v. Rahimi,*
602 U.S. 680 (2024) .................................................................................................. 7

*United States v. Robinson,*
83 F.4th 868 (11th Cir. 2023) ................................................................................. 8, 9

*United States v. Salerno,*
481 U.S. 739 (1987) .................................................................................................. 2

*United States v. Vasuez-Alvarez*,
    176 F.3d 1294 (10th Cir. 1999) ...........................................................................5

**Statutory Provisions**

8 U.S.C. § 1324.................................................................................................... 4, 5

Fla. Stat. § 811.102..................................................................................................6

**Rules**

Fed. R. Civ. P. 65...........................................................................................8, 9, 10

**Other Authorities**

Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* (1998) ................................4

Allison Brownell Tirres, *Property Outliers: Non-Citizens, Property Rights and State Power*, 27
    Geo. Immigr. L.J. 77 (2012) ...........................................................................3

Benjamin J. Klebaner, *State and Local Immigration Regulation in the United States before
    1882*, 3 Int'l R. Social History 269 (1958) .......................................................4

# ARGUMENT

Plaintiffs ask this Court to push precedent past its breaking point, ensuring that unlawful aliens can commit more crimes throughout the State. This Court should reject that bid. Plaintiffs lack a cause of action. And Florida's SB 4-C is not preempted, as it "follow[s] the federal direction" on the treatment of illegal aliens. *Plyler v. Doe*, 457 U.S. 202, 219 n.19 (1982). When an alien commits a federal immigration crime, Florida presumptively forbids the alien from entering or remaining in the State. Yet when the federal government permits an alien to stay in the country, Florida gives that decision respect by barring state prosecution.

Ignoring Florida's deferential approach, Plaintiffs seek to maximize federal-state conflict by treating all immigration law as one lump sum and defining immigration as broadly as possible. But the Immigration and Nationality Act (INA) offers no evidence that Congress shared their restrictive vision of state authority. Plaintiffs' arguments on the Dormant Commerce Clause, the scope of relief, and the equities fare no better.

## I. PLAINTIFFS LACK A CAUSE OF ACTION TO ENFORCE FEDERAL IMMIGRATION LAW.

Congress displaced any private cause of action to enforce the INA by vesting enforcement of that law solely in federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328-29 (2015). Nor does the INA give Plaintiffs the private rights necessary to have a cause of action. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902-05 (10th Cir. 2017).

Unable to resist that conclusion, Plaintiffs avoid it. They reiterate the district court's claim that Plaintiffs need no cause of action to enforce the INA because they "do not seek to compel [INA] enforcement or prosecute [INA] violations" and are merely enforcing the INA's preemptive effect under the Supremacy Clause. Resp. 5. But that distinction is illusory. Mot. for Stay Pending Appeal 6. Under both *Safe Streets Alliance* and *Armstrong*, when the "fairest reading" of the INA counsels against permitting private enforcement, litigants may not circumvent that limit by grounding their claims in the preemptive force of the Supremacy Clause. *Armstrong*, 575 U.S. at 328-29.

## II.   SB 4-C IS NOT FACIALLY PREEMPTED BY FEDERAL IMMIGRATION LAW.

### 1.   SB 4-C is not field preempted in all applications.

The "rare case[]" of facial field preemption is warranted only when plaintiffs establish a field of federal preemption, *Kansas v. Garcia*, 589 U.S. 191, 208 (2020), and show that the state law operates directly in that field in every application, *see United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs fail at both steps.

a. Plaintiffs propose that federal law preempts the field of regulating the "presence" of illegal aliens. Resp. 6. Yet they offer far from enough to show that the "clear and manifest purpose of Congress" was a "complete ouster of state power" over the presence (i.e., the movement) of illegal aliens. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976). Plaintiffs mainly claim that the "federal entry and reentry crimes" reveal a broader intent to regulate all aspects of alien presence. Resp. 7. The Court should reject that effort to balloon the INA's reach for three reasons.

First, the overexpansive reading violates the cardinal rules that field preemption is a "rare case[]" and that the field should be defined narrowly. *Garcia*, 589 U.S. at 208; *see also City of El Cenizo v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018) (When analyzing field preemption, "the relevant field should be defined narrowly.").

Second, Plaintiffs' vision of preemption conflicts with Supreme Court precedent. Even in the immigration context, "the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (cleaned up). Yet under Plaintiffs' view, the presumption is meaningless—whenever a state directly regulates aliens, it regulates their presence. But the Supreme Court "has never held that every state enactment which in any way deals with aliens" is preempted, *DeCanas*, 424 U.S. at 355, and states are not without "power to deter the influx of persons entering the United States against federal law," *Plyler*, 457 U.S. at 228 n.23.

Third, Plaintiffs' argument flouts history. States have directly regulated aliens for centuries. Around the Founding, "States enacted numerous laws restricting the immigration of certain classes of aliens, including convicted criminals[.]" *Arizona*, 567 U.S. at 419 (Scalia, J., concurring in part, dissenting in part). States have routinely barred aliens from owning real estate, *see Terrace v. Thompson*, 263 U.S. 197, 217 (1923); *see also* Allison Brownell Tirres, *Property Outliers: Non-Citizens, Property Rights and State Power*, 27 Geo. Immigr. L.J. 77, 92 (2012), and from taking part "of the public domain, or of the common property or resources of the people of the state," *Truax v. Raich*, 239 U.S. 33,

39-40 (1915) (citing cases). States disarmed aliens, *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1047 (11th Cir. 2022), and limited their rights to "vote, hold public office, or serve on juries," Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* 48 (1998). The INA, passed against this backdrop, is thus "best understood in the context of antecedent [regulation of aliens] on the local level." Benjamin J. Klebaner, *State and Local Immigration Regulation in the United States before 1882*, 3 Int'l R. Social History 269, 269 (1958).

Plaintiffs further obfuscate the issues by rewriting *Arizona*. They contend that Defendants "avoid *Arizona*'s field-preemption analysis" "by labeling plaintiffs as '*non-law-abiding* aliens.'" Resp. 7-8. Yet the law-abiding status of aliens affected by alien registration was key in *Arizona. See* 567 U.S. at 400-03 (incorporating analysis from *Hines v. Davidowitz*, 312 U.S. 52 (1941)). The unique interests related to the "just rights" of "law-abiding" aliens implicated foreign affairs and were the backdrop against which Congress created the alien-registration regime. *Hines*, 312 U.S. at 64-66. By contrast, those interests are not at play for federal entry and reentry crimes that *exclusively* apply to those who are by definition non-law-abiding. Other nations do not have as strong an interest in protecting those non-law-abiding aliens, *see id.*, making it far less likely that Congress's "clear and manifest purpose" was to preempt a law like Florida's. *DeCanas*, 424 U.S. at 357.

Plaintiffs also try to expand *Georgia Latino* by pointing to Section 1324(c). Resp. 8. That provision, located in the federal criminal statute for transporting or harboring illegal aliens, limits state participation to arrests under federal law. 8 U.S.C. § 1324(c).

To Plaintiffs, "[t]he case for preemption is even stronger here, as Congress has not expressly invited state arrests" in the entry and reentry sections. Resp. 8. But that inverts any relevance of Section 1324(c), which this Court believed indicated preemptive intent. *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1264 (11th Cir. 2012); Mot. for Stay Pending Appeal 9. State officers can already arrest for federal crimes, *see Estrada v. Rhode Island*, 594 F.3d 56, 65 (1st Cir. 2010) (upholding arrest by state officer for "immigration violations"), so the inclusion of that limit in the transportation provision at best implies that Congress cabined state authority to pass similar laws under the transportation provision. *United States v. Vasuez-Alvarez*, 176 F.3d 1294, 1299 (10th Cir. 1999) (considering canon of "*expressio unius exclusio alterius*" to determine scope of implied preemption). The entry and reentry provisions, by contrast, contain no such limit on state power.

b. Even if federal law preempts the field of entry or removal from the country, SB 4-C does not operate in those fields. Plaintiffs say that Congress "gave federal officers extensive discretion to decide" whom to admit and remove. Resp. 7 (emphasis omitted). But that view of federal law underscores that SB 4-C does not operate in those fields because Florida does not decide "*who* may enter" or be removed from the country. *Id.*

Nor is SB 4-C preempted because it "makes entry and reentry into the United States key elements." Resp. 9. State law does not directly operate in a field merely because one element of a crime turns on federal law. *Cf. Stromback v. New Line Cinema*, 384

F.3d 283, 301 (6th Cir. 2004) (no preemption where an "extra element changes the nature of the [state] action so that it is qualitatively different" from the preemptive federal claim). Core to entry and removal, as Plaintiffs admit, is the ability to determine "*who* may enter, *how* they may enter, [and] *where* they may enter," as well as the discretion to remove. Resp. 7. Florida's law leaves those determinations to federal authorities alone, *see* Fla. Stat. § 811.102(1), (4)(a), (c), and thus does not impermissibly operate in the entry and removal fields.

### 2. Plaintiffs have not shown that SB 4-C is conflict preempted in all applications.

Plaintiffs claim that Florida's law is conflict preempted because it "achieve[s] its own immigration policy" and interferes with prosecutorial discretion. Resp. 9-10. That is wrong.

Florida has not "unilaterally regulate[d] immigration." Resp. 9 (citing *Arizona*, 567 U.S. at 408). That part of *Arizona* dealt with a state law criminalizing aliens for being removable. *See* 567 U.S. at 408. The Court stressed that federal law does not criminalize removability and that "the removal process is entrusted to the discretion of the Federal Government." *Id.* at 408-09. Removal entails unique discretionary calls that implicate unique foreign-affairs interests like in alien-registration. *Id.* But mirroring the federal entry and reentry crimes implicates only ordinary *prosecutorial* discretion, which does not raise the same foreign-affairs concerns.

6

Florida's law does not interfere with the prosecutorial discretion in the federal entry and reentry crimes either. "[T]he possibility that federal enforcement priorities might be upset is not enough" for preemption. *Garcia*, 589 U.S. at 212. Preemption arises from "the Laws of the United States," not federal officers' "enforcement priorities." *Id.* A federal prosecutor may decline to prosecute any federal crime based on innumerable considerations, including foreign-policy objectives. Absent a basis to believe that Congress has granted preemptive significance to those objectives in "the text and structure of the statute at issue" (like with alien removal), such considerations do not wipe away state authority. *Id.* at 208.[1]

## III.  SB 4-C DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE.

The Dormant Commerce Clause prevents economic discrimination between states. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). Plaintiffs have no real response to Defendants' arguments on this front. While they claim that barring transportation across state lines is per se unlawful, Resp. 12, the Supreme Court has

---

[1] Plaintiffs insist that *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022) holds that the *Salerno* standard does not apply to facial preemption challenges. Resp. 11. But unlike *Club Madonna*, Plaintiffs say that preemption stems from federal discretion and not a hardline statutory rule, and Florida's law does not frustrate federal discretionary decisions made case-by-case. *See* 42 F.4th at 1256. Where federal authorities sanction a state prosecution, there can be "no suggestion that [a] prosecution[] frustrated" federal discretion. *Garcia*, 589 U.S. at 212. In any event, the Supreme Court has since clarified that a non-First Amendment facial challenge requires a plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *Moody v. Netchoice*, 603 U.S. 707, 723 (2024).

repeatedly defined discrimination relevant to the Dormant Commerce Clause in one way: "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Ross*, 598 U.S. at 369; *see also Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of Or.*, 511 U.S. 93, 99 (1994) (similar). Nothing about Florida's law discriminates in this way.

## IV. THE DISTRICT COURT LACKED AUTHORITY TO BIND FLORIDA'S LAW-ENFORCEMENT OFFICERS.

At a minimum, this Court should narrow the scope of the injunction. Under Rule 65, a court's order may "bind[] only" those who receive "actual notice" and fall into one of three categories: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with" the parties or their officers or agents. Fed. R. Civ. P. 65(d)(2); *see also United States v. Robinson*, 83 F.4th 868, 878 (11th Cir. 2023). As Defendants have explained, law-enforcement officers fall into none of these categories absent proof of aiding and abetting prosecutors. Mot. for Stay Pending Appeal 13-20. This Court should reject Plaintiffs request to throw history and this Court's precedent to the wind.

Despite that precedent, Plaintiffs double down on the district court's attempt to forge its own test for Rule 65. Resp. 15. Plaintiffs rely on inapt dictionary definitions and a case defining "concert" under a federal criminal conspiracy statute. Resp. 15.[2] But

---

[2] Even if the criminal-conspiracy standard were relevant, Plaintiffs have failed to meet even that looser standard. In a criminal conspiracy, individuals must make an

far from an "atextual narrowing of Rule 65," *id.*, Defendants' definition is the only one that properly applies binding precedent. As this Court observed, the categories in Rule 65 "embod[y]" "the common law powers of the district court," *Robinson*, 83 F.4th at 878, and that language "brings the old soil [of history] with it," *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019).

Nor is *Robinson* limited to being a "backwards-looking contempt analysis." Resp. 15. Though *Robinson* was a contempt appeal, the district court there purported to bind to the maximum extent permitted by Rule 65. *Robinson*, 83 F.4th at 879. *Robinson* thus set the limits of a district court's power to bind non-parties. *See id.*

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1269 (11th Cir. 2020), does not support their argument either. True enough, *Jacobson* held that a district court may bind those in "active concert" with named defendants where there is standing, Resp. 17, but it does not follow that the injunction here meets Rule 65. Rather, *Jacobson* held that because the Secretary of State could not control local supervisors of elections, there was no traceability and redressability to the Secretary. *See* 974 F.3d at 1254. And where a party has insufficient control for standing, he necessarily lacks control sufficient for Rule 65. Otherwise, the district court in *Jacobson* could have bound the supervisors, thus creating the traceability and redressability needed for standing against the Secretary. *See*

---

agreement specifically to achieve a criminal end. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). Plaintiffs have never attempted to show an agreement to enforce SB 4-C.

*id.* at 1255. Such a result would let Rule 65 serve as an end run against this Court's standing doctrine, due process, and res judicata.

## V. THE REMAINING EQUITABLE FACTORS SUPPORT A STAY.

Finally, Plaintiffs cannot deny that they have unclean hands. Resp. 22. Courts have rejected the notion that unabashedly criminal conduct like Plaintiffs' does not rise to the level of unclean hands. *See Nat'l Coal. of Latino Clergy, Inc. v. Henry*, No. 07-CV-613, 2007 WL 4390650, at *1, 9 (N.D. Okla. Dec. 12, 2007); *Combs v. Snyder*, 101 F. Supp. 531, 532 (D.D.C. 1951) ("Few things are clearer than that one who comes seeking protection for conduct that he concedes to be criminal has unclean hands within the meaning of this principle."), *judgment aff'd*, 342 U.S. 939 (1952). That conduct also has a "relation to the equity that [they] seek[]" here because Plaintiffs ask to make their violation of federal law easier to hide by precluding state authority from assisting in federal immigration enforcement efforts. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).

## CONCLUSION

The Court should stay the injunction or, at minimum, stay it insofar as the injunction applies to law-enforcement officers.

Dated: May 21, 2025

Respectfully submitted,

James Uthmeier
  *Attorney General of Florida*

/s/ *Robert S. Schenck*
Jeffrey Paul DeSousa (FBN 110951)
  *Acting Solicitor General*
Nathan A. Forrester (FBN 1045107)
David M. Costello (FBN 1004952)
  *Chief Deputy Solicitors General*
Robert S. Schenck (FBN 1044532)
Christine Pratt (FBN 100351)
  *Assistant Solicitors General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*david.costello@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,598 words.

2.      This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Robert S. Schenck*
Assistant Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on May 21, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

/s/ Robert S. Schenck
Assistant Solicitor General