No. 25-11469

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**FLORIDA IMMIGRANT COALITION**, *et al.*,

Plaintiffs-Appellees,

v.

**ATTORNEY GENERAL, STATE OF FLORIDA**, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:25-cv-21524-KMW

**BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM
LAW INSTITUTE IN SUPPORT OF DEFENDANTS-APPELLANTS**

MATT A. CRAPO
DAVID L. JAROSLAV
**Immigration Reform Law Institute**
**25 Massachusetts Ave., NW, Suite 335**
**Washington, DC 20001**
**Telephone: (202) 232-5590**
**Email: mcrapo@irli.org**

**Attorneys for *Amicus Curiae***
**Immigration Reform Law Institute**

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to 11th Cir. R. 26.1-2 and Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) In addition to those persons listed in Defendants-Appellants' Statement of Interested Persons, the following persons and entities have an interest in this case:

- Crapo, Matt A., attorney for *amicus curiae* Immigration Reform Law Institute

- Jaroslav, David L., attorney for *amicus curiae* Immigration Reform Law Institute

- Immigration Reform Law Institute, *amicus curiae*

Dated: July 7, 2025                                   Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
Counsel for *Amicus Curiae*

## STATEMENT OF *AMICUS CURIAE*

All parties have consented to the filing of this *amicus curiae* brief. No party or party's counsel authored any part of this brief. No person or entity, other than *amicus*, its members, or its counsel, has made a monetary contribution to this brief's preparation or submission.

    Respectfully submitted,

    /s/ Matt Crapo
    MATT A. CRAPO
    Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

    **Page**

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

STATEMENT OF *AMICUS CURIAE*

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF *AMICUS CURIAE* ........................................................................1

INTRODUCTION ...................................................................................................1

SUMMARY OF ARGUMENT ................................................................................3

ARGUMENT ............................................................................................................4

I.     States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation ...................4

II.    Congress has not preempted State laws criminalizing illegal entry or reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law .........................................................6

CONCLUSION ......................................................................................................10

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. United States*,
 567 U.S. 387 (2012)...............................................................................4, 5

*Ariz. Dream Act Coalition v. Brewer*,
 855 F.3d 957 (9th Cir. 2017) ......................................................................1

*DeCanas v. Bica*,
 424 U.S. 351 (1976)....................................................................................9

*Kansas v. Garcia*,
 589 U.S. 191 (2020)....................................................................................9

*Mayor of New York v. Miln*,
 36 U.S. 102 (1837).......................................................................................5

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
 584 U.S. 453 (2018)....................................................................................4

*Nishimura Ekiu v. United States*,
 142 U.S. 651 (1892)....................................................................................4

*Matter of Silva-Trevino*,
 26 I. & N. Dec. 826 (B.I.A. 2016) ..............................................................1

*Trump v. Hawaii*,
 585 U.S. 667 (2018)....................................................................................1

*United States v. Texas*,
 599 U.S. 670 (2023)....................................................................................1

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
 50 F.4th 164 (D.C. Cir. 2022) ....................................................................1

# STATUTES

8 U.S.C. § 1101(a)(15) ..................................................................................5

8 U.S.C. § 1153 ...............................................................................................5

8 U.S.C. § 1182 ...............................................................................................5

8 U.S.C. § 1227 ...............................................................................................5

8 U.S.C. § 1325 ...........................................................................................3, 5

8 U.S.C. § 1325(a) ..........................................................................................6

8 U.S.C. § 1326 .......................................................................................3, 5, 8

8 U.S.C. § 1326(a) ..........................................................................................7

8 U.S.C. § 1326(b) ...................................................................................7, 8, 9

Fla. Stat. § 811.102 .....................................................................................3, 6

Fla. Stat. § 811.103 .....................................................................................3, 6

Iowa Code §§ 718C .......................................................................................8

Iowa Code §§ 718C.4 ....................................................................................8

Okla. Stat. Title 21 § 1795 ............................................................................ 8

Tex. Code Crim. Proc. art. 5B.002 ............................................................... 8

Tex. Penal Code §§ 51.02-51.04 ................................................................... 8

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases in the interests of United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including: *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## INTRODUCTION

Florida and other States have taken measures to combat unlawful immigration in response to the previous administration's abdication of its duty to protect States from invasion and to take care that the nation's immigration laws are faithfully executed. Between January 20, 2021 and January 20, 2025, the Biden administration purposely facilitated mass illegal entries into this country. It temporarily paused all removals, gutted immigration enforcement guidelines, terminated the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy"), halted border wall construction projects, reinstated "catch and release" at the border, weakened asylum requirements, and adopted mass parole programs.

1

The prior administration's abdication of its statutory duty to secure the border and its constitutional obligation to protect the States from invasion resulted in an estimated 5.5 million illegal aliens' crossing the border from inauguration day in 2021 through fiscal year 2022 alone. *See FAIR Analysis: 5.5 Million Illegal Aliens Have Crossed our Borders Since Biden Took Office—How is Secretary Mayorkas Still Employed?*, available at: https://www.fairus.org/press-releases/border-security/fair-analysis-55-million-illegal-aliens-have-crossed-our-borders (last visited June 6, 2025). In fiscal year 2023, Customs and Border Protection ("CBP") encountered over 3.2 million aliens, and there were more than 2.7 million encounters nationwide in fiscal year 2024. *See* CBP, *Nationwide Encounters*, available at: https://www.cbp.gov/newsroom/stats/nationwide-encounters (last visited June 6, 2025). The present administration has reduced that number dramatically, but there still have been over 28 thousand encounters at the Southern border during each full month of the second Trump administration. *Id*. Although the current Trump administration has released only a handful of aliens encountered at the border into the United States, *see* CBP, *CBP Releases May 2025 Monthly Update*, available at: https://www.cbp.gov/newsroom/national-media-release/cbp-releases-may-2025-monthly-update (last visited July 1, 2025), eighty-five percent of aliens encountered on the southern border under the previous administration were released into the United States. *See* Fox News, *Mayorkas tells*

*Border Patrol agents that 'above 85%' of illegal immigrants released into US: sources*, available at: https://www.foxnews.com/politics/mayorkas-tells-border-patrol-agents-illegal-immigrants-released-into-us-sources (last visited June 6, 2025).

In response to the release of millions of aliens into the United States, the Florida Legislature passed, and the Governor signed, Senate Bill 4-C ("SB 4-C"), enacted as Ch. 2025-2, Laws of Fla., which includes provisions mirroring the federal crimes of illegal entry, 8 U.S.C. § 1325, and illegal reentry, 8 U.S.C. § 1326. *See* Fla. Stat. §§ 811.102 (illegal entry) and 811.103 (illegal reentry).

## SUMMARY OF ARGUMENT

Although SB 4-C parallels the federal criminal offenses for illegal entry and illegal reentry and does not interfere with Congress's power to decide which classes of aliens are admissible or removable, the district court preliminarily enjoined the enforcement of SB 4-C because the court determined that SB 4-C is preempted by federal law. But there is nothing in federal law that suggests that Congress sought to preempt State laws criminalizing illegal reentry. Instead, Congress explicitly recognized that aliens may stipulate to removal during (or not during) a criminal trial under *State* law. This recognition demonstrates that Congress did not intend to preempt State laws under which aliens may be punished for violating federal immigration standards; indeed, Congress gave effect to such

3

laws. Because the district court erred in concluding that SB 4-C is likely preempted by federal law, this Court should reverse the district court and vacate the preliminary injunction.

## ARGUMENT

**I.  States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation.**

"When the original States declared their independence, they claimed the powers inherent in sovereignty—in the words of the Declaration of Independence, the authority 'to do all . . . Acts and Things which Independent States may of right do.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (quoting Declaration of Independence ¶ 32). Inherent in the sovereignty of an independent State, "and essential to self-preservation," is the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "As a sovereign, [Florida] has the inherent power to exclude persons from its territory, subject only to those limitations expressed in the Constitution or constitutionally imposed by Congress." *Arizona v. United States*, 567 U.S. 387, 417 (2012) (Scalia, J., concurring in part and dissenting in part); *id.* at 418 ("There is no doubt that 'before the adoption of the constitution of the United States' each State had the authority to 'prevent [itself] from being burdened

4

by an influx of persons.'") (quoting *Mayor of New York v. Miln*, 36 U.S. 102, 132-133 (1837)).

Further, as Justice Scalia demonstrated in his opinion in *Arizona*, 567 U.S. at 420-21, the States did not surrender their power to regulate immigration upon entering the Union. *Id.* (noting that the *Miln* Court held that the power to regulate the entrance of foreigners remained with the States following the adoption of the Constitution). Because the States retained the authority to regulate immigration under the Constitution, the States' authority can only be preempted by Congress.

Congress has adopted extensive regulations governing immigration. For example, Congress has defined the classes of aliens who are admissible and removable. *See, e.g.*, 8 U.S.C. §§ 1101(a)(15) (defining classes of nonimmigrant aliens); 1153 (allocating immigrant visas among various classes of aliens); 1182 (defining inadmissible aliens); 1227 (defining deportable aliens). Congress has also criminalized illegal entry and reentry. *Id.* at §§ 1325, 1326. No one questions Congress's power to set nationwide immigration policy, and no State may adopt immigration policies that conflict with federal immigration law. The only question in these cases is whether Congress sought to preempt State laws such as SB 4-C, which mirror the federal crimes for illegal entry under 8 U.S.C. § 1325 and illegal reentry under 8 U.S.C. § 1326.

## II. Congress has not preempted State laws criminalizing illegal entry or illegal reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law.

SB 4-C mirrors the federal crimes of illegal entry and illegal reentry. SB 4-C makes it a crime for "an unauthorized alien who is 18 years of age or older and who knowingly enters or attempts to enter this state after entering the United States by eluding or avoiding examination or inspection by immigration officers...." Fla. Stat. § 811.102(1). This parallels the federal illegal entry statute which provides, in pertinent part, that is a crime for:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact…

8 U.S.C. § 1325(a).

SB 4-C imposes more serious criminal penalties for illegal reentry, namely when "[a]n unauthorized alien … after having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding, thereafter enters, attempts to enter, or is at any time found in this state." Fla. Stat. § 811.103(1). Congress likewise criminalized reentry by aliens who have been "denied admission,"

involuntarily "removed," or have departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a).

Even though SB 4-C mirrors federal law, the district court concluded that SB 4-C is likely both field preempted and conflict preempted. ECF Doc. 67 at 13-25. In addition to the reasons set forth by the State Defendants, however, the district court's ruling should be reversed because Congress explicitly recognized that States may permissibly play a role in determining removability under the scheme enacted by Congress. This recognition suggests strongly that Congress did not intend to preempt State laws that mirror federal law.

As part of its statute criminalizing illegal reentry, Congress provided for sentence enhancements for certain classes of criminal aliens. *See* 8 U.S.C. § 1326(b). In that sentence enhancement provision, Congress provided: "For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under *either* Federal *or State law*." 8 U.S.C. § 1326(b) (emphasis added). Although this definition of "removal" is limited to "the purposes of this subsection," Congress acknowledged the practice of aliens stipulating to their removal in State courts. And instead of discouraging or seeking to prevent such practices, Congress chose to expressly permit such stipulations to constitute the predicate "removal" at least for sentence enhancement purposes.

SB 4-C does not expressly provide for such a "stipulate to removal" practice that Congress endorsed in § 1326(b); however, similar laws in other States do. *See, e.g.*, Iowa Code §§ 718C and 718C.4, Okla. Stat. Title 21 § 1795, Tex. Code Crim. Proc. art. 5B.002, Tex. Penal Code §§ 51.02-51.04. But more importantly, Congress's recognition that aliens may stipulate to their removal "during (or not during) a criminal trial" under "State law" presumes that Congress did not intend to preempt State involvement in making removal decisions part of criminal prosecutions, much less to preempt State laws permitting (or even requiring) such removal stipulations.

This is not to suggest that States may adopt their own removability standards. No one questions Congress's authority to establish nationwide standards of removability or that States must adhere to those federal standards. The simple fact is that, in enacting 8 U.S.C. § 1326, Congress was aware of the practice of aliens' stipulating to removal in State courts and did nothing to discourage or prevent such practices. Instead, Congress expressly endorsed such practices—at least for the purposes of sentence enhancements under 8 U.S.C. § 1326(b). Congress's endorsement can hardly be said to reflect an intent to preempt State laws that punish illegal reentry or that permit aliens to stipulate to removal.

In concluding that SB 4-C is preempted by federal law, neither the district court nor the cases upon which the court relied acknowledge or address the fact

8

that Congress explicitly recognized that an alien may stipulate to removal "during (or not during) a criminal trial under either Federal or State law." 8 U.S.C. § 1326(b). As the Supreme Court has repeatedly held, "[o]nly in rare cases have courts found that Congress has legislated so comprehensively in a particular field that it left no room for supplementary legislation," *Kansas v. Garcia*, 589 U.S. 191, 208 (2020)) (internal quotations omitted), and "[o]nly a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress' justifies field preemption." *DeCanas v. Bica*, 424 U.S. 351, 357 (1976), *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195. Because Congress explicitly recognized that States may permissibly play a role in the removal process (at least with respect to stipulated removals), the district court erred in concluding that Congress left no room for supplementary regulation by the States.

//

//

//

# CONCLUSION

For the foregoing reasons, this Court should reverse the district court and vacate the preliminary injunction.

Dated: July 7, 2025                     Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
DAVID L. JAROSLAV
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
mcrapo@irli.org

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

# CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the word limitation of Fed. Fed. R. App. P. 29(a)(5) because:

This brief contains 1,973 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Respectfully submitted,

/s/ Matt Crapo

# CERTIFICATE OF SERVICE

I certify that on July 7, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo