No. 25-11469

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

————————————

FLORIDA IMMIGRANT COALITION, et al.,

*Plaintiffs-Appellees*,

v.

ATTORNEY GENERAL, STATE OF FLORIDA, et al.,

*Defendants-Appellants*.

————————————

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:25-cv-21524-KMW

————————————

## BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* SUPPORTING APPELLANTS

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
BENJAMIN HAYES
JOHN BAILEY

  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

*Florida Immigrant Coalition v. Attorney General, State of Florida*, No. 25-11469

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for *amicus curiae* the United States of America certifies that, in addition to those persons listed in Defendants-Appellants' Certificate of Interested Persons, the following persons and entities have an interest in this appeal:

Bailey, John

Freeman, Mark R.

Hayes, Benjamin

McArthur, Eric

Shumate, Brett A.

United States of America

No publicly traded company or corporation has an interest in the outcome of this appeal.

s/ *Benjamin Hayes*
Benjamin Hayes

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS CURIAE ..........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT............................................1

STATEMENT OF THE CASE ..................................................................................3

I.     The federal prohibition on illegal entry and reentry.................................3

II.    Senate Bill 4-C .........................................................................................5

III.   Prior Proceedings .....................................................................................7

ARGUMENT ..........................................................................................................8

I.     Senate Bill 4-C is not preempted.............................................................8

       A.    Senate Bill 4-C is not field preempted. ...........................................9

       B.    Senate Bill 4-C is not conflict preempted. ....................................15

II.    Senate Bill 4-C does not transgress the dormant Commerce Clause. ............... 20

CONCLUSION ...................................................................................................... 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*Arizona v. United States,*
  567 U.S. 387 (2012) ................................................................10, 13, 15, 18, 19

*California v. Zook,*
  336 U.S. 725 (1949) ........................................................................................17

*Chamber of Com. of the U.S. v. Whiting,*
  563 U.S. 582 (2011) ...................................................................................15-16

*DeCanas v. Bica,*
  424 U.S. 351 (1976) ...................................................................................9, 12

*Department of Revenue v. Davis,*
  553 U.S. 328 (2008) ........................................................................................21

*Edwards v. California,*
  314 U.S. 160 (1941) ........................................................................................22

*General Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) ........................................................................................21

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia,*
  691 F.3d 1250 (11th Cir. 2012) ...................................................11, 12, 13, 17

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher,*
  267 F.3d 1228 (11th Cir. 2001) .................................................................16-17

*Gilbert v. Minnesota,*
  254 U.S. 325 (1920) ........................................................................................17

*Guy v. Baltimore,*
  100 U.S. 434 (1879) ..................................................................................21, 22

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ..........................................................................................10

*H.P. Hood & Sons, Inc. v. Du Mond,*
    336 U.S. 525 (1949) ..................................................................................22

*Kansas v. Garcia,*
    589 U.S. 191 (2020) ...............................................2, 3, 8, 9, 14, 15, 16, 17, 18

*National Pork Producers Council v. Ross,*
    598 U.S. 356 (2023) .................................................................16, 21, 22

*Plyler v. Doe,*
    457 U.S. 202 (1982) ..................................................................................17

*Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.,*
    485 U.S. 495 (1988) .....................................................................................8

*R.J. Reynolds Tobacco Co. v. Durham County,*
    479 U.S. 130 (1986) ................................................................................ 2, 9

*United States v. Alabama,*
    691 F.3d 1269 (11th Cir. 2012)........................................................11, 12, 13

*United States v. Salerno,*
    481 U.S. 739 (1987) ...................................................................................16

*Virginia Uranium, Inc. v. Warren,*
    587 U.S. 761 (2019) ............................................................................2, 8, 15

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) ........................................................................ 3, 16, 18, 20

*Wisconsin Dep't of Industry, Lab. & Hum. Rels. v. Gould Inc.,*
    475 U.S. 282 (1986) ................................................................................18-19

**U.S. Constitution:**

U.S. Const. art. VI, cl. 2..................................................................................8

**Statutes:**

8 U.S.C. § 1302...............................................................................................10

8 U.S.C. § 1302(c) ................................................................................................. 11

8 U.S.C. § 1303(a) ........................................................................................... 10, 11

8 U.S.C. § 1304 ..................................................................................................... 10

8 U.S.C. § 1305 ..................................................................................................... 10

8 U.S.C. § 1306 ..................................................................................................... 10

8 U.S.C. § 1324 ..................................................................................................... 11

8 U.S.C. § 1324(a)(1)(A) ...................................................................................... 12

8 U.S.C. § 1324(a)(2) ............................................................................................ 12

8 U.S.C. § 1324(a)(3)(A) ...................................................................................... 12

8 U.S.C. § 1324(b) ................................................................................................. 12

8 U.S.C. § 1324(c) ................................................................................................. 12

8 U.S.C. § 1324(d) ................................................................................................. 12

8 U.S.C. § 1324(e) ................................................................................................. 12

8 U.S.C. § 1325(a) ................................................................................... 1, 4, 5, 9

8 U.S.C. § 1325(b) ................................................................................................... 4

8 U.S.C. § 1325(c)–(d) ........................................................................................... 4

8 U.S.C. § 1326(a) ................................................................................... 1, 4, 6, 9

8 U.S.C. § 1326(a)(2) .............................................................................................. 5

8 U.S.C. § 1326(b)(1)–(2) ...................................................................................... 5

8 U.S.C. § 1326(b)(3)–(4) ...................................................................................... 5

8 U.S.C. § 1326(c) ................................................................................................... 5

8 U.S.C. § 1329 .............................................................................................13

8 U.S.C. § 1357(g) ..........................................................................................14

8 U.S.C. § 1357(g)(1)–(5) ...............................................................................14

8 U.S.C. § 1357(g)(8) ......................................................................................14

8 U.S.C. § 1357(g)(10) ..............................................................................14, 16

8 U.S.C. § 1826(a)(2) ........................................................................................7

Fla. Stat. § 811.101(2) ......................................................................................5

Fla. Stat. § 811.102 .........................................................................................21

Fla. Stat. § 811.102(1) ......................................................................................5

Fla. Stat. § 811.102(1)–(2) ...............................................................................5

Fla. Stat. § 811.102(3) ......................................................................................6

Fla. Stat. § 811.102(4)(a) ...............................................................................19

Fla. Stat. § 811.102(4)(a)–(c) ...........................................................................6

Fla. Stat. § 811.102(4)(c) ...............................................................................19

Fla. Stat. § 811.102(5)–(6) ...........................................................................5-6

Fla. Stat. § 811.102(7) ......................................................................................6

Fla. Stat. § 811.103 .........................................................................................21

Fla. Stat. § 811.103(1) ........................................................................3, 6, 7, 22

Fla. Stat. § 811.103(1)(a)–(b) .........................................................................20

Fla. Stat. § 811.103(2)–(3) ...............................................................................7

Fla. Stat. § 811.103(4)–(5) ...............................................................................7

Fla. Stat. § 811.103(6)............................................................................7

Fla. Stat. § 908.111(d)............................................................................5

**Other Authority:**

*United States v. Texas,*
   No. 24-50149 (5th Cir. July 3, 2025) .............................................20

## INTEREST OF AMICUS CURIAE

The United States is responsible for the enforcement of the Nation's immigration laws. Accordingly, the United States has an interest in ensuring that the doctrines of preemption are applied in a manner that preserves the federal government's primacy over the areas that are within its constitutional authority, including immigration, while preserving the ability of States to adopt complementary legislation that advances the federal policy. The United States submits this amicus brief because the district court misapplied preemption doctrine—and the dormant Commerce Clause—to preliminarily enjoin Senate Bill 4-C.

## STATEMENT OF THE ISSUES

1.   Whether Senate Bill 4-C is field preempted.

2.   Whether Senate Bill 4-C is facially conflict preempted.

3.   Whether Senate Bill 4-C facially violates the dormant Commerce Clause.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Florida enacted Senate Bill 4-C into law earlier this year, seeking to do its part to redress the crisis of illegal immigration that was brought upon the United States during the prior administration. The Florida law makes it a state crime for an "unauthorized alien"—a term defined in accordance with federal statute—to enter, attempt to enter, or be found in Florida after having entered or reentered the United States in violation of the federal Immigration and Nationality Act's (INA) own prohibitions on illegal entry and reentry. *See* 8 U.S.C. §§ 1325(a), 1326(a). Senate Bill 4-C thus complements

1

existing federal immigration law by punishing those within, or that come within, Florida's regulatory reach who previously entered or reentered the country in violation of U.S. immigration law.   Although Senate Bill 4-C simply mirrors the federal prohibitions on illegal entry and reentry, the district court preliminarily enjoined that law in all its applications on the ground that it is preempted by the INA's entry and reentry provisions—both as a matter of field preemption and conflict preemption— and that it transgresses the dormant Commerce Clause.  That decision is wrong and should be reversed.

The Supreme Court has made clear that field preemption arises only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'" *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)). The federal entry and reentry provisions do not meet that high standard—indeed, the INA contemplates that states will cooperate with the federal government in immigration enforcement.  Ultimately, Senate Bill 4-C simply makes it a state crime to enter or be present in Florida when one has entered or reentered the United States in violation of federal law.  The INA's prohibitions on unauthorized entry and reentry do not foreclose that kind of complementary state legislation and a "brooding federal interest" in the treatment of illegal aliens has no preemptive effect. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion).

2

Senate Bill 4-C also is not conflict preempted.  Indeed, there is no conflict at all.  Instead, the Florida statute's prohibitions are materially identical to the federal entry and reentry provisions.  Although the district court worried that prosecutions under Senate Bill 4-C would disrupt federal enforcement priorities, the mere "possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Kansas*, 589 U.S. at 212.  At a minimum, Senate Bill 4-C does not conflict with federal law "in *all* of its applications," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008), which is enough to reject the district court's conflict preemption ruling.

Finally, Senate Bill 4-C does not violate the dormant Commerce Clause.  The law does not discriminate against interstate commerce, but instead applies to all unauthorized aliens (regardless of residence) who enter or are "found in" Florida.  Fla. Stat. § 811.103(1).  Senate Bill 4-C is not a protectionist measure designed to benefit in-state economic interests, but a law designed to complement federal efforts to curb illegal immigration.

## STATEMENT OF THE CASE

## I.     The federal prohibition on illegal entry and reentry.

The INA prohibits aliens from unlawfully entering or reentering the United States.  As to unlawful entry, the INA contains a straightforward provision that creates a criminal offense applicable to

3

> [a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact.

8 U.S.C. § 1325(a).  An initial violation of this section is punishable by a fine or imprisonment up to 6 months (or both), and a subsequent violation may result in a fine and imprisonment for a term of "not more than 2 years."  *Id.*  Separate civil penalties may be imposed.  *Id.* § 1325(b).[1]

The INA also prohibits unlawful reentry.  Specifically, it imposes criminal liability on an alien who has "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter … enters, attempts to enter, or is at any time found in, the United States."  8 U.S.C. § 1326(a).  A violation is punishable by a fine and "not more than 2 years" in prison (or both).  *Id.*  However, a violation does not occur if either:

> (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act.

---

[1] Section 1325 contains provisions unrelated to unlawful entry, which prohibit entering into a marriage or commercial enterprise to "evad[e] any provision of the immigration laws."  8 U.S.C. § 1325(c)–(d).

*Id.* § 1326(a)(2). The INA imposes a series of escalating sentences of incarceration for violators with prior convictions for certain offenses, *id.* § 1326(b)(1)–(2), or those who were previously removed or excluded from the United States under certain authorities, *id.* § 1326(b)(3)–(4). Finally, an alien who was removed prior to the completion of a term of imprisonment and reenters the country must be "incarcerated for the remainder of the sentence of imprisonment." *Id.* § 1326(c).

## II.    Senate Bill 4-C

Governor DeSantis signed Senate Bill 4-C into law in February of this year. That law creates two new criminal offenses under Florida law that mirror federal law's prohibitions on unlawful entry and reentry. *See* Fla. Stat. §§ 811.102–811.103.

**A.** As to unlawful entry, the Florida law provides that an "unauthorized alien who is 18 years of age or older" may not "knowingly enter[] or attempt[] to enter [Florida] after entering the United States by eluding or avoiding examination or inspection by immigration officers." Fla. Stat. § 811.102(1). This language was copied nearly verbatim from the INA's prohibition on unlawful entry. *See* 8 U.S.C. § 1325(a). Likewise, Section 811.102's definition of "unauthorized alien" is identical to the federal definition. *See* Fla. Stat. §§ 811.101(2); 908.111(d).

A violation of this prohibition is a misdemeanor, requiring "a mandatory minimum term of imprisonment of 9 months," with escalating prison sentences for those with prior convictions. Fla. Stat. § 811.102(1)–(2). An unauthorized alien arrested under this provision is not eligible for bail or any diversion program. *Id.* § 811.102(5)–

(6).  The arresting law enforcement agency must notify Immigration and Customs Enforcement (ICE) and the state Department of Law Enforcement.  *Id.* § 811.102(7).

To ensure alignment with federal law, Section 811.102 provides an affirmative defense to prosecution if (1) "[t]he Federal Government has granted the unauthorized alien lawful presence in the United States or discretionary relief that authorizes the unauthorized alien to remain in the United States temporarily or permanently," (2) "[t]he unauthorized alien is subject to relief under the Cuban Adjustment Act of 1966," or (3) "[t]he unauthorized alien's entry into the United States did not constitute a violation of 8 U.S.C. s. 1325(a)."  Fla. Stat. § 811.102(4)(a)–(c).[2]

**B.**  Senate Bill 4-C also reinforces the federal prohibition on illegal *reentry* of adult unauthorized aliens—those who, "after having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding, thereafter enter[], attempt[] to enter, or [are] at any time found in [Florida]."  Fla. Stat. § 811.103(1).  This language is taken nearly verbatim from the INA's prohibition on unlawful reentry.  *See* 8 U.S.C. § 1326(a).  This section also contains the same exceptions as the INA's reentry provision:  the Florida statute is not violated if "before the unauthorized alien's reembarkation at a place outside the United States or his or her application for admission from a foreign

---

[2] Section 811.102 prohibits the arrest of an alien "for a violation of this section if the unauthorized alien was encountered by law enforcement during the investigation of another crime that occurred in [Florida] and the unauthorized alien witnessed or reported such a crime or was a victim of such crime."  Fla. Stat. § 811.102(3).

contiguous territory," "[t]he Attorney General of the United States expressly consented to his or her reapplication for admission" or "the unauthorized alien establishes that he or she was not required to obtain such advance consent under the [INA]." Fla. Stat. § 811.103(1); *cf.* 8 U.S.C. § 1826(a)(2).

A violation of Section 811.103 requires a mandatory minimum sentence of one year and one day, with escalating penalties for those with prior convictions. Fla. Stat. § 811.103(2)–(3). As with the Florida's law's prohibition on illegal entry, an alien arrested under Section 811.103 is not eligible for bail or any diversion program. *Id.* § 811.103(4)–(5). Likewise, the arresting law enforcement agency must notify ICE and the state Department of Law Enforcement. *Id.* § 811.103(6).

## III.    Prior Proceedings

Plaintiffs—two anonymous individuals and two organizations—sued Florida's Attorney General and other state officials in federal court, alleging that Senate Bill 4-C (1) is preempted by federal statute, and (2) violates the dormant Commerce Clause. The district court certified two classes under Federal Rule of Civil Procedure 23(b)(2), and granted Plaintiffs' motion for a preliminary injunction, holding that Senate Bill 4-C is facially unconstitutional under both legal theories and enjoining the Florida officials from enforcing any portion of that law. Doc. 67 at 36, 48. This appeal followed.

## ARGUMENT

### I.    Senate Bill 4-C is not preempted.

The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." U.S. Const., art. VI, cl. 2. Its command is simple: if a state law and federal law conflict, the federal law wins. *See Kansas v. Garcia*, 589 U.S. 191, 202 (2020). Although Congress may preempt state laws by express statutory language, that intent may also be inferred. *Id.* at 203. "In all cases," however, "the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." *Id.* at 202. "There is no federal preemption *in vacuo*," *id.* (quoting *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988)), and "[i]nvoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion). Rather, "a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Id.*; *see also Kansas*, 589 U.S. at 208 ("implied preemption "must be grounded 'in the text and structure of the statute at issue'").

All agree that the INA does not expressly preempt Senate Bill 4-C. Rather, the district court held that Florida's law is preempted under two theories of implied preemption: (1) field preemption, and (2) conflict preemption. It is wrong on both.

8

A.      Senate Bill 4-C is not field preempted.

Senate Bill 4-C is not field preempted.  That theory of preemption applies only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'"  *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)).  "Only a demonstration that complete ouster of state power[,] including state power to promulgate laws not in conflict with federal laws[,] was the clear and manifest purpose of Congress" will justify a finding of field preemption.  *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) (quotation marks omitted).

1.      The field of "[f]ederal regulation of entry and reentry," Doc. 67 at 18, is not one of those rare areas in which Congress intended to occupy the field to the exclusion of state legislation (like Senate Bill 4-C) that supplements and reinforces federal law.  The federal prohibitions on entry and reentry are each contained in a single statutory subsection—indeed, in a single *sentence* in a single subsection.  *See* 8 U.S.C. §§ 1325(a), 1326(a).  Their prohibitions are not complex; nor are they balanced with carefully crafted exceptions.  *See id.*  Such general prohibitions are not the kind of "comprehensive[]" regulatory scheme, *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co.*, 479 U.S. at 140), sufficient to evince a "clear and manifest purpose" by Congress to effect a "complete ouster" of complementary state law, *DeCanas*, 424 U.S. at 357 (quotation marks omitted).  If they were, then virtually any federal prohibition

would give rise to field preemption, and the Supreme Court's directive that field preemption may be found only in the "rare case[]" would be an empty promise.

**2.**    The Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012), does not support field preemption here.  There, the Court applied its decades-old precedent in *Hines v. Davidowitz*, 312 U.S. 52 (1941), to an Arizona law that "add[ed] a state-law penalty" for failing to comply with the INA's registration requirement. *Arizona*, 567 U.S. at 400.  Following that longstanding precedent, the Court held that the Arizona registration scheme was field preempted.  In addition to the registration requirement itself, *see* 8 U.S.C. § 1302, the INA's registration provisions:  (1) authorize the Attorney General to "prescribe special regulations and forms" to govern the registration of fingerprinting of aliens holding certain professions, *id.* § 1303(a); (2) specify items that must be included in those forms, provide for the confidentiality of registration forms and fingerprints, impose an oath requirement, provide for the issuance of a "certificate of alien registration" for aliens successfully registered, and require that the card be carried "at all times," *id.* § 1304; (3) govern notification of a change of address, *id.* § 1305; and (4) impose penalties for the failure to comply with the registration requirements and other offenses, *id.* § 1306.  Consistent with *Hines*, the Supreme Court concluded that these multiple interlocking provisions "provide a full set of standards governing alien registration" that "occup[y] the field of alien registration," such that "even complementary state regulation is impermissible." *Arizona*, 567 U.S. at 401.

10

The INA's alien registration provisions are far more complex and comprehensive than the simple and straightforward entry and reentry provisions. That is especially true given that multiple of the alien registration provisions specifically authorize the Attorney General to promulgate rules regarding alien registration, which only adds to the complexity and comprehensiveness of the federal alien-registration scheme. *E.g.*, 8 U.S.C. §§ 1302(c), 1303(a). And there is no Supreme Court precedent holding that the entry and reentry provisions form a comprehensive scheme that displaces supplemental state legislation.

This Court's precedent does not support the district court's holding, either. In *Georgia Latino Alliance for Human Rights v. Governor of Georgia* (*GLAHR*), 691 F.3d 1250 (11th Cir. 2012), and *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012), this Court found that the INA's anti-harboring provision (8 U.S.C. § 1324) field preempted state laws that created crimes for (1) concealing, harboring, or shielding an unlawfully present alien from detection, or attempting to do so; (2) encouraging or inducing an unlawfully present alien to enter the state; (3) transporting, attempting to transport, or conspiring to transport an unlawfully present alien; and (4) harboring an unlawfully present alien by entering into a rental agreement with that alien. *Alabama*, 691 F.3d at 1285 (Alabama law); *see GLAHR*, 691 F.3d at 1263 (Georgia law). In reaching that conclusion, this Court emphasized that the INA "provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." *GLAHR*, 691 F.3d at 1263 (citing 8 U.S.C. § 1324).

11

That scheme—like the alien registration scheme at issue in *Arizona*—is far more comprehensive than the entry and reentry statutes. The anti-harboring statute contains detailed provisions delineating the conduct it makes unlawful, including prohibitions for employing illegal aliens. *See* 8 U.S.C. § 1324(a)(1)(A), (a)(2), (a)(3)(A). In addition, it addresses a plethora of other subjects related to its prohibition: (1) the seizure and forfeiture of vehicles used during the commission of an offense, *see id.* § 1324(b); (2) who is authorized to make arrests for violations (including state and local law enforcement), *id.* § 1324(c); (3) "evidentiary rules governing prosecution of one of its enumerated offenses," *GLAHR*, 691 F.3d at 1264 (citing 8 U.S.C. § 1324(d)); and (4) the creation of "a community outreach program to 'educate the public in the United States and abroad about the penalties for bringing in and harboring aliens in violation of this section,'" *id.* (citing 8 U.S.C. § 1324(e)). That comprehensive framework led this Court to conclude that Congress intended to occupy the field related to the harboring and transport of illegal aliens. *See id.*; *see also Alabama*, 691 F.3d at 1285–86. The INA's entry and reentry provisions are nothing like Section 1324. *Supra*, pp. 9–10.

**3.** The district court's contrary conclusions do not withstand scrutiny. The court did not even try to explain how Section 1325 (the unauthorized entry provision) is sufficiently comprehensive to trigger field preemption. *See* Doc. 67 at 18. As for the reentry provision (Section 1326), the court did not identify anything in the *prohibition* itself that would suggest that Congress meant to effect a "complete ouster" of complementary state regulation. *DeCanas*, 424 U.S. at 357. Instead, the court rested on

the view that Section 1326's penalty provisions "recognize[] the need for nuanced immigration decisions" by providing for "differing penalties for those reentering without prior convictions and those reentering" with convictions for certain prior offenses. Doc. 67 at 18. The existence of "nuanced" penalties says nothing about whether the *regulatory scheme* itself is sufficiently comprehensive. To be sure, a difference in penalties under federal and state law for the same conduct may support finding field preemption *where a comprehensive regulatory scheme exists.* That was the case in *Arizona*, 567 U.S. at 403. And this Court held that it was so in *GLAHR*, 691 F.3d at 1263, 1267, and *Alabama*, 691 F.3d at 1285–88. But neither the Supreme Court nor this Court has ever held that field preemption arises in the *absence* of a comprehensive regulatory scheme simply because the federal and state penalties differ.

The district court also reasoned that "the INA 'confines the prosecution of illegal entry and reentry to federal court' and 'limits the power to pursue those cases to the appropriate United States Attorney.'" Doc. 67 at 18 (alterations omitted) (citing 8 U.S.C. § 1329). That provision has no bearing on field preemption—its function is to give federal district courts *subject-matter jurisdiction* over lawsuits "brought by the United States" under the immigration laws and to task the appropriate U.S. Attorney with the "duty" to "prosecute every such suit when brought by the United States." 8 U.S.C. § 1329. Nothing about giving federal courts power to adjudicate cases arising under federal law or empowering federal officials to enforce federal law suggests a congressional intent to foreclose complementary state legislation in the same field. If

13

it did, field preemption would be the rule, rather than the exception. And to the extent that the court meant to suggest that the mere existence of federal enforcement discretion gives rise to preemption—or that this Court's precedents in *GLAHR* and *Alabama* stand for that proposition—that conclusion cannot be reconciled with the Supreme Court's more recent decision in *Kansas*, which held that "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." 589 U.S. at 212.

The fact that 8 U.S.C. § 1357(g) authorizes the Attorney General to enter into "written agreement[s]" with States or their political subdivisions to engage in certain immigration-enforcement activities does not imply that Congress intended to foreclose all other complementary state action in the entry and reentry context. The agreements authorized by Section 1357(g) allow for state or local officials to step into the shoes of a *federal* immigration officer to enforce *federal* law. 8 U.S.C. § 1357(g)(1)–(5), (8) (state official acting under agreement with Attorney General is "shall be considered to be acting under color of Federal authority").##These provisions do not imply a congressional intent to exclude states from regulating illegal immigration. Indeed, Section 1357(g) expressly contemplates that states may engage in cooperative actions related to immigration enforcement. *See* 8 U.S.C. § 1357(g)(10) (preserving states' ability to "cooperate with the Attorney General" in immigration enforcement).

Finally, the lower court reasoned that Senate Bill 4-C is field preempted because "the criminalization of unauthorized noncitizen entry and reentry into the United States

14

impacts 'the status, safety, and security' of foreign nationals." Doc. 67 at 19. That may be true as a factual matter, but it is insufficient as a legal matter to justify field preemption, absent a comprehensive regulatory framework to occupy this field. Any application of criminal law to unauthorized aliens affects their "status, safety, and security" in the United States, but the Supreme Court has been clear that, for purposes of field preemption, that is no barrier to state regulation of unauthorized aliens unless Congress has adopted a regulatory scheme "in a particular field that … 'le[aves] no room for supplementary state legislation.'" *Kansas*, 589 U.S. at 208. Were it otherwise, the Supreme Court's decision in *Arizona* would have been a great deal shorter. A "brooding federal interest" in how unauthorized aliens are treated is not enough. *Virginia Uranium, Inc.*, 587 U.S. at 767.

### B.    Senate Bill 4-C is not conflict preempted.

Senate Bill 4-C also is not unconstitutional as a matter of conflict preemption. *See* Doc. 67 at 22–25. A state law may "conflict with federal law" when "compliance with both federal and state regulations is a physical impossibility," or—in limited circumstances—"where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (quotation marks omitted). As with field preemption, conflict preemption "does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" as "such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber*

*of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality opinion) (quotation marks omitted).

There is no dispute that it is "possible" for Plaintiffs "to comply" with both federal law and Senate Bill 4-C. *Kansas*, 589 U.S. at 210–11. Even so, the district court thought that Senate Bill 4-C is preempted because it conflicts with federal immigration enforcement priorities. *See* Doc. 67 at 23–24. There is no conflict. Certainly, Senate Bill 4-C does not conflict with federal law *on its face*—such that "no set of circumstances exists under which the Act would be valid'" and the law is "unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

1.    Senate Bill 4-C does not conflict with the federal entry and reentry statutes (Sections 1325, 1326). The Florida law does not authorize any conduct forbidden by federal law, but instead uses language borrowed nearly verbatim from the INA to prohibit conduct that parallels conduct prohibited by the INA. *Supra*, p. 7. Florida's law is in harmony, not conflict, with federal law. *Accord* 8 U.S.C. § 1357(g)(10) (authorizing states to "cooperate with the Attorney General" in immigration enforcement).[3]

---

[3] It is true that Senate Bill 4-C differs from federal law in that it is triggered when an unauthorized alien enters Florida, whereas federal law prohibits unauthorized entry into the United States. That in-state nexus is merely a reflection of the Constitution's limits on a state's ability to regulate outside the state's borders. *See, e.g.*, *National Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023); *Gerling Glob. Reinsurance Corp. of*
Continued on next page.

16

The mere fact that Senate Bill 4-C "overlap[s]" with federal law "does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211–12; *see also id.* at 212 (mere "overlap" between federal and state law provides "no basis for inferring" a preemptive conflict). States generally are free to criminalize conduct also proscribed by Congress, and laws targeting illegal immigration are no exception. The Supreme Court has said so explicitly: "Despite the exclusive federal control of this Nation's borders, we cannot conclude that the States are without any power to deter the influx of persons entering the United States against federal law, and whose numbers might have a discernible impact on traditional state concerns." *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982); *accord Gilbert v. Minnesota*, 254 U.S. 325, 331 (1920) ("[T]he state is not inhibited from making the national purposes its own purposes, to the extent of exerting its police power to prevent its own citizens from obstructing the accomplishment of such purposes." (quotation marks omitted)); *California v. Zook*, 336 U.S. 725, 735 (1949) ("[T]here is no conflict in terms, and no possibility of such conflict, [if] the state statute makes federal law its own… .").

2.    The district court did not identify any conflict between the conduct proscribed by Senate Bill 4-C and that prohibited by the INA. Instead, the court thought that Senate Bill 4-C conflicts with the federal government's "enforcement

---

*Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001). This is not a "new crime." *GLAHR*, 691 F.3d at 1266. Senate Bill 4-C merely punishes persons within its jurisdiction who are unlawfully present under federal law because they illegally entered or reentered the country.

discretion" by "giv[ing] state officials authority to prosecute illegal entry or reentry in cases where federal actors may choose not to." Doc. 67 at 23. That line of reasoning is foreclosed by *Kansas*: "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." 589 U.S. at 212. Only federal *law* has preemptive effect—"the criminal law enforcement priorities or preferences of federal officers" do not. *Id.*[4] Even were it otherwise, here the enforcement priorities of the United States and Florida align—both favor maximum enforcement of the immigration laws to deter illegal immigration. And even if some disagreement in priorities were to later arise in a particular case or context, that still would not render Senate Bill 4-C in conflict with federal enforcement priorities "in *all* of its applications." *Washington State Grange*, 552 U.S. at 449 (emphasis added).

It is also not enough that Senate Bill 4-C "imposes a different pretrial detention and penalty scheme" than the INA. Doc. 67 at 25; *see also id.* at 23–24. Although the Supreme Court has recognized that in some contexts, "[c]onflict is imminent whenever two separate remedies are brought to bear on the same activity," *Arizona*, 567 U.S. at 403 (quoting *Wisconsin Dep't of Industry, Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286

---

[4] A different case would be presented if a state sought to regulate on a subject where the federal agency with statutory authority over that subject had exercised its discretion not to promulgate regulations (or had adopted regulations different than the state law). In that context, conflict preemption may apply. It does not follow, however, that preemption follows simply because a complementary state law may be in tension with the existing administration's preferred level of enforcement (or non-enforcement). *See Kansas*, 589 U.S. at 212.

(1986)), the Supreme Court did not, through that language, undermine the general rule that parallel federal and state enforcement are permissible. The *Arizona* majority did not find the differences in penalties independently sufficient for (field or conflict) preemption; it thought that the differing penalties "underscored the reason *for field preemption*," after having concluded that the INA established a "comprehensive scheme" to govern the field of alien registration. 567 U.S. at 400–03 (emphasis added). Where, as here, there is no "careful framework" governing illegal entry and reentry, *id.* at 402— and thus no field preemption, *supra*, pp. 9–14—a mere difference in penalties between Senate Bill 4-C and the federal entry and reentry provisions (Sections 1325(a) 1326(a)) does not support conflict preemption.

Finally, the district court worried that conflict would arise because "state officials are free to prosecute a charge" under Senate Bill 4-C "even while a federal immigration proceeding is underway, which may determine that the defendant may remain lawfully present under federal law." Doc. 67 at 23. But the district court's concern ignores the provisions of Senate Bill 4-C designed to ameliorate conflicts between state and federal law. Section 811.102 not only precludes state-law liability if "[t]he unauthorized alien's entry into the United States did not constitute a violation of 8 U.S.C. s. 1325(a)," Fla. Stat. § 811.102(4)(c), but also if "[t]he Federal Government has granted the unauthorized alien lawful presence in the United States or discretionary relief that authorizes the unauthorized alien to remain in the United States temporarily or permanently," *id.* § 811.102(4)(a). Section 811.102 is written to *avoid* the kind of conflict

19

the district court postulated.  As is Section 811.103, which precludes liability under the Florida law for reentry if "[t]he Attorney General of the United States expressly consented to [the unauthorized alien's] reapplication for admission" or a previously removed alien "establishes that he or she was not required to obtain such advance consent under the [INA]."  *Id.* § 811.103(1)(a)–(b).  These provisions manifest Florida's intent to work cooperatively with the federal government and respect its judgments.  And, again, to the extent conflict may arise in a particular case, that is not sufficient to render Senate Bill 4-C in conflict with federal law "in *all* of its applications."  *Washington State Grange*, 552 U.S. at 449 (emphasis added).

*    *    *

Accordingly, Senate Bill 4-C is not preempted, either as a matter of field preemption or conflict preemption.[5]

## II.    Senate Bill 4-C does not transgress the dormant Commerce Clause.

The district court's preliminary injunction rests principally on its holding that Senate Bill 4-C is preempted, but as an alternative rationale, the court found that

---

[5] The Fifth Circuit recently issued an opinion holding that a Texas law making it a state offense to violate the INA's entry and reentry bars is field and conflict preempted.  *See United States v. Texas*, No. 24-50149 (5th Cir. July 3, 2025).  The Texas law differs from Senate Bill 4-C in materials respects, including because it authorized state judges to order the removal of illegal aliens.  *See Texas*, slip op. at 4-5.  To the extent the Fifth Circuit's opinion holds that the INA occupies the field of alien entry/reentry or that state laws that mirror federal law are automatically (and facially) conflict preempted, the United States disagrees.

"Plaintiffs' Commerce Clause analysis also supports their request for a preliminary injunction."  Doc. 67 at 26.  That holding, too, is erroneous.

The Commerce Clause forbids state laws that "seek to 'build up … domestic commerce' through 'burdens upon the industry and business of other States.'"  *National Pork Producers Council*, 598 U.S. at 369 (alteration in original) (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1879)).  In other words, the dormant Commerce Clause enforces an "antidiscrimination principle" that prohibits state laws animated by "'economic protectionism'"—*i.e.*, "'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'"  *Id.* (quoting *Department of Revenue v. Davis*, 553 U.S. 328, 337–38 (2008)); *see also General Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997) ("[T]he dormant Commerce Clause's fundamental objective [is] preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.").

To the extent cross-border travel of illegal immigrants (rather than goods and services) is "commerce," Senate Bill 4-C is not discriminatory.  The law applies evenhandedly to any illegal alien who enters or attempts to enter Florida after violating the federal entry and reentry statutes, *see* Fla. Stat. §§ 811.102, 811.103—whether that alien is entering Florida for the first time or has resided in Florida (unlawfully) for years.  Section 811.103 goes even further to confirm that its prohibition applies regardless of interstate travel; it prohibits illegal aliens who have reentered the United States with certain prior convictions from "enter[ing], attempt[ing] to enter, or … *at any time [being]*

21

*found* in [Florida]," Fla. Stat. § 811.103(1) (emphasis added).  On its face, Senate Bill 4-C does not discriminate against interstate commerce, and where that is true, the Supreme Court has recognized the States' ability to "'exclude from its territory … any articles which, in its judgment, fairly exercised, are prejudicial to' the interests of its citizens." *National Pork Producers Council*, 598 U.S. at 369 (quoting *Guy*, 100 U.S. at 443); *accord H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949) (When a State does not "attempt[] … to advance their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state," courts typically should "support[] their right to impose … regulations in the interest of local health and safety.").

The decision in *Edwards v. California*, 314 U.S. 160 (1941), on which the district court relied, is a straightforward application of the Commerce Clause's antidiscrimination rule:  the California law targeted the "transportation of indigent *non-residents* into its territory," which evinced a blatantly protectionist effort by California "to isolate itself from difficulties common to all of [the States]" by excluding indigent non-residents, whose entry presented "staggering" "problems of . . . finance."  *Id.* at 173–74 (emphasis added).  Senate Bill 4-C, by contrast, is not limited to non-residents, and there are no other indications of a protectionist purpose—the law does not "seek[] to advantage in-state firms or disadvantage out-of-state rivals."  *National Pork Producers Council*, 598 U.S. at 370.  Senate Bill 4-C is about illegal immigration, not economic protectionism.

22

**CONCLUSION**

The district court's preliminary injunction should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC MCARTHUR
  *Deputy Assistant Attorney General*

  *s/ Benjamin Hayes*
MARK R. FREEMAN
BENJAMIN HAYES
JOHN BAILEY
  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1754*
  *Benjamin.T.Hayes@usdoj.gov*

July 2025

23

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,810 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Benjamin Hayes*
Benjamin Hayes

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.


*s/ Benjamin Hayes*
Benjamin Hayes