# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Docket No. 25-11469

FLORIDA IMMIGRANT COALITION, ET AL,

*Plaintiffs – Appellees,*

v.

JAMES UTHMEIER, ET AL,

*Defendants – Appellants.*

## On Appeal from
United States District Court for the Southern District of Florida,
Nos. 1:25-cv-21524-KMW

## PLAINTIFFS-APPELLEES' ANSWERING BRIEF

Omar Jadwat
Grace Choi
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Cody Wofsy
Spencer Amdur
Oscar Sarabia Roman
Hannah Steinberg
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
osarabia@aclu.org
hsteinberg@aclu.org

Paul R. Chavez
Evelyn Wiese
Christina Isabel LaRocca
AMERICANS FOR IMMIGRANT
JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
T: (305) 576-6273
pchavez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

Miriam Haskell
Alana Greer
COMMUNITY JUSTICE PROJECT,
INC.
3000 Biscayne Blvd., Suite 106
Miami, FL 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com

Amy Godshall
Daniel B. Tilley
ACLU FOUNDATION OF
FLORIDA, INC.
4343 West Flagler Street, Suite 400
Miami, FL 33134
T: (786) 363-2700
agodshall@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT .......................................... xiv

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................xv

STATEMENT OF THE ISSUES...........................................................1

INTRODUCTION ................................................................................3

STATEMENT OF THE CASE................................................................4

    A. Congress's Pervasive Regulation of Entry and Reentry ..............................4

    B. Florida's Senate Bill 4-C ...............................................................6

    C. Procedural History...........................................................................7

STANDARD OF REVIEW ...................................................................9

SUMMARY OF THE ARGUMENT ...................................................10

ARGUMENT ......................................................................................12

  I. DEFENDANTS' THRESHOLD ARGUMENTS LACK MERIT....................12

    A. Plaintiffs Have Standing. ...........................................................12

    B. Plaintiffs May Sue In Equity. ....................................................16

  II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS..................22

A. S.B. 4-C Is Field Preempted.............................................................22

B. S.B. 4-C Is Conflict Preempted. .....................................................30

C. S.B. 4-C Violates the Dormant Commerce Clause. ......................35

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
WEIGHING THE EQUITIES. ...............................................................36

IV. THE DISTRICT COURT PROPERLY ENJOINED LAW-
ENFORCEMENT OFFICERS. ..............................................................41

CONCLUSION .......................................................................................54

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*ACLU v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ................................................................. 44, 45

*ADT LLC v. NorthStar Alarm Servs., LLC*,
  853 F.3d 1348 (11th Cir. 2017) ................................................................. passim

*Al Otro Lado v. Wolf*,
  497 F. Supp. 3d 914 (S.D. Cal. 2020) ................................................................45

*Am. Booksellers Ass'n, Inc. v. Webb*,
  590 F. Supp. 677 (N.D. Ga. 1984)........................................................................44

*Am. Librs. Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997) ......................................................................44

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................42

*Arizona v. United States*,
  567 U.S. 387 (2012) ..................................................................................... passim

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ..................................................................................... passim

*Baldwin v. G.A.F. Seelig, Inc.*,
  294 U.S. 511 (1935) .............................................................................................35

*Biden v. Texas*,
  597 U.S. 785 (2022) ...............................................................................................6

*Bond v. United States*,
  564 U.S. 211 (2011) .............................................................................................19

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) (en banc)...........................................................39

*Fox v. Ritz-Carlton Hotel Co., LLC*,
    977 F.3d 1039 (11th Cir. 2020) .................................................................. 15, 16

*Chy Lung v. Freeman*,
    92 U.S. 275 (1875) ........................................................................................ 3, 29

*City of Philadelphia v. New Jersey*,
    437 U.S. 617 (1978) ..................................................................................... 35, 36

*City of S. Mia. v. Governor*,
    65 F.4th 631 (11th Cir. 2023) ............................................................................46

*Club Madonna Inc. v. City of Mia. Beach*,
    42 F.4th 1231 (11th Cir. 2022) .................................................................. 34, 40

*Collins v. Yellen*,
    594 U.S. 220 (2021) .............................................................................................19

*Crown Castle Fiber, L.L.C. v. City of Pasadena*,
    76 F.4th 425 (5th Cir. 2023) ..............................................................................17

*Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*,
    127 F.4th 1294 (11th Cir. 2025) ................................................................. 12, 13

*DeCanas v. Bica*,
    424 U.S. 351 (1976) ............................................................................... 23, 28, 29

*Dep't of Revenue v. Davis*,
    553 U.S. 328 (2008) .............................................................................................35

*Doe #1 v. Lee*,
    No. 16-cv-2862, 2021 WL 1264433 (M.D. Tenn. Apr. 5, 2021).........................44

*Doe v. Harris*,
    No. C12-5713, 2012 WL 6101870 (N.D. Cal. Nov. 7, 2012)..............................44

*Edwards v. California*,
    314 U.S. 160 (1941) ......................................................................... 11, 35, 36

*Ex parte Young*,
    209 U.S. 123 (1908) ................................................................................... 10, 16

iv

*Farmworker Ass'n of Fla. v. Moody*,
    734 F. Supp. 3d 1311 (S.D. Fla. 2024)....................................................40

*Farmworker Ass'n of Fla. v. Uthmeier*,
    --- F. Supp. 3d ----, 2025 WL 775558 (S.D. Fla. Mar. 11, 2025) ............... 19, 20

*Fla. Immigrant Coal. v. Att'y Gen.*,
    No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ....................... passim

*Fong Yue Ting v. United States*,
    149 U.S. 698 (1893) ...........................................................................27

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ...........................................................................35

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
    691 F.3d 1250 (11th Cir. 2012)..................................................... passim

*Golden State Bottling Co., Inc. v. NLRB*,
    414 U.S. 168 (1973) ....................................................................... 48, 49

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ...........................................................................17

*Gonzalez v. Governor of Ga.*,
    978 F.3d 1266 (11th Cir. 2020).............................................................9

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987)...........................................................16

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ...........................................................................15

*GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus
    Christ*,
    687 F.3d 676 (5th Cir. 2012) ...............................................................52

*Henderson v. Mayor of City of New York*,
    92 U.S. 259 (1875) .............................................................................29

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013)...........................................................13

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ........................................................................14

*Hunter v. Underwood,*
   471 U.S. 222 (1985) ........................................................................16

*Idaho Org. of Res. Councils v. Labrador,*
   780 F. Supp. 3d 1013 (D. Idaho 2025) ................................. 3, 16, 39, 41

*Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police,*
   470 F. Supp. 3d 888 (S.D. Ind. 2020) ...............................................45

*Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.,*
   16 F.3d 198 (7th Cir. 1994) ............................................................20

*Jacobson v. Fla. Sec'y of State,*
   974 F.3d 1236 (11th Cir. 2020) .......................................................46

*Jeffers v. United States,*
   432 U.S. 137 (1977) ........................................................................42

*Junior Sports Mags. Inc. v. Bonta,*
   No. 24-4050, 2025 WL 1863184 (9th Cir. July 7, 2025) ....................44

*Kansas v. Garcia,*
   589 U.S. 191 (2020) ................................................... 28, 31, 32

*Keystone Driller Co. v. Gen. Excavator Co.,*
   290 U.S. 240 (1933) ........................................................................40

*League of Women Voters v. Fla. Sec'y of State,*
   66 F.4th 905 (11th Cir. 2023) .........................................................53

*Lewis v. Clarke,*
   581 U.S. 155 (2017) ........................................................................43

*Loper Bright Enters. v. Raimondo,*
   603 U.S. 369 (2024) ........................................................................34

*Lorillard Tobacco Co. v. Reilly,*
   533 U.S. 525 (2001) ........................................................................34

*Lozano v. City of Hazleton*,
   620 F.3d 170 (3d Cir. 2010) .........................................................39

*Lozano v. City of Hazleton*,
   724 F.3d 297 (3d Cir. 2013) .........................................................29

*Lozano v. City of Hazleton*,
   563 U.S. 1030 (2011) ...................................................................39

*Lucero v. Trosch*,
   121 F.3d 591 (11th Cir. 1997) ......................................................52

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .....................................................................12

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ............................................................... 52, 53

*Mathis v. U.S. Parole Comm'n*,
   749 F. Supp. 3d 8 (D.D.C. 2024) .................................................18

*Mayor of City of New York v. Miln*,
   36 U.S. 102 (1837) .......................................................................29

*McKennon v. Nashville Banner Publ'g Co.*,
   513 U.S. 352 (1995) .....................................................................39

*Medina v. Planned Parenthood S. Atl.*,
   145 S. Ct. 2219 (2025) .................................................................17

*Mitchell Bros. Film Grp. v. Cinema Adult Theater*,
   604 F.2d 852 (5th Cir. 1979) .................................................. 39, 40

*Moore v. Comfed Sav. Bank*,
   908 F.2d 834 (11th Cir. 1990) ......................................................15

*Murphy v. NCAA*,
   584 U.S. 453 (2018) ............................................................... 18, 20

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ................................................................. 16, 52

*Myers v. Gilman Paper Corp.*,
    544 F.2d 837 (5th Cir. 1977) ................................................................. 52

*Nat'l Ass'n of the Deaf v. Florida*,
    980 F.3d 763 (11th Cir. 2020) ............................................................... 21

*Newton v. Duke Energy Fla.*,
    895 F.3d 1270 (11th Cir. 2018) ............................................................. 17

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892) ............................................................................... 27

*Padres Unidos de Tulsa v. Drummond*,
    --- F. Supp. 3d ----, 2025 WL 1573590 (W.D. Okla. June 3, 2025) ... 3, 16, 18, 29

*Paez v. Mulvey*,
    915 F.3d 1276 (11th Cir. 2019) ............................................................. 13

*Patsy's Italian Rest., Inc. v. Banas*,
    658 F.3d 254 (2d Cir. 2011) .................................................................. 10

*Perkins Coie LLP v. U.S. Dep't of Just.*,
    780 F. Supp. 3d 227 (D.D.C. 2025) ...................................................... 49

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
    392 U.S. 134 (1968) ............................................................................... 39

*PlayNation Play Systems, Inc. v. Velex Corp.*,
    939 F.3d 1205 (11th Cir. 2019) ............................................................. 53

*Plyler v. Doe*,
    457 U.S. 202 (1982) ............................................................................... 23

*Pub. Util. Comm'n v. United Fuel Gas Co.*,
    317 U.S. 456 (1943) ............................................................................... 37

*Regal Knitwear Co. v. NLRB*,
    324 U.S. 9 (1945) ...................................................................... 43, 48, 51

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ............................................................................... 24

*Rhode v. Bonta*,
713 F. Supp. 3d 865 (S.D. Cal. 2024) ....................................................44

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) ...............................................................................22

*Rodriguez v. United States*,
575 U.S. 348, (2015) ..............................................................................47

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) ...............................................................18

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988) ...............................................................................26

*Scott v. Roberts*,
612 F.3d 1279 (11th Cir. 2010) .............................................................36

*SEC v. MCC Int'l Corp.*,
No. 22-12281, 2024 WL 1508281 (11th Cir. Apr. 8, 2024) ................52

*Seminole Tribe v. Florida*,
517 U.S. 44 (1996) ........................................................................... 20, 21

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) .................................................................................21

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966). ..............................................................................44

*State v. Miller*,
394 So. 3d 164 (Fla. Dist. Ct. App. 2024).............................................15

*State v. Nuckolls*,
606 So. 2d 1205 (Fla. Dist. Ct. App. 1992)...........................................15

*State v. Yanes-Blanco*,
401 So. 3d 592 (Fla. Dist. Ct. App. 2025).............................................15

*Summit Med. Assocs., P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999). ............................................................15

*Support Working Animals, Inc. v. Governor of Fla.*,
  8 F.4th 1198 (11th Cir. 2021) ........................................................ 16, 46

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...................................................................... 13

*Terry v. Ohio*,
  392 U.S. 1 (1968) .......................................................................... 47

*Transcon. Gas Pipe Line Co. v. 6.04 Acres*,
  910 F.3d 1130 (11th Cir. 2018) ..................................................... 40

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ....................................................................... 50

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) ............................................ 5, 29, 34, 37

*United States v. Guest*,
  383 U.S. 745 (1966) ....................................................................... 35

*United States v. Hall*,
  472 F.2d 261 (5th Cir. 1972) ..................................................... 43, 50

*United States v. Iowa*,
  126 F.4th 1334 (8th Cir. 2025) ............................................... passim

*United States v. Iowa*,
  No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025) ................... 3

*United States v. Locke*,
  529 U.S. 89 (2000) ......................................................................... 29

*United States v. Oklahoma*,
  739 F. Supp. 3d 985 (W.D. Okla. 2024) .......................................... 3

*United States v. Robinson*,
  83 F.4th 868 (11th Cir. 2023) ................................................ 42, 43, 50

*United States v. Salerno*,
  481 U.S. 739 (1987) ....................................................................... 34

x

*United States v. Texas*,
  144 F.4th 632 (5th Cir. 2025) ................................................................ passim

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................ 6, 24, 30, 38

*United States v. Texas*,
  97 F.4th 268 (5th Cir. 2024) ................................................................ 4, 29, 30

*United States v. Texas*,
  719 F. Supp. 3d 640 (W.D. Tex. 2024) .................................................. 38

*Uthmeier v. Fla. Immigrant Coal.*,
  No. 24A1269, 2025 WL 1890573 (U.S. July 9, 2025) .............................. 3, 9, 22

*Van Buren v. United States*,
  593 U.S. 374 (2021) .................................................................... 42

*Va. Off. for Prot. & Advoc. v. Stewart*,
  563 U.S. 247 (2011) .................................................................... 21

*Walker v. City of Birmingham*,
  388 U.S. 307 (1967) .................................................................... 41

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) .................................................................... 43

*Wilson v. Attaway*,
  757 F.2d 1227 (11th Cir. 1985) .................................................... 46

*Wollschlaeger v. Governor*,
  848 F.3d 1293 (11th Cir. 2017) (en banc) .................................... 13

*Wyeth v. Levine*,
  555 U.S. 555 (2009) .................................................................... 34

*Zschernig v. Miller*,
  389 U.S. 429 (1968) .................................................................... 34

xi

**Statutes**

8 U.S.C. § 1101 ................................................................ 5, 24

8 U.S.C. § 1103 .....................................................................20

8 U.S.C. § 1153 .....................................................................23

8 U.S.C. § 1158 ................................................................ 5, 24

8 U.S.C. § 1182 ................................................................ 5, 24

8 U.S.C. § 1184 .....................................................................23

8 U.S.C. § 1225 ................................................................ 5, 24

8 U.S.C. § 1226 .....................................................................24

8 U.S.C. § 1229 .......................................................................5

8 U.S.C. § 1231 ................................................................ 5, 24

8 U.S.C. § 1323 .....................................................................24

8 U.S.C. § 1324 .....................................................................24

8 U.S.C. § 1325 ...................................................... 5, 20, 23, 27, 30

8 U.S.C. § 1326 ................................................ 5, 20, 23, 26, 30, 44

8 U.S.C. § 1327 .....................................................................24

8 U.S.C. § 1328 .....................................................................24

8 U.S.C. § 1329 ............................................................... 20, 24

8 U.S.C. § 1357 .....................................................................33

42 U.S.C. § 1983 ...................................................................17

Fla. Stat. § 741.2901 ............................................................47

Fla. Stat. § 811.102 ............................................... 6, 14, 26, 27

Fla. Stat. § 811.103 ...................................................................... 6, 14, 26

**Other Authorities**

Andrea M. Gardner & Kevin M. Scott, *Census of State and Local Law Enforcement Agencies, 2018 – Statistical Tables*, U.S. Dep't of Just., Bureau of Just. Statistics (Oct. 2022), https://perma.cc/4CT2-DXZF ...................................48

Black's Law Dictionary (3d ed. 1933)....................................................42

Camilo Montoya-Galvez, *Migrant Crossings at U.S.-Mexico Border Stay at Historically Low Levels 3 Months Into Trump Crackdown*, CBS News (May 1, 2025), https://perma.cc/GT6A-A3US. ..................................................37

Fed'n for Am. Immigr. Reform, *The Fiscal Burden of Illegal Immigration on United States Taxpayers 2023* (2023), https://perma.cc/4PX8-J9N4. .................38

Hannah Critchfield & Ashley Borja, *A Judge Blocked Florida's Immigration Law. Police Arrested 25 Anyway*, Tampa Bay Times (May 28, 2025), https://perma.cc/6YWT-LPZN ..................................................................36

Nat'l Inst. of Just., Dep't of Just., *Undocumented Immigrant Offending Rate Lower Than U.S.-Born Citizen Rate* (Sept. 12, 2024), https://perma.cc/GRD7-K7WE .38

U.S. Customs & Border Prot., *Frontline Against Fentanyl* (last modified May 22, 2025), https://perma.cc/4NAU-9GSY ..................................................37

U.S. Dep't of Just., Off. of the Inspector Gen., *Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services: Evaluation & Inspections Div. Rep. 21-028* (Jan. 2021, rev. Apr. 2022), https://perma.cc/S96N-9B5U, ..........................................5

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is scheduled for October 9, 2025.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiffs-Appellees remove the following persons who were included in Defendants-Appellants' CIP:

1. Kacou, Amien

2. Mann, William C.


Plaintiffs-Appellees add the following person who was not included in Defendants-Appellants' CIP:

1. McVay, Bradley[1]


No publicly traded company or corporation has an interest in the outcome of this case or appeal.


Dated: August 29, 2025

*/s/ Cody Wofsy*
Cody Wofsy
American Civil Liberties Union Foundation

*Counsel for Plaintiffs–Appellees*

---

[1] Statewide Prosecutor Bradley McVay is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

## STATEMENT OF THE ISSUES

The State of Florida enacted Senate Bill 4-C ("S.B. 4-C") to create its own state crimes, punishments, and criminal procedures governing the entry and reentry of noncitizens into the United States.  The issues on appeal are:

1. Whether the district court correctly concluded that Plaintiffs are likely to show that they have standing and a cause of action in equity.

2. Whether the district court correctly concluded that Plaintiffs are likely to show that S.B. 4-C is:

   a. field preempted for intruding on the field of noncitizen entry and reentry, where there is a dominant federal interest and a comprehensive federal statutory and regulatory framework;

   b. conflict preempted for permitting unilateral state regulation of immigration, frustrating federal discretion, and creating inconsistencies with federal law; and

   c. violative of the Commerce Clause for criminalizing entry into Florida from other states.

3. Whether the district court abused its discretion in concluding that the equities favor an injunction.

4. Whether the district court abused its discretion in enjoining law-enforcement officers who act in active concert and participation with Defendants to

1

enforce S.B. 4-C, and whether Defendants have standing to challenge this aspect of the injunction.

**INTRODUCTION**

For 150 years, the Supreme Court has made clear that the regulation of noncitizen entry and reentry is a matter committed exclusively to the federal government. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875); *Arizona v. United States*, 567 U.S. 387, 395–96 (2012). Florida now asks this Court to cast aside that settled precedent and authorize a state immigration scheme that Congress has not sanctioned. The district court correctly rejected that request—joining every other court to have considered laws like Florida's Senate Bill 4-C ("S.B. 4-C") in holding it preempted by the comprehensive federal system governing the entry, admission, and presence of noncitizens. *See United States v. Texas*, 144 F.4th 632, 686 (5th Cir. 2025); *United States v. Iowa*, 126 F.4th 1334, 1352 (8th Cir. 2025), *vacated as moot*, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *United States v. Oklahoma*, 739 F. Supp. 3d 985, 1002, 1004 (W.D. Okla. 2024); *Padres Unidos de Tulsa v. Drummond*, --- F. Supp. 3d ----, 2025 WL 1573590, at *5–7 (W.D. Okla. June 3, 2025); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1043 (D. Idaho 2025) (hereinafter "*IORC*"). And when Florida recently made its case to the Supreme Court seeking a stay, that Court turned it away as well—with no noted dissents. *Uthmeier v. Fla. Immigrant Coal.*, No. 24A1269, 2025 WL 1890573, at *1 (U.S. July 9, 2025). Defendants do not even acknowledge this overwhelming authority—much less offer any basis to depart from it.

3

Defendants alternatively argue that the injunction should be narrowed so that law-enforcement officers can *arrest* for alleged S.B. 4-C violations, even though every prosecutor in the state will remain enjoined from bringing *charges* under the statute. But the district court was well within its discretion in rejecting that illogical outcome. Under Federal Rule of Civil Procedure 65, injunctions bind Defendants' agents and those in "active concert or participation with" them. The close collaboration between law-enforcement officers and state prosecutors falls squarely within that provision, and the law-enforcement officers are properly enjoined. In any event, Defendants lack standing to advance these arguments on behalf of nonparties.

This Court should affirm.

## STATEMENT OF THE CASE

### A. Congress's Pervasive Regulation of Entry and Reentry

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona*, 567 U.S. at 394. Congress exercised that power in the Immigration and Nationality Act ("INA"), which "is comprehensive, complex, and national in scope." *United States v. Texas*, 97 F.4th 268, 285 (5th Cir. 2024).

That scheme balances policy goals, providing federal officers with a range of criminal and civil tools to regulate irregular entry. On the criminal side, unlawful

4

entry and reentry after removal are federal offenses, alongside various other criminal regulations related to irregular entries. 8 U.S.C. §§ 1325, 1326; *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1264 (11th Cir. 2012) (hereinafter "*GLAHR*") (recognizing the "comprehensive nature" of federal criminal statutes regarding "coming to, or remaining within, the United States"); *United States v. Alabama*, 691 F.3d 1269, 1286 (11th Cir. 2012) (similar). On the civil side, Congress has specified categories of noncitizens who may be denied admission to the United States, *see* 8 U.S.C. § 1182, including those who enter between ports of entry, *see* 8 U.S.C. § 1182(a)(6). To decide whether a person will be removed, Congress has established an extensive administrative system for adjudicating removal cases, 8 U.S.C. §§ 1229a, 1225(b)(1), and provided various forms of relief from removal, 8 U.S.C. §§ 1158, 1231(b)(3), 1101(a)(15)(U), (T).

Federal prosecutors and civil enforcement officers make decisions about how to deploy these tools collaboratively, taking into consideration various factors including humanitarian concerns and the need to encourage cooperation by victims and witnesses. *See Arizona*, 567 U.S. at 396.[2] Indeed, "[a] principal feature of the removal system" that Congress designed "is the broad discretion" delegated to the

---

[2] *See, e.g.*, U.S. Dep't of Just., Off. of the Inspector Gen., *Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and Health and Human Services: Evaluation & Inspections Div. Rep. 21-028*, at 3–4 & nn.7–8 (Jan. 2021, rev. Apr. 2022), https://perma.cc/S96N-9B5U.

federal Executive. *Arizona*, 567 U.S. at 396. Federal officials "decide whether it makes sense to pursue removal at all," *id.*, and choose among the several removal processes Congress established, *see Biden v. Texas*, 597 U.S. 785, 801–03 (2022); *United States v. Texas*, 599 U.S. 670, 679 (2023). And, critically, "federal officials in charge of the comprehensive scheme" decide whether "to bring criminal charges against individuals" under the associated federal criminal laws, or whether doing so "would frustrate federal policies." *Arizona*, 567 U.S. at 402; *see Texas*, 144 F.4th at 675–76.

### B. Florida's Senate Bill 4-C

S.B. 4-C criminalizes "illegal entry," defined as "knowingly enter[ing] or attempt[ing] to enter" Florida "after entering the United States by eluding or avoiding examination or inspection by immigration officers." Fla. Stat. § 811.102(1). The law also criminalizes "illegal reentry," defined as "enter[ing], attempt[ing] to enter, or [being] at any time found in" Florida after "having been denied admission, excluded, deported, or removed or having departed the United States during the time an order of exclusion, deportation, or removal is outstanding." *Id.* § 811.103(1). Unlike federal crimes relating to unlawful entry and reentry, these state crimes carry significant mandatory minimum sentences and mandatory pre-trial detention. *See id.* §§ 811.102(1)–(2), (5), 811.103(2)–(4).

6

## C. Procedural History

Plaintiffs are two provisionally certified classes of noncitizens subject to arrest and prosecution under S.B. 4-C. The named plaintiffs are two individuals subject to prosecution under S.B. 4-C, as well as two Florida membership organizations, the Florida Immigrant Coalition ("FLIC") and the Farmworker Association of Florida ("FWAF"), whose members are subject to prosecution under the law. The defendants are state Attorney General James Uthmeier, the statewide prosecutor, and the state attorneys for each of Florida's 20 judicial circuits.

On April 4, the district court entered a temporary restraining order ("TRO"), which barred enforcement of S.B. 4-C by Defendants, their agents and servants, or any other person "in active concert or participation with them." App. 109. When it came to light that police had made several S.B. 4-C arrests after this TRO was issued, including of a U.S. citizen, the district court expressly clarified that its order bound all state law-enforcement officers. *Id.* at 148. It required Defendants to provide notice of the order to law-enforcement officers. *Id.* at 149. Attorney General Uthmeier initially did so in an April 18 letter, which expressed his disagreement with the court's decision but asked officers "to comply with Judge Williams' directives." *Id.* at 275–76. He then issued a second letter on April 23, stating that "there remains no judicial order that properly restrains you from" enforcing S.B. 4-C, and that "it is my view that no lawful, legitimate order currently impedes your agencies from

7

continuing to enforce" the statute.  *Id.* at 272.  The district court held Attorney General Uthmeier in civil contempt for this second letter, finding that it vitiated the notice he had been ordered to provide, and required as a sanction biweekly reporting of any enforcement of the statute.  *Id.* at 460.  Defendants have separately appealed the district court's contempt order.  *See* No. 25-12441.

On April 29, the district court provisionally certified classes of those subject to prosecution under each of the crimes, and issued a preliminary injunction.  App. 319–41.  The court noted that "courts across the country have unanimously held that nearly identical state illegal entry and reentry laws recently enacted are likely preempted by federal immigration law governing noncitizen entry."  *Id.* at 325 (collecting cases).

Defendants appealed and sought a stay, which a unanimous motions panel of this Court denied.  *See Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *6 (11th Cir. June 6, 2025) (hereinafter "*FLIC*").  The panel found it "likely—given the federal government's longstanding and distinct interest in the exclusion and admission of aliens, and the Immigration and Nationality Act's extensive regulation of alien admission—that [the field preemption analysis] is satisfied with respect to the field of alien entry into and presence in the United States."  *Id.* at *3.

8

The motions panel also declined to stay the district court's preliminary injunction as to law-enforcement officials, observing that either the district court's order was a "sensible" effort "to enjoin from implementing S.B. 4-C the various officials who might be a part of the enforcement effort," or, if the police really can make arrests entirely independently of any prosecution, that the Attorney General lacks standing to advance that independent interest. *Id.* at *4–5.

Finally, the motions panel rejected Defendants' equities arguments, emphasizing that "[f]ederal officials of course already enforce immigration law" with Defendants' active cooperation, and that the Attorney General's apparent "veiled threat not to obey" the district court undercut his claim for a stay. *Id.* at *6.

Defendants then sought a stay in the U.S. Supreme Court, which the Supreme Court denied with no noted dissents. *See Uthmeier*, 2025 WL 1890573, at *1.

## STANDARD OF REVIEW

This Court reviews a district court's "grant of a preliminary injunction for abuse of discretion, reviewing any underlying legal conclusions *de novo* and any findings of fact for clear error." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020) (describing "narrow" and "deferential" review).  To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant unless the injunction is granted; (3) that the threatened injury outweighs the harm that the preliminary injunction

9

would cause the opposing party; and (4) that the injunction would not adversely affect the public interest.  *Id.* at 1271.  The scope of the injunction is reviewed for abuse of discretion.  *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 275 (2d Cir. 2011).

## SUMMARY OF THE ARGUMENT

*Every* other court to have considered a law like S.B. 4-C has rejected it—and the Supreme Court, like this Court, declined to stay the order that is the subject of this appeal.  The Court should affirm.

The individual Plaintiffs and members of the organizational Plaintiffs have standing, as they are subject to arrest, detention, and prosecution under the plain text of S.B. 4-C.  And Plaintiffs have a well-established equitable cause of action to seek prospective relief against the enforcement of S.B. 4-C under *Ex parte Young*, 209 U.S. 123 (1908).

On the merits, S.B. 4-C is field preempted.  For 150 years, the Supreme Court has made clear that the regulation of noncitizen entry is an exclusively federal arena, and Congress has pervasively regulated in that field.  *Arizona* reaffirms that states cannot impose their own parallel immigration enforcement systems, nor can they enact even complementary schemes within a preempted field.

S.B. 4-C is also conflict preempted.  By empowering state officials to unilaterally arrest, prosecute, and jail noncitizens for state immigration entry crimes,

10

S.B. 4-C severely undermines federal discretion to consider a broad range of interests—including foreign affairs and humanitarian concerns—in deciding whether and how to engage in immigration enforcement in any given case. Just as in *Arizona*, this state law would allow Florida to "achieve its own immigration policy." 567 U.S. at 408.

Separately, S.B. 4-C violates the Commerce Clause because it prohibits the entry of certain people into the State of Florida. The Supreme Court has specifically rejected exactly that kind of barrier to interstate travel. *See Edwards v. California*, 314 U.S. 160, 173 (1941).

The district court acted well within its discretion in weighing the balance of equities and the public interest. Plaintiffs face imminent and irreparable harm from arrest, detention, and prosecution under S.B. 4-C. Defendants face no comparable harm and have no cognizable interest in asserting control over immigration.

Finally, the district court properly enjoined law-enforcement officers who work in active concert and participation with Defendants. That result follows directly from the text of Rule 65(d)(2), and from the close, ongoing coordination between prosecutors and police agencies in enforcing state crimes. Their illogical contrary position would severely undermine the injunction and encourage widespread Fourth Amendment violations. And, in any event, the Attorney General lacks standing to contest the injunction's application to nonparties.

11

## ARGUMENT

## I.    DEFENDANTS' THRESHOLD ARGUMENTS LACK MERIT.

### A. Plaintiffs Have Standing.

The district court correctly held that Plaintiffs have standing.  App. 309–14. The individual plaintiffs—Y.M and V.V.—straightforwardly satisfy the standard for pre-enforcement challenges because each is subject to prosecution under S.B. 4-C. *See FLIC*, 2025 WL 1625385, at *2; *Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1302 (11th Cir. 2025).

Defendants argue that Plaintiffs have not alleged "concrete plans" to enter Florida.  Br. 19.  As an initial matter, V.V. need not travel to be prosecuted under S.B. 4-C's reentry provision, as Defendants concede.  Br. 21.  And regarding the entry crime, Y.M. routinely travels out of state with family, and V.V. does so for work; both have affirmed their intent to continue such travel.  *See* App. 89 ¶ 8; App. 93 ¶ 7; *see Daniels*, 127 F.4th at 1302 (finding standing where fisherman "regularly" used restricted nets and "will continue to" do so); *GLAHR*, 691 F.3d at 1258 (same for plaintiff who "regularly transports" noncitizens).  The district court, App. 312, rightly distinguished such recurring conduct from the speculative intentions in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992) (rejecting "'some day'

12

intentions" that might mean "'in this lifetime'"); *see Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1338–40 (11th Cir. 2013) (collecting cases).[3]

Defendants suggest in passing that Plaintiffs must also "show that they fall outside of SB 4-C's statutory defenses." Br. 19. But they identify no specific defense that might apply to Plaintiffs, and there is none. Moreover, Plaintiffs' conduct must only be "'arguably . . . proscribed by [the] statute' they wish to challenge." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162–63 (2014). Here, regardless of any possible affirmative defense, Plaintiffs face the concrete harms of "arrest or prosecution," *Daniels*, 127 F.4th at 1302; *see Paez v. Mulvey*, 915 F.3d 1276, 1286, 1289–90 (11th Cir. 2019) (possible affirmative defense did not vitiate probable cause).

Defendants argue that Plaintiffs have no legally protected interest because they seek to "engage in unrelated illegal conduct." *See* Br. 19–20. That argument, which appears to replicate their "unclean hands" equities claims, is meritless as explained below. *Infra* Part III.

The district court also correctly concluded that both FLIC and FWAF have associational standing. App. 313–14. Y.M. is a member of FLIC and V.V. is a

---

[3] Defendants rightly do not contest that Plaintiffs have shown a credible threat of prosecution. *See FLIC*, 2025 WL 1625385, at *2*; Daniels*, 127 F.4th at 1302 (citing *GLAHR*, 691 F.3d at 1256, 1258–59); *Wollschlaeger v. Governor*, 848 F.3d 1293, 1305 (11th Cir. 2017) (en banc).

member of both organizations.  App. 93 ¶ 2; App. 89 ¶ 4.  Both have standing as described above, and FWAF member W.A. has standing for the same reasons.  App. 81 ¶ 20.  Defendants do not contest the remaining elements of associational standing, which both organizations satisfy.  *See* Br. 22–23; *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).[4]

Shifting ground, Defendants contend that even if Plaintiffs can demonstrate standing as to some state attorneys, they lack standing as to other defendants who may be less likely to prosecute them.  *See* Br. 20–21.  That is wrong.  V.V. is subject to prosecution anywhere she is found within the state.  Fla. Stat. § 811.103(1).  And both individuals' routine travel means that they will pass through various jurisdictions, and subjects them to prosecution in any Florida county in which they travel.  Fla. Stat. § 811.102(1).  The same is true of numerous other members of the organizations throughout the state.  *See* App. 79–81 ¶¶ 15–16, 20; App. 85–86 ¶¶ 15, 19.  As the district court correctly recognized, "Defendants' arguments assume a rigidity of travel that does not comport with the pleadings, case authority, or the realities of modern movement."  App. 316.

Defendants contend that an individual "can only be prosecuted under the entry provision by the state attorney where she 'enters' Florida."  Br. 21.  But Florida

---

[4] The district court did not reach the question of FLIC's organizational standing, and given the organizations' associational standing and the certified class it is not necessary for this Court to do so either.  *See* App. 314 n.6.

14

courts have indicated that "entry . . . is a continuous process" that "continue[s] until [noncitizens] arrive[] at their destination." *State v. Yanes-Blanco*, 401 So. 3d 592, 598 (Fla. Dist. Ct. App. 2025). And the record confirms that arrests under S.B. 4-C's entry crime have occurred in non-border counties. Dist. Ct. Dkt. No. 104. Defendants cite nothing to the contrary.[5]

More generally, Defendants wrongly suggest that the certified class is irrelevant. Br. 20–21. But this Court has previously approved of the joinder of all relevant defendants in a class case—even those "with whom the named class representative did not have a direct contact." *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 837, 839 (11th Cir. 1990) (rejecting argument that "there was no case or controversy between the named plaintiffs and [certain] defendants"); *cf. Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1043 (11th Cir. 2020) (rejecting argument that named plaintiff "did not have standing to sue on behalf of the customers that paid automatic gratuities at Ritz-Carlton restaurants that [he] did not visit"); *Gratz v. Bollinger*, 539 U.S. 244, 262–68 (2003) (rejecting argument that named plaintiff

---

[5] For the same reasons, Plaintiffs have standing against the statewide prosecutor and Attorney General. *See* Br. 20. Because entry and reentry "continue until [noncitizens] arrive[] at their destination," *Yanes-Blanco*, 401 So. 3d at 598, they fall within the statewide prosecutor's jurisdiction, *see, e.g.*, *State v. Miller*, 394 So. 3d 164, 169 (Fla. Dist. Ct. App. 2024) (where defendant filled out form in one county that was processed in another county, this "chain of related events" established statewide prosecutor jurisdiction); *see also State v. Nuckolls*, 606 So. 2d 1205, 1207 (Fla. Dist. Ct. App. 1992) (jurisdiction over "any . . . deceit crime").

15

lacked standing to challenge affirmative action policy for transfer students because he sought to apply as a freshman); *Hunter v. Underwood*, 471 U.S. 222, 224–25, 233 (1985) (approving injunction for plaintiff class against class of all county registrars). Rather, "class representative standing" only "requires that the named plaintiff and class members have the same interest and suffer the 'same injury.'" *Fox*, 977 F.3d at 1047.[6]

### B. Plaintiffs May Sue In Equity.

The district court correctly held that Plaintiffs may challenge S.B. 4-C under "the Court's equitable jurisdiction pursuant to *Ex parte Young*." App. 316–17 n.8; *FLIC*, 2025 WL 1625385, at *3. The Supreme Court has confirmed the "traditional power of federal courts of equity" to enjoin preempted laws. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28, 331–32 (2015). And this Court has expressly confirmed the same in the immigration context. *See GLAHR*, 691 F.3d at 1261–62; *Texas*, 144 F.4th at 661–62 (same); *IORC*, 780 F. Supp 3d at 1032–33 (same); *Padres Unidos de Tulsa*, 2025 WL 1573590, at *2–4 (same). Defendants contend that *Armstrong* implicitly abrogated *GLAHR*, *see* Br. 25 n.12, but this Court

---

[6] None of Defendants' cases suggest otherwise. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1200, 1202 (11th Cir. 2021) (no class, sole defendant lacked authority to enforce statute); *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (no class, plaintiffs failed to establish "any concrete link between their injuries and [any of] the defendants' conduct"); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (named plaintiff lacked standing as to challenged policy which did not injure him).

has since reaffirmed *GLAHR* and the continued viability of *Ex parte Young* suits raising preemption claims. *See Newton v. Duke Energy Fla.*, 895 F.3d 1270, 1275–76 (11th Cir. 2018).

Defendants offer three responses, but none has merit.

First, Defendants claim that a suit in equity can only proceed if a plaintiff "come[s] armed with a federal law endowing it with privately enforceable rights" bestowed "in clear and unambiguous" statutory text. Br. 26 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). That is not the law at all. In *Armstrong*, the Court reaffirmed that, as a general matter, federal courts of equity can enjoin unlawful executive action—including violations of the Supremacy Clause by state officials. 575 U.S. at 326–27. It analyzed the availability of a *private cause of action* (and associated claim under 42 U.S.C. § 1983) by looking for such unambiguous "rights-creating language." 575 U.S. at 330 n.*, 331–32 (citing *Gonzaga*); *see Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229 (2025) (claim under § 1983). But *Armstrong* separately examined the availability of an equitable claim, explaining that to foreclose that claim Congress must *act* to "preclude the availability of equitable relief." 575 U.S. at 327–28. Accordingly, courts have repeatedly rejected the argument Defendants press here. *See, e.g.*, *Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 434–35 (5th Cir. 2023) (plaintiffs have "a cause of action . . . at equity" to seek "relief on preemption grounds" even

17

where the relevant federal statute "does not confer a private right") (cleaned up); *Texas*, 144 F.4th at 661–62 (same); *Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8, 22–23 (D.D.C. 2024) (same).

Against this authority, Defendants lean on a single out-of-circuit case, *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), to claim that plaintiffs need a statutory cause of action. Br. 26. But, much like *Armstrong*, *Safe Streets Alliance* explicitly confirmed that a "court may issue an injunction upon finding the state *regulatory actions* preempted," "if an individual claims federal law immunizes him from *state regulation*"—precisely what Plaintiffs claim here. 859 F.3d at 906 n.19; *id.* at 892 n.5. It merely held that the plaintiffs there were not directly regulated. *Id.*; *see Padres Unidos de Tulsa*, 2025 WL 1573590, at *2–3 (distinguishing *Safe Streets Alliance*).[7]

Second, Defendants contend that it is improper for Plaintiffs, as private parties, to press their preemption claims in equity. Br. 24–25 (suggesting relevant interests belong to the federal government). Again, that is wrong. Preemption provides a "federal right to be free from" impermissible state regulation. *Murphy v. NCAA*, 584 U.S. 453, 479 (2018). And the "constitutional structure of our Government" protects everyone in the country, and so everyone "who suffer[s]

---

[7] *Safe Streets Alliance*—which, of course, does not bind this Court—also fundamentally misreads *Armstrong*. *See* 859 F.3d at 914–18 (Hartz, J., concurring).

otherwise justiciable injury" has their own "constitutional interests" to vindicate in asserting such claims. *Bond v. United States*, 564 U.S. 211, 223 (2011); *id.* at 220 (rejecting argument that only states could assert "injury from governmental action taken in excess of the authority that federalism defines"); *cf. Collins v. Yellen*, 594 U.S. 220, 245 (2021) (similar).

Third, Defendants contend that the INA forecloses equitable relief.  Br. 23–26.  But they come nowhere near the robust showing the Supreme Court has required to displace the longstanding availability of equity.

*Armstrong*, for example, found that Congress had precluded such relief only because (1) Congress had created an explicit and exclusive enforcement mechanism, *and* (2) the federal rule in that case was too vague for judicial administration.  *See* 575 U.S. at 326–29.  The Court was clear that both of these conditions were necessary to its holding.  *See* 575 U.S. at 328 (stating that the enforcement scheme "*by itself*" might not preclude equitable relief, "[b]ut it does so when combined with the judicially unadministrable" condition).  "Neither condition" is "satisfied here." *FLIC*, 2025 WL 1625385, at *3; *Farmworker Ass'n of Fla. v. Uthmeier*, --- F. Supp. 3d ----, 2025 WL 775558, at 10–14 & n.6 (S.D. Fla. Mar. 11, 2025) (exhaustively rejecting this argument and collecting cases) (hereinafter "*FWAF*").

Unlike in *Armstrong*, where Congress had provided an explicit remedy for the specific kind of quasi-contractual violation the plaintiff alleged, the INA does not

19

provide any kind of "sole remedy" for state laws that intrude on the federal scheme. App. 316–17 n.8 (quoting *FWAF*, 2025 WL 775558, at *12 (in turn quoting *Armstrong*, 575 U.S. at 328)).  While the statute delegates certain authorities to the Secretary of Homeland Security, *see* 8 U.S.C. § 1103(a)(1), and vests prosecutorial discretion in U.S. Attorneys, *see* 8 U.S.C. § 1329, nothing in these provisions addresses preempted state laws, and nothing suggests that Congress intended to bar equitable actions challenging such schemes.  *See Texas*, 144 F.4th at 662 (noting "the absence of such displacement here").

Nor is the standard invoked here—that federal law displaces conflicting state law—"judicially unadministrable" like the broad, nonspecific standard at issue in *Armstrong*. *See* 575 U.S. at 328.  Instead, Plaintiffs invoke the Supremacy Clause's "rule of decision"—the settled principle that federal law displaces conflicting state law.  *See Murphy*, 584 U.S. at 477, 479; *Armstrong*, 575 U.S. at 324; *FLIC*, 2025 WL 1625385, at *3.[8]

Defendants do not point to any case precluding equitable relief based on the kind of generalized arguments they offer.  In *Seminole Tribe v. Florida*, for example, "Congress ha[d] prescribed a detailed remedial scheme" under the challenged statute

---

[8] Thus, Plaintiffs do not seek to enforce 8 U.S.C. § 1325, § 1326, or any other provision of the INA regulating private conduct.  App. 316–17 n.8; *cf. Israel Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*, 16 F.3d 198, 199 (7th Cir. 1994) (cited by Defendants) (effort to enforce federal anti-boycott statute).

and declared that its remedies were the only ones available.  517 U.S. 44, 74–76

(1996).  By contrast, *Virginia Office for Protection & Advocacy v. Stewart*, on which

Defendants rely, held that *Ex Parte Young* remained available, even though "the

Federal Government c[ould] exercise oversight" over the relevant program "and

even withhold or withdraw funds."  563 U.S. 247, 255, 256 n.3 (2011).

The Supreme Court's high bar makes sense.  Equitable preemption challenges

just like this one have deep roots, *see Armstrong*, 575 U.S. at 327 (noting the "long

history of judicial review of illegal executive action, tracing back to England"), and

are a mainstay of federal courts' vital role policing the federal-state boundaries so

central to our constitutional structure, *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85,

96 n.14 (1983); *GLAHR*, 691 F.3d at 1260–62.  If it were enough, as Florida

suggests, to merely point to general agency authorities and marginally related

enforcement regimes, Br. 23–24, then *Armstrong*'s exception would swallow the

rule, leaving states free to flout federal law at will.[9]

---

[9] Defendants' argument that the organizational plaintiffs cannot sue in equity
misses the point.  Br. 26–27.  They are representatives (alongside the individual
plaintiffs) of a class of individuals threatened with enforcement; even the
dissenting opinion in *Texas*, on which Defendants rely, acknowledges that such
individuals may invoke equity.  97 F.4th at 309–10 (Oldham, J., dissenting).  In
any event, Defendants' argument fails on its own terms.  *See Texas*, 144 F.4th at
660 (rejecting argument); *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 774
(11th Cir. 2020) (membership organization satisfied *Ex parte Young*).

## II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

The district court and the motions panel correctly concluded that S.B. 4-C is likely preempted.  App. 318–30; *FLIC*, 2025 WL 1625385, at *3.  In reaching that conclusion, both joined the unanimous judgment of every other court to have considered other such laws.  *See* App. 325 (collecting cases).  And the Supreme Court recently denied Defendants' stay application, with no noted dissents.  *See Uthmeier*, 2025 WL 1890573, at *1.

### A. S.B. 4-C Is Field Preempted.

1.  Courts may infer field preemption from either a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'"  *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  When it comes to entry, both tests are satisfied.

This Court has already recognized "an overwhelmingly dominant federal interest" in the field of "*entry*, movement, and residence of [noncitizens] within the United States."  *GLAHR*, 691 F.3d at 1264 (emphasis added).  That interest is rooted in settled precedent: "For nearly 150 years, the Supreme Court has recognized that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power."  *Texas*, 144 F.4th at 667 & n.267

(collecting cases); App. 320 (same); *see Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of [noncitizens] and their right to remain here are entrusted exclusively to Congress."); *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982) (cited by Defendants) ("the State has no direct interest in controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government").

Consistent with this dominant federal interest, "Congress has legislated so comprehensively in the field of [noncitizen] entry . . . that it left no room for supplementary state legislation." *Texas*, 144 F.4th at 677 (cleaned up). This Court has likewise recognized "[t]he comprehensive nature" of "federal statutes criminalizing the acts undertaken by [noncitizens] and those who assist them in coming to, or remaining within, the United States." *GLAHR*, 691 F.3d at 1264; *see Arizona*, 567 U.S. at 395, 397 (addressing the "pervasiveness" of the "extensive and complex" immigration regulation system).

Indeed, the INA's "'central concern' is the 'entry and stay of [noncitizens]' in the United States." *Texas*, 144 F.4th at 668 & n.279 (citing *DeCanas v. Bica*, 424 U.S. 351, 359 (1976)). It contains detailed rules governing who may enter the country. *See, e.g.*, 8 U.S.C. §§ 1153, 1184. For those who enter without authorization, Congress has established a comprehensive set of enforcement mechanisms: It has criminalized entry and reentry between ports of entry, 8 U.S.C. §§ 1325, 1326, as well as efforts to assist or facilitate entry between ports, 8 U.S.C.

23

§§ 1323, 1324, 1327, 1328, 1329.  Congress has also provided a detailed set of standards and procedures for when individuals who enter without inspection may be arrested and detained by federal officials. *See, e.g.*, 8 U.S.C. §§ 1225(b), 1226(a)–(c), 1182(d)(5)(A).  Congress has also provided defenses to removal available regardless of irregular entry—many of which may lead to permanent immigration status and even citizenship. *See* 8 U.S.C. §§ 1158, 1231(b)(3), 1101(a)(15)(U), (T).

Broad discretion is "[a] principal feature" of the immigration system, and absolutely central to Congress's scheme, which allows federal immigration officials to determine whether enforcement best serves national interests. *Arizona*, 567 U.S. at 396; *see Iowa*, 126 F.4th at 1347 (collecting cases); *Texas*, 144 F.4th at 671 ("The broadest exercise of this discretion is the Executive's decision not to pursue either civilly or criminally the very [noncitizens] whom the [State] legislature has drawn a bead upon in enacting new state laws.").  Federal prosecutors and immigration officials are empowered to deploy or forgo criminal charges or civil proceedings to ameliorate the potential harshness of the immigration laws. *See Arizona*, 567 U.S. at 396, 402, 409; *Texas*, 599 U.S. at 679.  And their discretion "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives.'" *Texas*, 599 U.S. at 679 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490–91 (1999)).

24

For all the reasons the Supreme Court held a state noncitizen registration statute field preempted in *Arizona*, Florida's state noncitizen entry law must also fall. Indeed, if laws like S.B. 4-C "were valid, every State could give itself independent authority to prosecute federal [entry] violations, diminishing the Federal Government's control over enforcement[,] . . . detracting from the integrated scheme of regulation created by Congress," and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402 (cleaned up). That risk is not hypothetical. Six states have enacted their own entry laws like S.B. 4-C, and eighteen states have submitted an amicus brief in this case, underscoring that Florida's position would lead to an unmanageable patchwork of varying state regulations of immigration. *See* Dkt. No. 37.

2. Perhaps recognizing the Supreme Court's 150-year-old rule governing the case, Defendants attempt to recast S.B. 4-C as regulating only "[noncitizen] movement" within the country. Br. 14, 30–31. That hardly helps: This Court has also recognized a dominant federal interest in the "*movement*" of noncitizens "within the United States." *GLAHR*, 691 F.3d at 1264 (emphasis added). In any event, that framing ignores the statute's plain text. S.B. 4-C targets noncitizens who have "enter[ed] the United States" unlawfully and offers an affirmative defense if the person's "entry into the United States did not constitute a violation of 8 U.S.C. [§]

25

1325(a)."  Fla. Stat. § 811.102(1), 4(c).  Its reentry crime, like 8 U.S.C. § 1326, criminalizes persons present in Florida after a prior deportation, unless they obtained federal permission to return while still "outside the United States."  Fla. Stat. § 811.103(1).  These provisions do not merely touch upon immigration—they directly penalize unauthorized entry (and reentry) *into the United States*.  *See* Dkt. No. 36 at 16 n.3 (United States noting that the "in-state nexus" elements of S.B. 4-C are peripheral).  And S.B. 4-C's purpose is unmistakable.  *See* S.B. 4-C ("An act relating to immigration").  As Defendants openly acknowledge, S.B. 4-C seeks to "decrease illegal border crossings."  Br. 37–38; *see GLAHR*, 691 F.3d at 1265 n.11 (rejecting argument that state statute was "wholly removed from the federal immigration scheme," noting that its provisions were "modeled after" federal law and pointing to its immigration-related title); *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308–09 (1988) (cited by Defendants) (rejecting "state law whose central purpose is to regulate matters that Congress" reserved for federal government).

Nor is it a defense that S.B. 4-C "tracks" federal law.  Br. 4.  In a preempted field like this, states may not legislate even if they have "the same aim as federal law and adopt[] its substantive standards."  *Arizona*, 567 U.S. at 402.  It is the "basic premise of field preemption" that "States may not enter, in any respect, an area the Federal Government has reserved for itself."  *Id.*; *see Texas*, 144 F.4th at 675 (same).  In any event, the premise is untrue: "S.B. 4-C requires mandatory prison sentences

26

for state law violations where the INA allows for a fine or probation for the equivalent federal crime." App. 327–28; *compare* Fla. Stat. § 811.102(1) (mandatory *minimum* of nine months), *with* 8 U.S.C. § 1325(a) (*maximum* sentence of six months). Those "inconsistenc[ies] . . . with respect to penalties" further "underscore the reason for field preemption." *Arizona*, 567 U.S. at 402–03.

Indeed, the district court's holding follows directly from *Arizona.* Defendants disagree, suggesting that federal entry provisions are "less detailed" than noncitizen registration and implicate no "unique federal interests." Br. 30; *see* Dkt. No. 36. But federal regulation of entry is at least as comprehensive—if not more so—than the registration regime at issue in *Arizona*. *See Texas*, 144 F.4th at 669 ("Congress established a comprehensive framework to identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter unlawfully.") (footnotes omitted). And the federal government's power "to forbid the entrance of foreigners" is, if anything, even more uniquely federal, as it is "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893); *Arizona*, 567 U.S. at 394–95.

Defendants also mischaracterize *Arizona*'s registration holding as applying only to "law-abiding" noncitizens. Br. 31. This gets it backwards: As the district court pointed out, the statute at issue in *Arizona* applied *only* to people who were not

27

lawfully present in the country.  App. 323–24.  And regardless, S.B. 4-C has already swept up "law-abiding" individuals—including, notably, a U.S. citizen.  *See* App. 293–94.

Unable to meaningfully address *Arizona*, Defendants rely heavily on *Kansas v. Garcia*, 589 U.S. 191 (2020) to contest field preemption.  Br. 29–30.  But *Garcia* is inapposite.  There, Kansas prosecuted noncitizens under a generally applicable state identity theft statute for using fraudulent social security numbers on state tax withholding forms.  589 U.S. at 195, 198–99.  The noncitizens sought to rely on the fact that, "upon beginning a new job," tax withholding is typically conducted alongside employment verification—the latter of which is related to the overall immigration system.  *Id.* at 197, 208–09.  The Supreme Court considered various formulations of the proposed field, ultimately rejecting all of them on essentially the same grounds: "The submission of tax[-]withholding forms is *fundamentally unrelated* to the federal employment verification system."  *Id.* at 208.  Here, S.B. 4-C addresses entry into the United States—which, unlike regulation of employment, is an arena from which states are excluded, *see DeCanas*, 424 U.S. at 354–55—and the statute does this by directly referring to entry into the United States in the definition of its crimes, unlike the glancing relevance of state tax withholding to immigration matters in *Garcia*.  *See* App. 328 n.15 (rejecting Defendants' reliance

28

on *Garcia*); *Texas*, 144 F.4th at 685 (same); *Iowa*, 126 F.4th at 1348 (same); *Padres Unidos de Tulsa*, 2025 WL 1573590, at *6 (same).

Finally, Defendants invoke a presumption against preemption.  Br. 28, 32.  But this Court has already held that no "presumption against preemption applies" to an "attempt to regulate immigration."  *Alabama*, 691 F.3d at 1296; *see Lozano v. City of Hazleton*, 724 F.3d 297, 314 n.23 (3d Cir. 2013) (similar); *United States v. Locke*, 529 U.S. 89, 108 (2000) ("an 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence").  For over a century, Congress has engaged in systematic regulation of immigration, culminating in the "pervasive[]," "extensive[,] and complex" system currently in place.  *Arizona*, 567 U.S. at 395, 397; *see Iowa*, 126 F.4th at 1345.  Over the same period, the Supreme Court has repeatedly held that entry is the exclusive prerogative of the federal government.  *Texas*, 97 F.4th at 278–79 & n.64 (collecting cases).[10]  No presumption against preemption applies.

---

[10] Suggesting otherwise, Defendants cite *Mayor of City of New York v. Miln*, 36 U.S. 102 (1837).  Br. 4, 32.  But *Miln* was severely limited in *Henderson v. Mayor of City of New York*, 92 U.S. 259, 269-70 (1875), which, along with its companion case *Chy Lung*, 92 U.S. 275, rejected state regulation of immigration.  Defendants also point to certain state laws that predate the modern federal immigration framework.  But given Congress's exhaustive legislation, the question whether state immigration laws would be preempted even *without* such legislation is today largely academic.  *See Iowa*, 126 F.4th at 1345 (noting question); *but see DeCanas*, 424 U.S. at 355–56 ("Congress itself would be powerless to authorize or approve" "a constitutionally proscribed [state] regulation of immigration.").

29

## B. S.B. 4-C Is Conflict Preempted.

The district court also correctly held that S.B. 4-C is conflict preempted.  App. 326–29.  The statute authorizes unilateral state action, strips away federal discretion, and creates inconsistencies with federal law.  By creating new state crimes that overlay and expand upon federal illegal entry and reentry provisions—and by empowering Florida officials to arrest, detain, and prosecute individuals under those laws—Florida has assumed a role in enforcing federal immigration law that Congress has not assigned to it.  *See Arizona*, 567 U.S. at 409–10.

This intrusion undermines the "broad discretion" Congress entrusted to federal immigration officials.  *See id.* at 396; *Texas*, 97 F.4th at 291.  As already explained, federal immigration officials may choose among various tools for responding to unlawful entry, including criminal prosecution under 8 U.S.C. § 1325 and § 1326, civil removal proceedings, and discretionary forms of relief.  *Arizona*, 567 U.S. at 395–96.  But Congress made clear that those choices must remain federal.  *See id.* at 400 ("[T]he removal process is entrusted to the discretion of the Federal Government."); *see Texas*, 599 U.S. at 679.  S.B. 4-C strips away that discretion.  It empowers Florida to unilaterally initiate prosecutions "against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate

federal policies." *Arizona*, 567 U.S. at 402; *see Texas*, 144 F.4th at 681; *GLAHR*, 691 F.3d at 1265.[11]

Defendants contend that conflict preemption here "would extend to any state law that overlapped with federal law." Br. 34 (citing *Garcia*, 589 U.S. at 212). But the INA implicates uniquely weighty federal interests that arise in the context of entry and reentry. *See Texas*, 144 F.4th at 685 (rejecting reliance on *Garcia*); *Iowa*, 126 F.4th at 1348–49 (same). Federal officials may need to balance multiple competing priorities, foreign relations, humanitarian considerations, and practical resource constraints. *Arizona*, 567 U.S. at 396–97, 408 (citing these issues as reasons why unilateral state action is preempted). These decisions involve "significant complexities" in determining a noncitizen's immigration status and the federal government's interests, but S.B. 4-C "runs roughshod over them." *Texas*, 144 F.4th at 685–86 (citing *Arizona*, 567 U.S. at 409). Thus, S.B. 4-C does not merely "overlap to some degree" with federal law. *Garcia*, 589 U.S. at 211. Instead, it asserts state control in lieu of Congress's "considered decision" to balance various

---

[11] Defendants seek to limit *GLAHR*'s conflict analysis by pointing to certain features of the statutes at issue in that case. Br. 35–36. But the part of the opinion they cite is about field preemption (and, for the reasons explained above, regulation of entry is even more comprehensive than that addressed by *GLAHR*). In also finding conflict preemption, *GLAHR* emphasized the statutory role of federal discretion, concerns, and priorities; the dilution of federal authority in an area of "federal primacy"; and "inconsistency" between state and federal law. 691 F.3d at 1265–67. All of that is in line with *Texas, Iowa*, and every other court to have found entry laws conflict preempted.

interests by placing discretion in the hands of federal officials. *Id.*; *see Texas*, 144 F.4th at 685 ("Our discussion above identifies the many ways in which S. B. 4 conflicts with a variety of different statutes.").  "Nothing similar" was present in *Garcia*.  589 U.S. at 211.

Defendants also attempt to distinguish *Arizona* by arguing that S.B. 4-C "is unrelated to whether [a noncitizen] should be removed from the country."  Br. 35. But *Arizona*'s throughline is that federal law does not allow "unilateral state action" in immigration enforcement.  *Arizona*, 567 U.S. at 410.  States cannot independently arrest, detain, and prosecute individuals for alleged violations of immigration law "without any input from the Federal Government."  *Id.* at 408; *see GLAHR*, 691 F.3d at 1265.  Indeed, *Arizona*'s holding on Section 3—the provision criminalizing failure to register—did not involve removal at all.  567 U.S. at 401–02.  Instead, the Supreme Court explained that allowing states the "independent authority to prosecute" registration violations would "diminish[] the Federal Government's control over enforcement" and "frustrate federal policies."  *Id.* at 401–02 (cleaned up).  Likewise, Section 6—authorizing state immigration arrests—was conflict preempted because it allowed "unilateral state action" that usurped the federal government's ability to exercise discretion.  *Id.* at 407–10.  Notably, as with S.B. 4-C, removability would be determined and effectuated by federal agents, *see id.* at 457 (Alito, J., dissenting in part), but the Supreme Court still rejected this asserted

32

state authority "to achieve its own immigration policy," *id.* at 408; *see id.* at 413 (explaining that "it would disrupt the federal framework" to allow state detention "for possible unlawful presence without federal direction and supervision," but upholding provision because it could be read to merely authorize communication with federal authorities); *Texas*, 144 F.4th at 683 ("Even setting aside S. B. 4's removal consequence, the remaining provisions nevertheless conflict with federal law.").

Defendants also invoke Section 287(g) agreements to argue that S.B. 4-C cannot conflict with federal enforcement discretion. Br. 34–35. But that too misses the point. Section 287(g) agreements allow state officers to assist in enforcement of *federal* immigration law, by performing specified immigration "functions" subject to the Department of Homeland Security's ("DHS") "direction and supervision." 8 U.S.C. § 1357(g)(5), (g)(3); *see GLAHR*, 691 F.3d at 1265; Dkt. No. 36 at 14 (federal government confirming that such agreements "allow for state or local officials to step into the shoes of a *federal* immigration officer to enforce *federal* law"). The statute "is not a grant of authority to a state to enact a statute making it a state crime to be unlawfully present." *Texas*, 144 F.4th at 683; *see Arizona*, 567 U.S. at 408 (relying on 8 U.S.C. § 1357(g)(1) to conclude that Congress did not allow a "State to achieve its own immigration policy").

\*      \*      \*

33

Defendants suggest that a facial challenge fails because there may be hypothetical valid applications of the statute. Br. 5, 28, 33–36 (citing *United States v. Salerno*, 481 U.S. 739 (1987)). But they have identified no valid applications, and there are none. "Of course, if a law intrudes on a field occupied by Congress, every application of that law is preempted." *Texas*, 144 F.4th at 663. And in *every* case S.B. 4-C removes federal discretion and control, disrupting Congress's design. *See id.* at 664 (finding "no non-preempted applications of" entry and reentry law). Even if Defendants could hypothesize a valid application—which they certainly have not done—*Arizona* found facial preemption despite just such arguments. *See id.* at 663 n.234 (citing *Arizona*, 567 U.S. at 408-10); *Alabama*, 691 F.3d at 1301 (same); *see Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256–57 (11th Cir. 2022) (rejecting *Salerno*'s application to facial preemption challenge).[12]

---

[12] It does not matter whether particular federal officers might "support[]" Florida's state-law arrests and prosecutions. Br. 35. Nor does it matter that the Department of Justice has filed an amicus supporting Defendants. Dkt. No. 36. "[T]he purpose of *Congress* is the ultimate touchstone in every pre-emption case.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (emphasis added). And the "views" of "an Executive Branch agency" do not control the meaning of Congress's statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). That is particularly so because the amicus is an abrupt reversal from the position the Department took just last year—a fact it neither acknowledges nor explains. *See id.* at 386 ("respect" for "consistent" views); Appl. to Vacate, *United States v. Texas*, No. 23A814. Accordingly, the Supreme Court has held state laws preempted even when a given administration believes they are not. *See, e.g.*, *Zschernig v. Miller*, 389 U.S. 429, 434 (1968); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551, 546–47 (2001); *cf. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S.

**C. S.B. 4-C Violates the Dormant Commerce Clause.**

Finally, the district court correctly held that S.B. 4-C also violates the Commerce Clause.  App. 329–30.  That constitutional doctrine prohibits a State "from retreating into . . . economic isolation" by enacting laws that discriminate against or unduly burden interstate commerce, *Dep't of Revenue v. Davis*, 553 U.S. 328, 338 (2008)—which includes the movement of persons, *United States v. Guest*, 383 U.S. 745, 758–59 (1966).  "The clearest example of [discriminatory] legislation is a law that overtly blocks the flow of interstate commerce at a State's borders." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935) (holding that states cannot "set a barrier to traffic between one state and another").  Accordingly, *Edwards v. California* invalidated a law purporting to close that State's borders to certain indigent people. 314 U.S. at 173.  S.B. 4-C fails for the same reasons.

Defendants try to escape *Edwards* by noting that the statute at issue there applied only to "non-residents."  Br. 37.  But nothing in the Supreme Court's holding turned on that distinction.  *See Edwards*, 314 U.S. at 173.  Rather, the Court emphasized that a State may not "isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders."

---

477, 497 (2010) ("the separation of powers does not depend on the views of individual Presidents").

*Id.*; *see Philadelphia*, 437 U.S. at 627 (describing *Edwards* as rejecting such isolationist measures).  Florida concedes it is seeking to do just that.  *Compare Edwards*, 314 U.S. at 173 (citing purported "problems of health, morals, and especially finance"), *with* Br. 36 (seeking to "prevent the many problems (social, moral, and criminal)" purportedly caused by immigration).[13]

### III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN WEIGHING THE EQUITIES.

Defendants barely address the equities—and for good reason.  Br. 37–38.  The district court correctly found that Plaintiffs would "suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under an unconstitutional state statute."  App. 330–31.  That risk is not theoretical: Dozens were arrested under S.B. 4-C despite the court's injunction.  *Id.* at 331.[14]  This included a U.S. citizen who was arrested by the Florida Highway Patrol under S.B. 4-C, despite presenting valid identification.  App. 293–94, 331.

By contrast, Florida suffers no comparable harm from being unable to enforce a preempted statute.  *See Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing

---

[13] Contrary to Defendants' suggestion, Br. 37, Congress has not prohibited interstate migration.

[14] *See* Hannah Critchfield & Ashley Borja, *A Judge Blocked Florida's Immigration Law. Police Arrested 25 Anyway*, Tampa Bay Times (May 28, 2025), https://perma.cc/6YWT-LPZN.

36

an unconstitutional law."); *Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation."); *Pub. Util. Comm'n v. United Fuel Gas Co.*, 317 U.S. 456, 469 (1943) (finding that preempted state action injures "the public interest").

Defendants' professed interest in addressing a "crisis" falls flat. Br. 6–7, 37–38. "Federal officials of course already enforce immigration law—and many Florida law-enforcement agencies have entered into agreements with [DHS] that allow local police to enforce federal immigration law." *FLIC*, 2025 WL 1625385, at *6; *see* Br. 23.[15] Defendants fail to explain why an independent state immigration scheme is necessary.[16]

Nor does Defendants' invocation of public safety help them. Florida retains full authority to prosecute crimes and drug trafficking under non-immigration laws.[17] The injunction does not touch that power. To the contrary, Florida's

---

[15] Cheryl McCloud, *Florida Leads US in Local Law Enforcement Agencies Partnering with ICE. Check Your County*, Tallahassee Democrat (June 17, 2025), https://perma.cc/TW3C-H5QT.

[16] Notably, its statistics (at Br. 6) are also out of date. *See* Camilo Montoya-Galvez, *Migrant Crossings at U.S.-Mexico Border Stay at Historically Low Levels 3 Months Into Trump Crackdown*, CBS News (May 1, 2025), https://perma.cc/GT6A-A3US.

[17] While Defendants cite fentanyl concerns, Br. 7, 37–38, the U.S. government confirms that fentanyl is overwhelmingly smuggled at ports of entry by U.S. citizens, not between ports by migrants—so S.B. 4-C is irrelevant to these problems. *See* U.S. Customs & Border Prot., *Frontline Against Fentanyl* (last modified May 22, 2025), https://perma.cc/4NAU-9GSY ("More than 90% of interdicted fentanyl is

37

preempted state immigration scheme will harm public safety by eroding community trust in law enforcement. *See United States v. Texas*, 719 F. Supp. 3d 640, 698 (W.D. Tex. 2024) ("Because [Texas] SB 4 authorizes state police officers to arrest many unauthorized noncitizens, victims of abuse or human trafficking will risk arrest and removal if they report their crimes," making "noncitizen crime victims less likely to report violent crimes.").

Defendants' financial "strains," Br. 6–7, are equally unavailing. The asserted "strains" largely reflect the costs of education and congressionally approved health and nutrition benefits for *U.S.-citizen* children.[18] Providing public education and federally mandated services to U.S. citizens are not cognizable harms. Indeed, the Supreme Court has held that states' efforts to tie immigration enforcement to the cost of providing "healthcare and education to *noncitizens*" was too "attenuated" to support standing—so it follows such outlays for *citizens* could not be used to establish irreparable harm to Florida. *Texas*, 599 U.S. at 674, 680 n.3 (emphasis added).

---

stopped at Ports of Entry (POEs), where cartels attempt to smuggle it primarily in vehicles driven by U.S. citizens."). More generally, immigrant communities have consistently lower violent and drug crime rates than others. *See, e.g.*, Nat'l Inst. of Just., Dep't of Just., *Undocumented Immigrant Offending Rate Lower Than U.S.-Born Citizen Rate* (Sept. 12, 2024), https://perma.cc/GRD7-K7WE.

[18] The fiscal cost estimates that Defendants cite in their brief, Br. 7 n.5, "include[] costs incurred by the minor, U.S.-born children of illegal aliens." Fed'n for Am. Immigr. Reform, *The Fiscal Burden of Illegal Immigration on United States Taxpayers 2023*, at 5 (2023), https://perma.cc/4PX8-J9N4.

Defendants contend that Plaintiffs have "unclean hands" because they seek to "protect illegal conduct such as driving without a license [and] working without authorization."  Br. 38; *see id*. at 19–20 (overlapping standing arguments).[19]  That is meritless for several reasons.

First, the unclean-hands defense "should not be applied in a way that will frustrate the purpose of a federal statute."  *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 864 (5th Cir. 1979); *see McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995) (defense inappropriate "where a private suit serves important public purposes") (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968)).[20]  Its use here would embolden states to flout federal supremacy, frustrating Congress's scheme.  *See, e.g.*, *Lozano v. City of Hazleton*, 620 F.3d 170, 193–94 (3d Cir. 2010) (rejecting unclean hands argument in preemption case), *cert. granted and vacated on other grounds*, 563 U.S. 1030 (2011); *IORC*, 780 F. Supp. 3d at 1037–39 (same).  The Court may reject it on that ground alone.

---

[19] Defendants also claim that Plaintiffs seek to "avoid[] detection for criminal illegal entry."  Br. 38.  But the relief here bars enforcement of a preempted state law, not "detection."  Nothing in the injunction renders Plaintiffs immune from detection or prosecution under federal law.

[20] *Mitchell Brothers* is circuit precedent.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Second, the record does not support Defendants' arguments. Plaintiffs' declarations do not say anything about driving or employment without authorization. While V.V. does refer to "work" outside of Florida, federal law prohibits *employment*, leaving other forms of work unregulated. *See Club Madonna*, 42 F.4th at 1254 (explaining that federal law exempts independent contractors and casual hires). So the argument also fails as a factual matter. *See Farmworker Ass'n of Fla. v. Moody*, 734 F. Supp. 3d 1311, 1343 (S.D. Fla. 2024) (rejecting similar argument on this ground).

Third, that problem aside, Defendants fail to establish the elements of this defense: (1) an "unconscionable act," (2) with "immediate and necessary relation to" the claim (3) that "affect[s] the equitable relations between the parties." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Defendants have not shown that "driving without a license or working without authorization" "comes anywhere near constituting an 'unconscionable act.'" *Moody*, 734 F. Supp. 3d at 1343. They have not shown that any illegal conduct Plaintiffs have engaged in is "directly related" to the claim before the court, *Mitchell Bros.*, 604 F.2d at 863— indeed, they concede the alleged misconduct is "unrelated to the law [Plaintiffs] challenge here," Br. 16. And Defendants have not shown that anything has personally injured them. *See Transcon. Gas Pipe Line Co. v. 6.04 Acres*, 910 F.3d 1130, 1168 (11th Cir. 2018) (requiring that misconduct reflect an "unconscientious

or inequitable attitude" toward the defendant); *IORC*, 780 F. Supp. 3d at 1038–39 (rejecting doctrine on this basis).

Indeed, if any party has unclean hands, it is Attorney General *Uthmeier*. *See FLIC*, 2025 WL 1625385, at *6 (citing his "seemingly defiant posture vis-à-vis the district court"). Rather than "act[] in full accordance with court orders," Br. 50, Attorney General Uthmeier invited police agencies to disobey the court's directive, App. 272. The motions panel correctly found that this "veiled threat not to obey" weighs against him. *FLIC*, 2025 WL 1625385, at *6; *see Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) (court orders "must be obeyed" until stayed or reversed).

## IV. THE DISTRICT COURT PROPERLY ENJOINED LAW-ENFORCEMENT OFFICERS.

The district court properly applied its injunction not only to all prosecutors statewide—who are parties to this case—but also to all Florida law-enforcement officers who enforce S.B. 4-C. App. 341–51. That was no abuse of discretion. As the motions panel recognized, restraining "the various officials who might be a part of the enforcement effort" was "sensible": "Otherwise, the efficacy of the district court's order would be thwarted." *FLIC*, 2025 WL 1625385, at *4. And, in any event, Defendants lack standing to challenge the injunction of nonparties. *Id*. at *5.

1. Federal Rule of Civil Procedure 65(d)(2) authorizes courts to bind not only "parties" and their "agents," but also "other persons who are in active concert or

41

participation with" them.  Under an ordinary and commonsense understanding of the term "active concert or participation," police officers making an arrest for a crime act in concert and participation with prosecutors who will charge that crime.  *See Van Buren v. United States*, 593 U.S. 374, 381 (2021) (Court begins "with the text"); *see also, e.g.*, *Jeffers v. United States*, 432 U.S. 137, 149 (1977) (common law meaning of "concert" is "agreement in a design or plan"); *Participate*, Black's Law Dictionary (3d ed. 1933) ("To receive or have a part or share of . . . To take a part in").  At a minimum, the district court's conclusion in this regard was not an abuse of discretion.

Defendants do not engage with Rule 65's text, but instead argue that "active concert or participation" means only "privity" or "aiding and abetting," and then offer narrow glosses on those terms to exclude police officers from the Rule's scope. Br. 44–49.  But courts may no more rewrite the Rules than federal statutes.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[c]ourts are not free to amend a rule outside the process Congress ordered").

Unable to succeed under the text of Rule 65, Defendants instead invoke this Court's decisions in *United States v. Robinson*, 83 F.4th 868 (11th Cir. 2023) and *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir. 2017).  Br. 39. But neither says that Rule 65's text is limited to privity or aiding and abetting.  *See Robinson*, 83 F.4th at 878–80 (noting that "we generally stick to the limitations of

42

the text," emphasizing that the Rule does not limit the court's traditional equity powers, and citing dictionaries to interpret a term in Rule 65(d)); *ADT*, 853 F.3d at 1ad352 (addressing what the Rule covers "[b]roadly speaking," but focusing exclusively on privity). And in other contexts, this Court has taken a pragmatic approach to Rule 65(d). *See United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972) (injunction of nonparty was proper where "the district court had, in effect, adjudicated the rights of the entire community"); *see supra* n.20.

More fundamentally, unlike this case, both *Robinson* and *ADT*—which involved contempt proceedings after the fact—addressed injunctions applying only to private parties. *Robinson*, 83 F.4th at 873 (addressing "how far an injunction of a *private corporation* can reach") (emphasis added); *ADT*, 853 F.3d at 1350 (similar); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (similar). This Court has emphasized that such private parties have their own due process rights to a "day in court" to contest an injunction. *Robinson*, 83 F.4th at 879, 884; *ADT*, 853 F.3d at 1352, 1354–55; Br. 43–44, 46 n.17.

But the Supreme Court has made clear that a suit for injunctive relief like this one "is not a suit against the official but rather . . . against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("The real party in interest is the government entity, not the named official."). Indeed, Defendants' arguments invoke "Florida's interest," Br. 37–38—

43

not any *individual* interest—and the State is obviously getting its day in court in this case.  In any event, the State has no constitutional right to due process.  *See South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966).  Because the State is already before the court, its law-enforcement officers' interests are fully represented.  The police officers have no independent personal interest in making arrests—only the shared state interest in defending and enforcing S.B. 4-C.[21]

Accordingly, courts have routinely held that nonparty state and local officers may be enjoined from enforcing state criminal laws.  *See, e.g.*, *ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999); *Rhode v. Bonta*, 713 F. Supp. 3d 865, 888 (S.D. Cal. 2024); *Doe #1 v. Lee*, No. 16-cv-2862, 2021 WL 1264433, at *2 n.1 (M.D. Tenn. Apr. 5, 2021); *Doe v. Harris*, No. C12-5713, 2012 WL 6101870, at *2 (N.D. Cal. Nov. 7, 2012); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 163 (S.D.N.Y. 1997); *Am. Booksellers Ass'n, Inc. v. Webb*, 590 F. Supp. 677, 693 (N.D. Ga. 1984); *see also, e.g.*, *Junior Sports Mags. Inc. v. Bonta*, No. 24-4050, 2025 WL 1863184, at *3 (9th Cir. July 7, 2025) (unpublished) (deeming it not "necessary" to expressly extend injunction to county and city attorneys statewide because injunction already

---

[21] Defendants seek to muddy the waters by pointing out that under *Ex parte Young* suits against state officials are different than suits against the State.  Br. 49.  But *Ex parte Young* doctrine is about State sovereign immunity, not any given officer's purported due process rights.  Moreover, this Court has acknowledged that the *Ex parte Young* doctrine is "a legal 'fiction' because it creates an imaginary distinction between the state and its officers."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999).

contained language of Rule 65(d)(2), but suggesting a showing of "improper enforcement of this statute by local officials or localities" might lead to a different result).

For example, in *Johnson*, a suit against a governor and state attorney general, nonparty district attorneys challenged their inclusion in an injunction, urging that they "received no notice of, nor have they participated in, this action." 194 F.3d at 1163. The Tenth Circuit rejected that argument, noting that "[t]his action is a facial challenge to a New Mexico statute, brought against the governor and attorney general of New Mexico in their official capacities," and thus "is an action against the State of New Mexico." *Id.* So too, here. *See Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 909 n.9 (S.D. Ind. 2020) ("The Court finds that all law-enforcement agencies and prosecutors in Indiana are acting in concert with the parties in the enforcement of [the invalid statute]"); *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 929–30 (S.D. Cal. 2020) (finding nonparty governmental agency worked in active concert and participation with named governmental defendants based on "role and function of [agency] in enforcing immigration regulations").

To be sure, individual officers would have an interest where their personal liability is at stake—as in the individual-capacity damages actions on which Defendants rely. Br. 46 n.17 (citing *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir.

45

1985) and other similar section 1983 damages cases); *see* App. 349 n.31.   And

likewise, an individual officer might have her own interest in contesting the scope

of an unclear injunction *ex post*—as she might face personal contempt sanctions for

conduct she did not know to be enjoined.   But here, the district court went out of its

way to accommodate this concern.   It did not initiate any contempt proceedings when

officers made arrests after the initial TRO (which had included general language

drawn from Rule 65(d)(2)).   Instead, it expressly clarified that the injunction would

run against all Florida law-enforcement officers and directed Defendants to provide

notice to them.   App. 213:17–214:14.   Simply put, there is no due process or

equitable problem with requiring police officers to abide by this order.

　　*Jacobson v. Florida Secretary of State,* 974 F.3d 1236 (11th Cir. 2020), on

which Defendants rely, Br. 42–43, 48–49, supports this conclusion.   That case held

that, unlike here, the plaintiffs lacked standing to sue the named defendant.   *See*

*Jacobson*, 974 F.3d at 1269.   But in the context of an injunction against nonparty

county elections supervisors statewide, the court confirmed that "a district court may

bind nonparties 'who are in active concert' with a defendant" so long as "a plaintiff

validly invokes federal jurisdiction by" establishing "standing against a defendant."

*Id.* at 1255.[22]

---

[22] The other standing cases Defendants cite (at 41, 43, 49) are inapposite as they did
not address Rule 65.   *See Support Working Animals, Inc.*, 8 F.4th at 1198; *City of S.*
*Mia. v. Governor*, 65 F.4th 631 (11th Cir. 2023).

That plain-text approach—"active concert"—makes particular sense here. Arrests under S.B. 4-C are the first step in any prosecution, so plainly police are acting in concert and participation with prosecutors. *See Terry v. Ohio*, 392 U.S. 1, 26 (1968) ("An arrest is the initial stage of a criminal prosecution."). Defendants suggest that officers may sometimes "take action" for purposes unrelated to prosecution. Br. 48 (citing *Terry*). But in the passage they cite, *Terry* referred to *encounters*—not arrests—and offered examples like escorting an intoxicated person home "with no intention of arresting" the individual or mediating a domestic dispute. 392 U.S. at 13 & n.9. By contrast, the only thing that could possibly justify an *arrest* for a violation of S.B. 4-C is future *prosecution* under S.B. 4-C. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (seizure must be assessed by reference to its "'mission'"); App. 351 ("when [the] purposes [of an arrest] are spent, further seizure is unreasonable").[23] The district court was thus quite right to point to the grave constitutional problems created by Defendants' position: "To posit, as Defendants do, that law enforcement may arrest individuals for conduct they know has no current legal basis to sustain criminal charges, is to upend Fourth Amendment jurisprudence in its entirety." App. 351.

---

[23] Defendants hypothesize that an officer might arrest for domestic violence even "knowing" the victim will decline to press charges. Br. 48. But such prosecutions can proceed even "over the objection of the victim." Fla. Stat. § 741.2901(2). And there is a world of difference between an officer's guess that a prosecution will be dropped, and a court order categorically prohibiting any such prosecution.

Moreover, Defendants' atextual position would defeat the purpose of the relevant language. Rule 65 codified longstanding equitable principles designed to ensure effective relief. *See Regal Knitwear*, 324 U.S. at 14. In particular, Rule 65's inclusion of persons acting in "active concert or participation" prevents parties from nullifying injunctions by working through others. *Id.* Without the district court's Rule 65(d)(2) order, law-enforcement officers could simply continue arresting under S.B. 4-C while insisting that prosecutors were keeping their hands clean. *See FLIC*, 2025 WL 1625385, at *4 ("[T]he efficacy of the district court's order would be thwarted."). The injunction is thus not a departure from equity, but rather an appropriate application of longstanding and flexible principles. *See Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 179–81 (1973) (looking to "the public policies of the [relevant] Act" and practical fairness, not formalities). By contrast, Defendants' position is that even a certified statewide class suing every prosecutor's office cannot obtain full protection—it must also name each and every one of Florida's 373 law-enforcement agencies as defendants, imposing extraordinary burden on litigants and the courts.[24] Yet they cite *no* case endorsing this radical view.

---

[24] *See* Andrea M. Gardner & Kevin M. Scott, *Census of State and Local Law Enforcement Agencies, 2018 – Statistical Tables*, U.S. Dep't of Just., Bureau of Just. Statistics, at 5 (Oct. 2022), https://perma.cc/4CT2-DXZF. As an example of the kind of burdens Defendants propose to place on parties and courts, consider recent

2. Even if Rule 65(d) were limited to privity and aiding and abetting, Br. 44–49, the injunction would still stand. In the context of this kind of official-capacity suit, law enforcement is in privity with prosecutors because their "rights and interests" are already being "represented and adjudicated" in these proceedings. *ADT*, 853 F.3d at 1352; *see Golden State Bottling*, 414 U.S. at 179–80 ("Courts of equity may, and frequently do, go much farther . . . in furtherance of the public interest than they are accustomed to go when only private interests are involved."). Defendants suggest that police have different "interests" from prosecutors because they play different roles in criminal enforcement and may serve different electorates. Br. 45–47. But, abstractions aside, as relevant to *this* litigation, the interest is the same: the State's general interest in being permitted to enforce S.B. 4-C.

Defendants' remaining arguments against privity primarily rely on caselaw from the preclusion context. Br. 49. But, contrary to Defendants' assertion, this Court has noted that the Rule 65(d) context is distinct. *ADT*, 853 F.3d at 1352 ("A

---

developments in *Perkins Coie LLP v. U.S. Department of Justice*, 780 F. Supp. 3d 227 (D.D.C. 2025). There, a law firm sued seven federal departments and agencies over an executive order targeting the firm. *Id.* at 230 & n.1. After consultation, the parties identified numerous additional agencies involved in implementing the order. *Id.* at 230. Because the defendants had argued that those agencies would not be bound by an injunction, the plaintiff sought and the court granted leave to amend to add all of those agencies. *Id.* at 230–31. Plaintiffs added over 300 defendant federal agencies, which took hours of work and crashed the court's electronic filing system. *See* Consent Mot. for Extension of Time, *Perkins Coie LLP*, No. 25-cv-716 (D.D.C. Apr. 29, 2025), Dkt. No. 177. The new caption is 40 pages long. *See* Am. Compl., *Perkins Coie LLP*, No. 25-cv-716 (D.D.C. Apr. 29, 2025), Dkt. No. 176.

*similar* requirement governs when res judicata may bind a nonparty to a prior judgment.") (emphasis added).  And while Defendants attempt to derive a restrictive definition of privity from *Robinson*, Br. 44, the cited part of the Court's decision was addressing what was required to show successorship in interest—a very different question, *see Robinson*, 83 F.4th at 883–84.

It makes sense that courts should apply a lower privity standard when it comes to ensuring their injunctive orders are effective than they might in the context of binding parties in future litigation.  *See, e.g.*, *Hall*, 472 F.2d at 262, 267 (injunction covered private individual who was "neither a party nor bearing any legal relationship to a party" because it threatened to "upset the court's adjudication").  That is particularly so here, as "the concept of privity is ultimately bounded by due process," *ADT*, 853 F.3d at 1352 (cleaned up), and, as already explained, this official-capacity injunction implicates no due process rights.

The same is true of aiding and abetting.  *Twitter, Inc. v. Taamneh* confirms that, in the civil context, it is enough that a person "conscious[ly] . . . and culpabl[y] participat[ed] in" the wrongful scheme.  598 U.S. 471, 493 (2023).  Florida law-enforcement officers' arrests under S.B. 4-C can only be in furtherance of prosecutions which would be wrongful under the injunction.  *See id.* at 506 (liability attaches where assistance furthers a wrongful act).  Indeed, Defendants themselves have conceded: "There is clearly a partnership between Florida prosecutors and

Florida law enforcement." App. 382:17–19. In the context of official-capacity suits, it would be entirely illogical and inconsistent with Rule 65(d)(2) to require that the named defendants first violate the injunction before law-enforcement officers can be bound.

The district court also correctly held that law enforcement also qualify as "agents" because Defendants exercise control over their conduct. App. 342–45; *Regal Knitwear*, 324 U.S. at 14 (injunction binds "those . . . subject to [Defendants'] control"). Indeed, the Attorney General has previously publicly threatened to seek declaratory relief, contempt sanctions, and even removal from office against local officials who do not comply with immigration enforcement mandates—clear exercises of control intended to compel compliance. *See* App. 343–45; *id*. at 343 n.24 (addressing *Jacobson*). Defendants point to Florida state law to suggest the Attorney General cannot control the police. Br. 45. But "[t]he question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law." *ADT*, 853 F.3d at 1354.

3. The motions panel alternatively held that "on [the Attorney General's] own theory, he is not aggrieved by the portion of the district court's order enjoining non-party law-enforcement officials," and seeking to "vindicate *their* rights and mitigate *their* injuries . . . is not consistent with Article III's limits." *FLIC*, 2025 WL 1625385, at *5. Binding Supreme Court precedent agrees: "[N]amed parties . . . lack

51

standing to challenge a portion of the order applying to persons who are not parties," namely to "those acting 'in concert' with the named parties." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 775 (1994); *see Lucero v. Trosch*, 121 F.3d 591, 605 n.25 (11th Cir. 1997) (same); *SEC v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *3 (11th Cir. Apr. 8, 2024) (unpublished) (same).

Nor can the Attorney General point to generalized injury from the injunction as a whole.  Br. 51.  "[S]tanding is not dispensed in gross." *Murthy*, 603 U.S. at 61. While he may have standing to challenge provisions directed at him or his agents, that does not entitle him to challenge provisions directed at actors whom he insists operate independently.  Defendants cannot have it both ways: disclaiming control over law enforcement, while claiming injury from an order addressed to those same purportedly independent actors.

Defendants' reliance on *GuideOne Specialty Mutual Insurance Company v. Missionary Church of Disciples of Jesus Christ* and *Myers v. Gilman Paper Corporation* is misplaced.  Br. 50–51.  Those cases confirm that appellate courts may review interrelated aspects of an order once the court has jurisdiction.  But they do not eliminate Article III's threshold requirement that the appellant be "aggrieved" by the specific portion of the order at issue.  *GuideOne*, 687 F.3d 676, 682 n.3 (5th Cir. 2012).  Here, on his own view, the Attorney General has no enforceable interest

in the portion related to nonparty law-enforcement and no standing to seek its reversal. *Madsen*, 512 U.S. at 775.

*League of Women Voters v. Florida Secretary of State*, 66 F.4th 905 (11th Cir. 2023), is likewise inapposite. Br. 51. There, this Court relied on the Secretary of State's "statutory obligation" to enforce the challenged provision. *League of Women Voters*, 66 F.4th at 945. But here, the Attorney General's own account is that no Florida statute grants Defendants any supervisory or operational control over the nonparty law-enforcement officers. *See* Br. 40–41. And while *League of Women Voters* noted the Attorney General's authority to defend the constitutionality of the State's laws, 66 F.4th at 945, here the Attorney General is already doing that quite apart from his arguments about the injunction of nonparties.

Defendants warn that the Attorney General may be held responsible for law-enforcement's actions. Br. 51. But the district court has not held the Attorney General liable for a nonparty officer's conduct, or threatened to do so; it held him in contempt for his own misconduct.[25] And any resources that he has devoted to promoting compliance, *see id*., likewise stem from his own encouragement of continued arrests under an enjoined law, *see* App. 272. It cannot provide him

---

[25] Defendants cite (at Br. 51) *PlayNation Play Systems, Inc. v. Velex Corporation*, 939 F.3d 1205 (11th Cir. 2019), but that case indicates corporate officers may be held in contempt for subordinates' actions only if they "prevent compliance or fail to take appropriate action within their power." *Id.* at 1213.

standing to challenge the injunction's application to police that he would otherwise lack.

## CONCLUSION

The Court should affirm.

Respectfully Submitted

Omar Jadwat
Grace Choi
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Paul R. Chavez
Evelyn Wiese
Christina Isabel LaRocca
AMERICANS FOR IMMIGRANT
JUSTICE
6355 NW 36 Street, Suite 309
Miami, FL 33166
T: (305) 576-6273
pchavez@aijustice.org
ewiese@aijustice.org
clarocca@aijustice.org

Miriam Haskell
Alana Greer
COMMUNITY JUSTICE PROJECT,
INC.
3000 Biscayne Blvd., Suite 106
Miami, FL 33137
T: (305) 907-7697
miriam@communityjusticeproject.com
alana@communityjusticeproject.com

*/s/ Cody Wofsy*
Cody Wofsy
Spencer Amdur
Oscar Sarabia Roman
Hannah Steinberg
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
osarabia@aclu.org
hsteinberg@aclu.org

Amy Godshall
Daniel B. Tilley
ACLU FOUNDATION OF
FLORIDA, INC.
4343 West Flagler Street, Suite 400
Miami, FL 33134
R: (786) 363-2700
agodshall@aclufl.org
dtilley@aclufl.org

*Counsel for Plaintiffs-Appellees*

55

## CERTIFICATE OF COMPLIANCE

1.      This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,978 words.

2.      This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

                                                    */s/ Cody Wofsy*
                                                    Cody Wofsy

56

## CERTIFICATE OF SERVICE

I certify that, on August 29, 2025, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Eleventh Circuit via the Court's CM/ECF document filing system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Cody Wofsy*
Cody Wofsy