No. 25-11469

# In the United States Court of Appeals for the Eleventh Circuit

FLORIDA IMMIGRANT COALITION, ET AL.,
*Plaintiffs-Appellees,*

v.

JAMES UTHMEIER,
IN HIS OFFICIAL CAPACITY AS FLORIDA
ATTORNEY GENERAL, ET AL.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:25-cv-21524-KMW

## APPELLANTS' REPLY BRIEF

JAMES UTHMEIER
  *Attorney General of Florida*

JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
DARRICK W. MONSON
  *Deputy Solicitor General*
ROBERT S. SCHENCK
CHRISTINE PRATT
  *Assistant Solicitors General*
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*robert.schenck@myfloridalegal.com*

September 24, 2025                    *Counsel for Defendants-Appellants*

*Florida Immigrant Coalition v. Uthmeier*
*Eleventh Circuit Case No. 25-11469*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendants certify that, to the best of their knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1.  Amdur, Spencer

2.  Bakkendahl, Thomas

3.  Bartlett, Bruce

4.  Basford, Larry

5.  Brodsky, Ed

6.  Campbell, Jack

7.  Chavez, Paul R.

8.  Choi, Grace

9.  Costello, David M.

10. Cox, Alexcia

11. Cox, Nicholas B.

12. DeSousa, Jeffrey P.

13. Durrett, John

14. Farmworker Association of Florida, Inc.

15. Florida Immigrant Coalition

*Florida Immigrant Coalition v. Uthmeier*
*Eleventh Circuit Case No. 25-11469*

16.    Fox, Amira D.

17.    Gladson, William

18.    Godshall, Amy N.

19.    Goodman, Hon. Jonathan

20.    Greer, Alana J.

21.    Haas, Brian

22.    Haskell, Miriam F.

23.    Jadwat, Omar

24.    Kacou, Amien

25.    Kramer, Brian S.

26.    Lamia, Christine

27.    Larizza, R.J.

28.    LaRocca, Christina I.

29.    Lopez, Susan S.

30.    Madden, Ginger Bowden

31.    Mann, William C.

32.    Muehlhoff, Jason J.

33.    Nelson, Melissa

34.    Pratt, Christine K.

35.    Pryor, Harold F.

36.    Roman, Oscar S.

37.    Rundle, Katherine Fernandez

38.    Scheiner, William

39.    Schenck, Robert S.

40.    Stafford, William III

41.    Steinberg, Hannah

42.    Tilley, Daniel B.

43.    Uthmeier, James

44.    V.V.

45.    Wiese, Evelyn

46.    Williams, Hon. Kathleen M.

47.    Wofsy, Cody

48.    Worrell, Monique H.

49.    Y.M.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 3

I.    Plaintiffs have failed to show that they are likely to succeed on the merits ........................................................................................................... 3

    A.    Plaintiffs lack standing to attack SB 4-C ..................................... 3

    B.    Plaintiffs lack a cause of action to enforce federal immigration law ................................................................................. 4

    C.    SB 4-C is not facially preempted by federal immigration law ................... 7

        1.    SB 4-C is not field preempted in all applications ............................ 7

        2.    Plaintiffs have not shown that SB 4-C is conflict preempted in all applications .............................................. 13

    D.    SB 4-C does not violate the Dormant Commerce Clause ......................... 16

II.    The remaining equitable factors do not support an injunction ........................... 17

III.    The district court lacked authority to bind Florida's law-enforcement officers ....................................................................................... 19

Conclusion ............................................................................................................. 24

Certificate of Compliance ..................................................................................... 26

Certificate of Service ............................................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*ADT LLC v. NorthStar Alarm Servs., LLC,*
   853 F.3d 1348 (11th Cir. 2017) ........................................................................20

*Arizona v. United States,*
   567 U.S. 387 (2012) ..............................................................8, 10, 11, 13, 14

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ..........................................................................4, 5, 6, 7

*California v. Zook,*
   336 U.S. 725 (1949) ..................................................................2, 8, 12, 14

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
   595 U.S. 267 (2022) ........................................................................23

*Clark v. Martinez,*
   543 U.S. 371 (2005) ........................................................................21

*Club Madonna Inc. v. City of Miami Beach,*
   42 F.4th 1231 (11th Cir. 2022) .................................................. 15, 16

*Coal. for Competitive Elec., Dynegy, Inc. v. Zibelman,*
   272 F. Supp. 3d 554 (S.D.N.Y. 2017) ..............................................5

*Combs v. Snyder,*
   101 F. Supp. 531 (D.D.C. 1951) ....................................................18

*DeCanas v. Bica,*
   424 U.S. 351 (1976) .................................................................... 1, 8

*E. Bay Sanctuary Covenant v. Trump,*
   932 F.3d 742 (9th Cir. 2018) ............................................................4

*Edwards v. Prime, Inc.,*
   602 F.3d 1276 (11th Cir. 2010) ....................................................10

*Fox v. Ohio,*
   46 U.S. 410 (1847) ........................................................................13

*Ga. Latino All. for Hum. Rts. v. Gov. of Ga.,*
  691 F.3d 1250 (11th Cir. 2012) ................................................4, 6, 8, 9, 10, 15

*GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ,*
  687 F.3d 676 (5th Cir. 2012) .............................................................22, 23

*Hines v. Davidowitz,*
  312 U.S. 52 (1941).................................................................................10

*Initiative & Referendum Inst. v. Walker,*
  450 F.3d 1082 (10th Cir. 2006) ..............................................................3

*Jacobson v. Florida Secretary of State,*
  974 F.3d 1236 (11th Cir. 2020) ............................................................22

*Kansas v. Garcia,*
  589 U.S. 191 (2020) ...............................................1, 2, 7, 14, 15, 16

*Keystone Driller Co. v. Gen. Excavator Co.,*
  290 U.S. 240 (1933) ............................................................................19

*League of Women Voters of Fla. v. Fla. Sec'y of State,*
  66 F.4th 905 (11th Cir. 2023) ..............................................................23

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ..............................................................................3

*Merrion v. Jicarilla Apache Tribe,*
  455 U.S. 130 (1982) ............................................................................17

*Moody v. Netchoice,*
  603 U.S. 707 (2024) ............................................................................16

*Nat'l Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) ............................................................................16

*Newton v. Duke Energy Fla.,*
  895 F.3d 1270 (11th Cir. 2018) ..............................................................6

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of Or.,*
  511 U.S. 93 (1994)...............................................................................16

*Plyler v. Doe,*
    457 U.S. 202 (1982) ...................................................................................1, 9, 14

*Rohe v. Wells Fargo Bank,*
    988 F.3d 1256 (11th Cir. 2021) ...................................................................21

*Safe Sts. All. v. Hickenlooper,*
    859 F.3d 865 (10th Cir. 2017) .................................................................. 4, 6

*Solantic, LLC v. City of Neptune Beach,*
    410 F.3d 1250 (11th Cir. 2005) ...................................................................24

*South Carolina v. Katzenbach,*
    383 U.S. 301 (1966) ......................................................................................21

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ..................................................................................... 4, 6

*Stromback v. New Line Cinema,*
    384 F.3d 283 (6th Cir. 2004) .......................................................................12

*Taggart v. Lorenzen,*
    587 U.S. 554 (2019) ......................................................................................20

*Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less, Over Parcel(s) of Land of
    Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049,*
    910 F.3d 1130 (11th Cir. 2018) ...................................................................24

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ...............................................................................17, 23

*United States v. Hall,*
    472 F.2d 261 (5th Cir. 1972) .......................................................................21

*United States v. Brignoni-Ponce,*
    422 U.S. 873 (1975) ......................................................................................17

*United States v. Marigold,*
    50 U.S. 560 (1850) ........................................................................................13

*United States v. Rahimi,*
    602 U.S. 680 (2024) ......................................................................................16

*United States v. Robinson,*
   83 F.4th 868 (11th Cir. 2023) ...............................................................19, 20, 21

*United States v. Salerno,*
   481 U.S. 739 (1987) ....................................................................................7

*United States v. Skrmetti,*
   145 S. Ct. 1816 (2025) ..............................................................................18

*United States v. Texas,*
   97 F.4th 268 (5th Cir. 2024) ....................................................................17

*United States v. Texas,*
   144 F.4th 632 (5th Cir. 2025) ..................................................................11

*Vasquez Perdomo,*
   2025 WL 2585637 ..........................................................................17, 18, 19

*West Virginia v. EPA,*
   597 U.S. 697 (2022) ..................................................................................23

*Wilson v. Attaway,*
   757 F.2d 1227 (11th Cir. 1985) ................................................................22

*Younger v. Harris,*
   401 U.S. 37 (1971) ....................................................................................19

## Statutory Provisions

8 U.S.C. § 1324 ...................................................................................3, 8, 9, 10

8 U.S.C. § 1325 ..........................................................................................12

28 U.S.C. § 1292 ........................................................................................24

Fla. Stat. § 448.095 ......................................................................................3

Fla. Stat. § 811.102 .......................................................................2, 11, 12, 13

Fla. Stat. § 811.103 ....................................................................................13

O.C.G.A. §§ 16-11-200, 16-11-201, 16-11-202 ........................................9

**Rules**

Fed. R. Civ. P. 65..................................................................................... 19, 20, 21, 22

**Other Authorities**

13A *Wright & Miller's Fed. Prac. & Proc. Juris.* § 3531.4 (3d ed.) ........................................4

## INTRODUCTION

The district court would deny Florida the most basic ingredient of state sovereignty: the power to exclude from its borders those aliens who enter the United States illegally. For the first 100 years of our Nation's history, States regularly exercised even broader control. Though the Immigration and Nationality Act (INA) now dictates who may enter the country, nothing in the INA forbids States from following federal direction when policing their own borders. As the Supreme Court has said, "[d]espite the exclusive federal control of this Nation's borders," States are not "without any power to deter the influx of persons entering the United States against federal law." *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982).

This Court should reverse the preliminary injunction. On the merits, Plaintiffs have failed to show that Florida's SB 4-C is field or conflict preempted. Preemption flows only from "the Laws of the United States" as reflected in their "text and structure," *Kansas v. Garcia*, 589 U.S. 191, 208, 212 (2020), not from "some brooding federal interest." *Id.* at 202. Neither the INA's "wording" nor its structure shows a congressional intent to oust "state regulation touching on aliens in general" or "illegal aliens in particular." *DeCanas v. Bica*, 424 U.S. 351, 358 (1976), *superseded by statute on other grounds*. This is therefore not the "rare case[]" where Congress has occupied the field. *Garcia*, 589 U.S. at 208.

Florida's law is not conflict preempted either. SB 4-C tracks the federal prohibition on aliens entering the United States illegally; an alien violates *Florida* law only if he

first violates *federal* law. There can be "no conflict in terms" when a "state statute makes federal law its own." *California v. Zook*, 336 U.S. 725, 735 (1949); *see also Garcia*, 589 U.S. at 211 (mere "overlap" with federal criminal laws "does not even begin to make a case for conflict preemption"). Plaintiffs thus resort to the argument that SB 4-C, if enforced, would limit the federal Executive's "discretion" over immigration enforcement. Not true. SB 4-C expressly provides that an alien has no liability under Florida law if "[t]he Federal Government has granted the unauthorized alien lawful presence in the United States." Fla. Stat. § 811.102(4)(a); *see also id.* § 811.103(1)(a)-(b). Florida's law, in other words, does nothing to infringe the federal government's authority to decide who may enter the country. All SB 4-C does is provide that, once the federal government has made that decision, an unlawfully present alien may not enter or remain in Florida. Still less is there any possibility of a conflict in enforcement priorities here, where the United States has filed an *amicus* brief supporting Florida's law. *See* U.S. Br. 8-20 (noting that federal and state enforcement priorities "align").

On top of that, Plaintiffs lack standing, have no cause of action, and failed to sue the non-party law-enforcement officers that they sought also to enjoin. Moreover, their arguments on the equities ask the Court to ignore the individual Plaintiffs' unclean hands—they came to the country unlawfully and now enlist the aid of the courts in obscuring their misconduct—as well as the very real harms to Florida from illegal immigration. Reversal is warranted.

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS.**

### A.    Plaintiffs lack standing to attack SB 4-C.

Both the individual and organizational Plaintiffs lack standing. *See* Init. Br. 18-23. One point in particular merits discussion.

A plaintiff lacks a "legally protected interest"—as required for injury-in-fact—where his alleged injury is that "government action will make his criminal conduct more difficult." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc). Here, Plaintiffs' injury amounts to no more than that: They claim that SB 4-C frustrates their ability to violate independent provisions of state and federal law, none of which they challenge. Init. Br. 19-20. One of the Plaintiffs, for example, wishes to travel in violation of SB 4-C in order to work without authorization, DE4-4 ¶¶ 8-9, even though working without authorization is unlawful under both federal and state law. *See* 8 U.S.C. § 1324(a); Fla. Stat. § 448.095(2)(e).

Plaintiffs offer no answer to this defect; they say only that framing it as one about Article III standing "replicate[s]" Defendants' unclean-hands argument, Ans. Br. 13, and then separately attempt to refute the unclean-hands argument. *Id.* at 39-41. But the cases Defendants rely on are not unclean-hands cases. They are standing cases that turn on the requirement of a "*legally protected* interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added). Those cases acknowledge the commonsense point that

3

an alleged interest is not protectible, and thus cannot support a pre-enforcement action, when the interest is a plaintiff's desire to violate some unchallenged prohibition. *See, e.g., E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 764 (9th Cir. 2018) ("The Organizations' clients, of course, would not have standing to assert a right to cross the border illegally, to seek asylum or otherwise."); 13A *Wright & Miller's Fed. Prac. & Proc. Juris.* § 3531.4 (3d ed.), Westlaw (database updated May 21, 2025) (explaining that a drug smuggler cannot challenge a customs regulation because, though he has "been injured in fact," "the asserted interest is not one the courts will protect").[1] Plaintiffs must therefore wait to raise their claims as a defense in any enforcement action.

### B.    Plaintiffs lack a cause of action to enforce federal immigration law.

Next, by vesting enforcement of the INA solely in federal officers, Congress displaced any equitable cause of action. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328-29 (2015); Init. Br. 23-25. Nor does the INA give Plaintiffs private rights enforceable through a cause of action. *See Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 902-05 (10th Cir. 2017). Plaintiffs "cannot, by invoking [courts'] equitable powers, circumvent" those statutory limits. *Armstrong*, 575 U.S. at 328.

---

[1] The Court in *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, entertained a pre-enforcement challenge without addressing this issue. 691 F.3d 1250, 1257 (11th Cir. 2012). But drive-by rulings are not precedential. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

Plaintiffs misstate *Armstrong*'s holding. Ans. Br. 19. *Armstrong* requires courts to ask whether the "fairest reading" of a statute shows that "Congress [has] displace[d]" private enforcement through equity. 575 U.S. at 329. There, the "fairest reading" of the Medicaid Act foreclosed private enforcement based on two textual indications: (1) Congress made federal officers responsible for enforcing the law "by withholding funds" from derelict States and (2) the statutory text was "judicially unadministrable." *Id.* at 328-29. In Plaintiffs' view, *Armstrong* sets out two requirements for the displacement of equitable causes of action that are "both" "necessary" in every instance. Ans. Br. 19. Yet "[t]here is no indication in *Armstrong* that both factors must be satisfied." *Coal. for Competitive Elec., Dynegy, Inc. v. Zibelman*, 272 F. Supp. 3d 554, 566 (S.D.N.Y. 2017). Like any statutory interpretation case, the touchstone of *Armstrong*'s analysis was a holistic endeavor, applying canons of construction and focusing on the "fairest reading" of the text in "context," 575 U.S. at 328-29, the purpose being to discern whether "Congress intended to preclude" non-statutory enforcement "method[s]." *Id.* at 328. And here, the INA in numerous ways grants enforcement authority exclusively to federal officers. Init. Br. 23-24 (discussing provisions of the INA vesting enforcement powers in the Secretary of Homeland Security, the Attorney General, and the U.S. Attorneys).

Contrary to Plaintiffs' suggestion, *Armstrong* does not greenlight any equitable cause of action here. Ans. Br. 17. Of course, in some circumstances federal courts may "enjoin unlawful executive action—including violations of the Supremacy Clause." *Id.* But as *Armstrong* makes clear, where "Congress's scheme" "implicitly" reflects an intent

5

to "displace the equitable relief that is traditionally available," Congress has "preclude[d] the availability of a judge-made action at equity." 575 U.S. at 329. In *Armstrong*, as here, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 328*; see also Safe Sts. All.*, 859 F.3d at 898-905 (holding that plaintiffs lacked an equitable cause of action to enforce the preemptive effect of the Controlled Substances Act). Indeed, by granting federal officials the power to bring *affirmative enforcement actions*, the INA reveals an intent to displace an equitable cause of action that is a good deal stronger than the Medicaid Act in *Armstrong*, which simply gave the federal officer the power to *withhold funds*.

It is no answer, as Plaintiffs contend, that this Court after *Armstrong* reaffirmed *Georgia Latino*'s holding finding a cause of action for preemption under the INA. Ans. Br. 16-17 (citing *Newton v. Duke Energy Fla.*, 895 F.3d 1270, 1275-76 (11th Cir. 2018)). In *Newton*, this Court offhandedly cited *Georgia Latino* for the proposition that there can be an equitable cause of action for preemption, without discussing how it might be displaced. 895 F.3d at 1275-76. That represents a non-precedential "drive-by" ruling. *Steel Co.*, 523 U.S. at 91.

Last, Plaintiffs rehash the district court's reasoning that Plaintiffs need no cause of action to enforce the INA because they "do not seek to enforce" the INA's criminal provisions, only the INA's preemptive effect under the "Supremacy Clause's 'rule of decision.'" Ans. Br. 20 & n.8. But the Supremacy Clause creates no cause of action.

6

*Armstrong*, 575 U.S. at 324-27. To sue, Plaintiffs must therefore point to either a statutory or an equitable cause of action.

Again, none of this is to say that Plaintiffs—or at least the individual Plaintiffs—will never get their day in court. If they are subject to a state enforcement action, they can raise preemption as a defense. What they cannot do is sue under the INA or in equity.

### C.    **SB 4-C is not facially preempted by federal immigration law.**

Should the Court reach the merits, it should likewise reverse. At most, SB 4-C incorporates—as an element of a state-law crime that bars illegal entry *into Florida*—federal law's regulations of the entry of aliens *into the United States*. It would be the truly unusual case in which parallel, complementary state legislation is preempted. Yet the district court went further still, holding that federal law strips the States of the power to exclude from their borders aliens who concededly entered the United States unlawfully. SB 4-C is neither field nor conflict preempted.

### 1.    **SB 4-C is not field preempted in all applications.**

The "rare case[]" of facial field preemption arises only when plaintiffs show a field of federal preemption, *Garcia*, 589 U.S. at 208, and that the state law operates directly in that field in every application. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs fail on both steps.

**a.** The field at issue here is the movement by illegal aliens once within the country. Nowhere in the INA did Congress issue regulations of that field "so pervasive" that

the INA "left no room for the States to supplement it." *Arizona v. United States*, 567 U.S. 387, 399 (2012); *see also DeCanas*, 424 U.S. at 357 (for field preemption, a challenger must show that the "clear and manifest purpose of Congress" was a "complete ouster of state power" over the field). Indeed, the INA barely addresses the movement of unlawful aliens inside the country. We are aware of just one federal statute regulating their movement, and that statute merely forbids a *third party* from "transport[ing] or mov[ing]" an illegal alien "within the United States." 8 U.S.C. § 1324(a)(1)(A)(ii). The INA never addresses movement by aliens themselves. It would be striking if the existence of a single, tangential federal criminal prohibition could occupy an entire field. *See Zook*, 336 U.S. at 732 (rejecting the idea that state laws covering fraud, extortion, robbery, wrecking of a bridge, ransom, and so on are preempted solely because Congress has enacted laws forbidding similar conduct).[2]

Plaintiffs make only the faintest effort to argue that Congress has occupied the field of "the '*movement*' of noncitizens 'within the United States.'" Ans. Br. 25. For that idea, they offer (*id.*) a lone citation to this Court's decision in *Georgia Latino*, 691 F.3d at 1264. That cannot withstand scrutiny. To begin with, the Supreme Court has already announced that States are not "without any power to deter the influx of persons

---

[2] Plaintiffs cite numerous other provisions of the INA that are unrelated to the movement of aliens within the country. Ans. Br. 5, 23-24. Those statutes have no bearing here. Indeed, the Supreme Court "has never held that every state enactment which in any way deals with aliens" is preempted. *DeCanas*, 424 U.S. at 355.

entering the United States against federal law." *Plyler*, 457 U.S. at 228 n.23. *Plyler*'s statement can only mean that States may regulate who can enter their own borders. If Plaintiffs are correct, however, *Georgia Latino* held just the opposite. It is unlikely that this Court simply ignored Supreme Court precedent.

Sure enough, the state law deemed preempted in *Georgia Latino* was quite different from Florida's. The Georgia law there criminalized "transporting or moving an illegal alien," "concealing or harboring an illegal alien," and "inducing an illegal alien to enter the state of Georgia." *Georgia Latino*, 691 F.3d at 1263 (quoting O.C.G.A. §§ 16-11-200(b), 16-11-201(b), 16-11-202(b)). Movement by aliens themselves was not at issue. Two factors, in the Court's view, showed that Congress had occupied the field of "transporting" an alien by a third party. *See id.* at 1263-64. First, the Court pointed to numerous provisions of the INA setting out a "comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." *Id.* at 1263. Together, the "breadth" of those provisions "illustrate[d] an overwhelmingly dominant federal interest in the field." *Id.* at 1264. Collectively, in other words, those provisions targeted the relocation of illegal aliens by third parties for some other purpose, like having them perform unauthorized labor. Second, the Court observed that Congress *had* contemplated a role for the States—just not the role of criminalizing alien transportation by third parties. *Id.* at 1263-64. Instead, Congress through 8 U.S.C.

§ 1324(c) "chose to allow state officials to arrest for § 1324 crimes" but left to "federal courts" the "exclusive jurisdiction to prosecute for these crimes." *Id.*[3]

The issue in *Georgia Latino* was thus distinct from the one here. And though the Court's opinion on a few occasions referred loosely to alien "movement," *Georgia Latino*, 691 F.3d at 1264, 1266, it evidently used that term synonymously with the "transportation" of aliens by third parties, which was the only area of regulation involved in the case. *Id.* at 1258-65 (referring to "transport, "transporting," and "transportation" no fewer than 14 times). At best for Plaintiffs, *Georgia Latino*'s mention of alien "movement" was dicta: A "decision can hold nothing beyond the facts of that case," *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010), and *Georgia Latino* presented no question about alien movement more broadly.

*Arizona* does not support affirmance either. Ans. Br. 27-28. Like *Georgia Latino*, *Arizona* did not involve the field of movement of unlawful aliens within the country. The only field at stake there was the "field of alien registration," *Arizona*, 567 U.S. at 401, which the Supreme Court years earlier had held preempted in *Hines v. Davidowitz*, 312 U.S. 52, 70, 74 (1941). Congress's "complete system for alien registration" is a great deal more comprehensive, *see Arizona*, 567 U.S. at 400-01 (describing the numerous,

---

[3] Section 1324(c) provides: "No officer or person shall have authority to make any arrests for a violation of any provision of this section except officers and employees of the Service designated by the Attorney General, either individually or as a member of a class, and all other officers whose duty it is to enforce criminal laws." 8 U.S.C. § 1324(c).

interlocking federal regulations in that area), than any stray provisions of the INA addressing movement by aliens. If anything, *Arizona* only underscores that the presumption against preemption applies even in the immigration arena. *See id.* at 400.

Plaintiffs also place substantial reliance (Ans. Br. 22-24, 26, 27, 29, 30-32) on *United States v. Texas*, 144 F.4th 632, 668 & n.279 (5th Cir. 2025), *vacated for reh'g en banc,* 2025 WL 2493531 (5th Cir. Aug. 29, 2025). Not only did that panel opinion address a Texas law that is distinct from Florida's (it does not track federal law as carefully as SB 4-C does), but it has since been vacated by the en banc Fifth Circuit.

**b.** Plaintiffs do not seriously contend that Congress has regulated every jot and tittle of alien movement across state lines. Their primary response is instead to redefine the field. Thus, Plaintiffs say that Congress has occupied the fields of "entry, admission, and removal of noncitizens." Ans. Br. 22-25 (quoting *Texas*, 144 F.4th at 667). To date, the Supreme Court has never held that those are occupied fields. This Court need not resolve that question, however, because SB 4-C does not operate within them.

To operate in the fields of entry, admission, and removal, SB 4-C would have to purport to regulate "*who* may enter [the country], *how* they may enter, *where* they may enter, and *what* penalties apply." Ans. Br. 27 (quoting *Texas*, 144 F.4th at 669). Florida's law does none of that. Quite the opposite, it takes as a given that federal law controls entry and removal decisions and criminalizes only the acts of "an unauthorized alien" who "elud[es] or avoid[s] examination or inspection by immigration officers." *E.g.*, Fla. Stat. § 811.102(1). Who qualifies as an unauthorized alien, and what constitutes eluding

11

or avoiding immigration inspection, remains a question of federal law. SB 4-C goes out of its way to avoid regulating entry and removal by expressly exempting from liability any alien whom "[t]he Federal Government has granted . . . lawful presence in the United States or discretionary relief," as well as any alien whose "entry into the United States did not constitute a violation of 8 U.S.C. s. 1325(a)." *Id.* § 811.102(4)(a), (c).

To top things off, Plaintiffs are wrong that SB 4-C criminalizes an alien's "unauthorized entry (and reentry) *into the United States*." Ans. Br. 26. As one might expect of a state law, SB 4-C instead addresses entry *into Florida*: The *actus reus* forbidden by the law is "knowingly enter[ing] . . . this state," Fla. Stat. § 811.102(1), and "enter[ing], attempt[ing] to enter, or [being] at any time found in this state" after having been removed from the country. *Id.* § 811.103(1).

For SB 4-C to be field preempted, then, this Court would have to conclude that a statute operates in an occupied field every time it makes the commission of a federal offense one element of a state crime. Ans. Br. 26. That has never been the law. *Cf. Stromback v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004) (finding no preemption where an "extra element changes the nature of the [state] action so that it is qualitatively different" from the preemptive federal claim). To the contrary, the Supreme Court has repeatedly upheld against preemption challenges parallel state laws that mirror the elements of federal crimes. *See, e.g., Zook*, 336 U.S. at 735 (holding that there is "no conflict in terms" when a "state statute makes federal law its own"). In *Fox v. Ohio*, for example, the state could ban the circulation of counterfeit coins even though federal law

separately forbade counterfeiting. 46 U.S. 410, 434-35 (1847). "[T]he same act," the Court has said, "might . . . constitute an offence against both the State and Federal governments." *United States v. Marigold*, 50 U.S. 560, 569 (1850).

### 2.     Plaintiffs have not shown that SB 4-C is conflict preempted in all applications.

Alternatively, Plaintiffs claim that Florida's law is conflict preempted because it "achieve[s] its own immigration policy" and interferes with prosecutorial discretion. Ans. Br. 32-33 (citing *Arizona*, 567 U.S. at 408). That is wrong. A state law is conflict preempted only where "compliance with both federal and state regulations is a physical impossibility" or where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399. SB 4-C does neither.

As to impossibility conflict, an alien can obviously comply with both federal and state law: To avoid liability under both regimes, a person need only avoid illegally entering the United States. Falling back to obstacle conflict, Plaintiffs attempt to show that SB 4-C "would frustrate federal policies" by "strip[ping] away federal discretion." Ans. Br. 30-31. It is hard to see how that could be. Far from adopting "its own immigration policy," *id.* at 33, Florida incorporates federal immigration policy as an element of its state-law offenses. *See* Fla. Stat. §§ 811.102(1), (4), 811.103(1). Indeed, SB 4-C exempts from liability any alien to whom "[t]he Federal Government has granted . . . lawful presence in the United States or discretionary relief," *id.* § 811.102(4)(a), or where

"[t]he Attorney General of the United States expressly consented to his or her reapplication for admission." *Id.* § 811.103(1)(a). If federal officials exercise discretion to grant lawful status to an alien, no state crime is committed. So, even if it is true that the federal government in enforcing the INA "may need to balance multiple competing priorities, foreign relations, humanitarian considerations, and practical resource constraints," Ans. Br. 31, SB 4-C respects its ability to do so.

Plaintiffs are incorrect that this case resembles *Arizona*'s conflict-preemption holding about alien removal. Ans. Br. 32-33. According to the Supreme Court, the problems with the state law in *Arizona* were twofold: It simultaneously "attempt[ed] to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers" and "authoriz[ed] state officers to decide whether an alien should be detained for being removable." 567 U.S. at 408-09. Both aspects touched on the unique "foreign relations" concerns attendant to alien-removal decisions. *Id.* But rather than deciding which aliens may remain in the country, SB 4-C is a "criminal law enforcement" measure of the sort that "has been primarily a responsibility of the States." *Garcia*, 589 U.S. at 211.

Moreover, the parallel nature of the state and federal crimes here makes Plaintiffs' task nearly insurmountable. Where state law "mirrors federal objectives," the States "do have some authority to act with respect to illegal aliens." *Plyler*, 457 U.S. at 225. Absent field preemption, in fact, there can be "no conflict in terms" when a "state statute makes federal law its own." *Zook*, 336 U.S. at 735. By now it is clear that the

14

"mere fact" of "overlap" between state and federal law "does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 212.

Plaintiffs return repeatedly to *Georgia Latino* to support their conflict claim. Ans. Br. 31 n.11, 32-33. But *Georgia Latino* is not on point; it involved a Georgia law that criminalized the *transportation* of illegal aliens. 691 F.3d at 1256. Rather than extend that decision, this Court should heed the Supreme Court's more recent guidance in *Garcia* that "the possibility that federal enforcement priorities might be upset is not enough." 589 U.S. at 212; *see* Init. Br. 31-36.

At any rate, the very federal official ultimately responsible for federal immigration enforcement—the U.S. Attorney General—has sworn off any alleged conflict between federal and state enforcement priorities here. *See Garcia*, 589 U.S. at 212 (finding it significant that "the Federal Government fully supports Kansas's position in this Court"). "Florida's law," the United States writes in its *amicus* brief supporting reversal, "is in harmony, not conflict, with federal law." U.S. Br. 16. Even more, "the enforcement priorities of the United States and Florida align" in that "both favor maximum enforcement of the immigration laws to deter illegal immigration." *Id.* at 18. That was not the case in *Georgia Latino*.

Plaintiffs are thus hard-pressed to show preemption in any application of SB 4-C, let alone that Florida's law is preempted in *all* its applications, as required by *Salerno*. Plaintiffs insist that *Club Madonna v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022), holds that *Salerno* does not apply to facial preemption challenges. Ans. Br. 34. But unlike

in *Club Madonna*, Plaintiffs say that preemption here stems from federal discretion and not any hardline statutory rule, and Florida's law does not frustrate federal discretionary decisions made case-by-case. *See* 42 F.4th at 1256. Where federal authorities sanction a state prosecution, there can be "no suggestion that [a] prosecution[] frustrated" federal discretion. *Garcia*, 589 U.S. at 212. In any event, the Supreme Court clarified after *Club Madonna* that non-First Amendment facial challenges require a plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *see Moody v. Netchoice*, 603 U.S. 707, 723 (2024).

### D.    SB 4-C does not violate the Dormant Commerce Clause.

The Dormant Commerce Clause prevents economic discrimination between States. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). Plaintiffs have no real response to Defendants' arguments on this front. While they claim that barring transportation across state lines is per se unlawful, Ans. Br. 35, the Supreme Court has repeatedly defined discrimination relevant to the Dormant Commerce Clause in one way: "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Ross*, 598 U.S. at 369; *see also Or. Waste Sys., Inc. v. Dep't of Envt'l Quality of Or.*, 511 U.S. 93, 99 (1994) (similar). Nothing about Florida's law dis-criminates in this way. *See* U.S. Br. 20-23. And where Congress has affirmatively pro-hibited some activity, dormant-commerce analysis is inapt. *See United States v. Texas*, 97 F.4th 268, 332 (5th Cir. 2024) (Oldham, J., dissenting); *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154 (1982) (because the Dormant Commerce Clause doctrine

16

"safeguards Congress' latent power from encroachment," courts only apply that doctrine "when Congress has not acted or purported to act").

## II. THE REMAINING EQUITABLE FACTORS DO NOT SUPPORT AN INJUNCTION.

The balance of the other equitable factors—harm to the Plaintiffs, irreparable harm to the State, and the public interest—favor the State. Any harm to Plaintiffs is outweighed by the severe harms to the State and the public from an injunction. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration and quotations omitted)).

Plaintiffs downplay the harms of illegal immigration and Florida's efforts to combat them. By disagreeing that illegal immigration is a national crisis, Ans. Br. 37, Plaintiffs deny the reality on the ground, putting them at odds with the past two presidents, Init. Br. 6 & n.1, the 18 States that filed in support of Florida, *see generally* Amicus Br. of Iowa et al., and Florida's elected representatives who determined that SB 4-C was necessary. The balance of the equities must consider the "myriad significant economic and social problems" that attend illegal immigration, *Vasquez Perdomo*, 2025 WL 2585637, at *4 (Kavanaugh, J., concurring) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)), and "the harms to the third parties who otherwise would *benefit* from the challenged government action." *Id.* Laws like SB 4-C benefit legal aliens by deterring illegal aliens who "jump[] in front of those [lawful] noncitizens who follow the rules and wait

17

in line to immigrate into the United States through the legal immigration process." *Id.* at *5.

Plaintiffs also say that Florida's other state-law enforcement tools and ongoing collaboration with federal officers are sufficient to stem any negative effects from illegal immigration. Ans. Br. 37-38. SB 4-C reflects the considered legislative judgment that more tools were needed. Florida need not wait for economic or criminal consequences to befall its citizens before taking further steps. *Cf. United States v. Skrmetti*, 145 S. Ct. 1816, 1837 (2025) ("[T]he calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility.").[4]

On the other side of the ledger, Plaintiffs have unclean hands. Their presence in this country is unabashedly illegal, and that misconduct alone suffices to deny injunctive relief. *See Combs v. Snyder*, 101 F. Supp. 531, 532 (D.D.C. 1951), *judgment aff'd*, 342 U.S. 939 (1952). Indeed, their misconduct has a "relation to the equity that [they] seek[]" because Plaintiffs ask to make their violation of federal law easier to hide by precluding state authorities from assisting federal immigration enforcement efforts. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Plaintiffs can have no "substantial"

---

[4] Nor do the contempt proceedings in this case discount these harms to the State. Ans. Br. 41. In those proceedings, separately appealed, the district court held the Attorney General in contempt for his statement noting his "disagreement with" the legal basis for the district court's binding all of Florida's law enforcement officers. DE57-2 at 2; DE96 at 4. But the Attorney General has followed the district court's order despite his strident disagreement with its legal analysis; and the State and public continue to face serious harms from illegal immigration.

interest in furthering "their illegal presence." *Vasquez Perdomo*, 2025 WL 2585637, at *5 (Kavanaugh, J., concurring). And to the extent their alleged injury is being prosecuted under an allegedly preempted state law, that injury is not irreparable (as required to obtain an injunction) because they can always raise preemption as a defense in state court. *See Younger v. Harris*, 401 U.S. 37, 46 (1971).

## III. THE DISTRICT COURT LACKED AUTHORITY TO BIND FLORIDA'S LAW-ENFORCEMENT OFFICERS.

At a minimum, this Court should narrow the scope of the injunction. Under Rule 65, a court's order may "bind[] only" those who receive "actual notice" and fall into one of three categories: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with" the parties or their officers or agents. Fed. R. Civ. P. 65(d)(2); *see also United States v. Robinson*, 83 F.4th 868, 878 (11th Cir. 2023). As Defendants have explained, Florida's law-enforcement officers fall into none of these categories. Init. Br. 39-49. And Plaintiffs err in contending that Defendants' lack standing to challenge the district court's overbroad injunction.

**A.** Unlike the federal government, Florida does not have a "unitary executive." Florida's prosecutors and law-enforcement officers are instead independent state or local officials, with the result that prosecutors—the only defendants sued by Plaintiffs here—have no power to control their law-enforcement partners. If Plaintiffs desired an

injunction barring those law-enforcement officers from enforcing SB 4-C, they could have sued them.

To excuse their failure to do so, Plaintiffs argue for a "sensible" reading of Rule 65's "text." Ans. Br. 41-42. Purporting to interpret "active concert or participation" in Rule 65(d)(2)(C), Plaintiffs say that the phrase must simply mean "agreement in a design or plan," not "privity" or "aiding and abetting," as this Court understood the phrase in *Robinson*. Ans. Br. 42. And though Plaintiffs are less than explicit about what qualifies as an agreement in a design or plan, they urge the Court to take a "pragmatic approach." Ans. Br. 43. Plaintiffs overlook that "active concert or participation" is borrowed from the common law. As *Robinson* explains, the categories in Rule 65 "embod[y]" "the common law powers of the district court," 83 F.4th at 878, and the rule's language "brings the old soil [of history] with it." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). This Court has understood "active concert and participation" to convey just two concepts: privity and aiding and abetting. *See Robinson*, 83 F.4th at 878, 882; *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017).

*Robinson* was quite clear: "[B]oth Rule 65 and the common-law doctrine contemplate *two categories* of nonparties potentially bound by an injunction." 83 F.4th at 881 (emphasis added). The "first category" includes those "who aid and abet the party bound by the injunction," while the "second category" falls within the "general rubric

of 'privity.'" *Id.* Plaintiffs' invitation to adopt some unspecified, freewheeling approach to "active concert and participation" cannot be squared with *Robinson*'s holding.[5]

Equally unpersuasive is Plaintiffs' contention that historical limits on equity do not apply in this context because "the State has no constitutional right to due process." Ans. Br 44 (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966)). Limits on equity may have evolved to protect litigants' due-process rights. But whatever the merits of Plaintiffs' premise that government officials lack such rights, those historic limits are now "embodie[d]" in Rule 65's text, *Robinson*, 83 F.4th at 878, which applies to both private and public litigants. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (holding that a "limiting construction" of must be used when "called for by one of the [provision's] applications, even though other of the [provision's] applications, standing alone, would not support the same limitation). Similarly, Plaintiffs' theory that, under *Ex Parte Young*, a suit against a single state officer should bind *all* state officers cannot be

---

[5] *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972), does not allow a court to appeal to the "purposes" of Rule 65 to avoid the legal test this Court has laid out. Ans. Br. 43. That case merely holds that a court can use its All Writs Act authority to prevent nonparties from destroying its ability to enforce a judgment. *Rohe v. Wells Fargo Bank*, 988 F.3d 1256, 1266-67 (11th Cir. 2021) (stating that *Hall* is an All Writs Act case). In *Hall*, a district court issued an injunction ordering that a school board provide an integrated school to plaintiffs—and enjoined nonparties whose violence threatened that duty. 472 F.2d at 262-64. This Court noted that the circumstances there were unlike other cases where actions "by a third party would not have upset the defendant's duty" to obey the Court's injunction and thus could not be reached by the Court's authority. *Id.* at 265. Nothing about the actions of police here threaten the Defendants' duty not to prosecute class members under the district court's order.

believed. Ans. Br. 43-44 & n.21. Yes, *Ex Parte Young* sets out a "legal fiction." *Id.* But that fiction is crucial to Plaintiffs' chances: Without it, their suit is barred by Eleventh Amendment sovereign immunity.

Applying *Robinson*'s test, Plaintiffs fail to show aiding and abetting because it is impossible to aid and abet a party's violation of an injunction if the party itself has no intention of violating, Init. Br. 47-48, and this Court has already held that prosecutors and sheriffs are not in privity. *See Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir. 1985).

In sum, if the district court was powerless to prevent "law enforcement-officers" from "simply continu[ing] arresting under S.B. 4-C," Ans. Br. 48, it was only because of Plaintiffs' own litigation choices.[6]

**B.** No more availing is Plaintiffs' point about appellate standing. Ans. Br. 51-52. The panel "suppose[d]" that if the Attorney General lacks control over law enforcement sufficient to bind them under Rule 65, he must lack standing to appeal the portion of the injunction applicable to them. ECF No. 24-1 at 11 (Order). But lower-court orders cannot be sliced up in that way. *See GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682 n.3 (5th Cir. 2012) ("[T]he appealing party need

---

[6] Plaintiffs imply that suing Florida's law-enforcement agencies would have been "burden[some]." Ans. Br. 48. It no doubt also would have proved burdensome for the plaintiffs in *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020), to sue all 67 of Florida's supervisors of elections. Litigation is sometimes inconvenient; so be it.

only be 'aggrieved by a judgment.'"); Order 24 n.8, *Friends of the Everglades v. Exec. Dir.*, No. 25-12873 (11th Cir. Sept. 4, 2025), ECF No. 42-1 (citing cases). Appellate standing turns only on whether an appellant has experienced an injury 'fairly traceable to *the judgment below.*'" *West Virginia v. EPA*, 597 U.S. 697, 718 (2022) (emphasis in original). The scope of the district court's order is part of the order that the Court has the "broad authority" to address. *GuideOne*, 687 F.3d at 682 n.3 (citing 28 U.S.C. § 2106).

Even taking Plaintiffs' erroneous analysis at face value, it falters. The Attorney General is harmed by applying the injunction to law enforcement officers. For one, Plaintiffs concede (Ans. Br. 53) that this Court has recognized broader standing for state officials, even where they are not "bound by an injunction," based on their "strong interests in defending the constitutionality of their laws" and "continued enforceability of its own statutes" that "[f]ederal courts must respect." *League of Women Voters of Florida v. Florida Secretary of State*, 66 F.4th 905, 945 (11th Cir. 2023). Plaintiffs find *League of Women Voters* inapposite because "here the Attorney General is already" defending SB 4-C's constitutionality. Ans. Br. 53. The Attorney General cannot effectively defend the law, though, if the portion of the injunction targeted at law-enforcement officials remains in place—the upshot of Plaintiffs' position. Just as in *League of Women Voters*, the Attorney General has appellate standing to challenge injunctions that bind other state officers to vindicate the State's broader interests. *See id.*; *see also CASA*, 606 U.S. at 893–94; *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277-79 (2022) (holding

that state attorney general properly intervened on appeal to defend constitutionality of a state law).

Independently, the district court's order harms the Attorney General because it creates potential contempt liability. Init. Br. 51. And while Plaintiffs admit that the Attorney General is not liable for the unilateral actions of agents or those "in active concert or participation" with him, Ans. Br. 53, the district court's order on the scope of the injunction still creates burdens that injure the Attorney General sufficient for appellate standing by requiring him to expend resources to monitor law enforcement. Init. Br. 51.

Either way, this Court no doubt has jurisdiction over the district court's order granting injunctive relief. See 28 U.S.C. § 1292(a)(1). Once that jurisdiction exists, this Court has the power "to deal with all aspects of the case that have been sufficiently illuminated," *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1272-74 (11th Cir. 2005), especially those "related" to the grant or denial of injunctive relief, *Transcon. Gas Pipe Line Co. v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1171 n.24 (11th Cir. 2018) (bond-security determination). It is hard to imagine something more related to the grant of injunctive relief than its scope.

## CONCLUSION

The Court should vacate, or at least narrow, the preliminary injunction.

Dated: September 24, 2025

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

/s/ *Robert S. Schenck*
JEFFREY PAUL DESOUSA (FBN 110951)
  *Acting Solicitor General*
JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
DARRICK W. MONSON
  *Deputy Solicitor General*
ROBERT S. SCHENCK (FBN 1044532)
CHRISTINE PRATT (FBN 100351)
  *Assistant Solicitors General*
OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*jeffrey.desousa@myfloridalegal.com*
*jason.muehlhoff@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*
*christine.pratt@myfloridalegal.com*

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,499 words.

2.      This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Robert S. Schenck*
Assistant Solicitor General

## CERTIFICATE OF SERVICE

I certify that on September 24, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Robert S. Schenck*
Assistant Solicitor General